IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| FRANCES EARLINE SIMS, individually and as dependent administrator of, and on behalf of, the ESTATE OF STEVEN MITCHELL QUALLS and STEVEN MITCHELL QUALLS' heir(s)-at-law, Plaintiff, | § § § § § § § | |
| VS. | § § | CIVIL ACTION NO. 1:20-CV-00124 JURY DEMANDED |
| CITY OF JASPER, TEXAS; TODERICK D. GRIFFIN; STERLING RAMON LINEBAUGH; HEATHER RENE O'DELL, and JOSHUA L. HADNOT, Defendants | § § § § § § | |

**DEFENDANTS, CITY OF JASPER, TODERICK D. GRIFFIN,
STERLING RAMON LINEBAUGH, HEATHER RENE O'DELL
and JOSHUA L. HADNOT'S DESIGNATION OF EXPERT WITNESSES**

**TO THE HONORABLE JUDGE OF SAID COURT:**

COME NOW Defendants, **CITY OF JASPER, TODERICK D. GRIFFIN, STERLING RAMON LINEBAUGH, HEATHER RENE O'DELL and JOSHUA L. HADNOT** and file this their Designation of Expert Witnesses in the above-referenced cause of action:

Respectfully submitted,
CALVERT EAVES CLARKE & STELLY, L.L.P.
Beaumont Tower
2615 Calder Avenue, Suite 1070
Beaumont, Texas 77702
Telephone:    (409) 832-8885
Facsimile:    (409) 832-8886

By: _____
Frank D. Calvert
State Bar No. 03667700
fcalvert@calvert-eaves.com

ATTORNEY FOR DEFENDANTS,
CITY OF JASPER, TODERICK D.
GRIFFIN, STERLING RAMON
LINEBAUGH, HEATHER RENE O'DELL
and JOSHUA L. HADNOT

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was furnished to all counsel of record via electronic service on this 2nd day of November, 2020.

Frank D. Calvert

**DEFENDANTS, CITY OF JASPER, TODERICK D. GRIFFIN,
STERLING RAMON LINEBAUGH, HEATHER RENE O'DELL
and JOSHUA L. HADNOT'S DESIGNATION OF EXPERT WITNESSES**

**I.
RETAINED EXPERTS**

1.     **Dr. Edward Gripon**
       **3560 Delaware Street, Suite 502**
       **Beaumont, Texas  77706**
       **(409) 201-7760**
       **Psy7147@aol.com**

       *See* Report dated October 30, 2020 attached hereto as Bates Label Document DEFT_COJ
       002739-002740

       Information provided to Dr. Gripon for his review:

       - Dr. Arthur Joyce's Report
       - Plaintiff's Original Complaint

       **QUALIFICATIONS**:

       *See* Resume attached hereto as Bates Label Document DEFT_COJ 002741-002744

       **LIST OF CASES WHERE TESTIMONY GIVEN AT DEPOSITION/TRIAL**

       *See* list attached hereto Bates Label Document DEFT_COJ 002745-002770


2.     **Thomas Kerss**
       **4188 State Highway 204**
       **Nacogdoches, Texas  75964**
       **Telephone Number**
       **Thomas_kerss@yahoo.com**

       *See* Report dated November 2, 2020 attached hereto as Bates Label Document DEFT_COJ
       002771-002814

       Information provided to Mr. Kerss for his review:

       - Plaintiff's Original Complaint;
       - Defendants' Initial Disclosures with documents and videos produced (1-1497);
       - Defendants' Supplemental Disclosures with documents (2030-2070);
       - Defendants' Second Supplemental Disclosures with documents (2071-2072);
       - Defendant's Third Supplemental Disclosures with documents (2073-2259);

3

- Chief Hall's Responses to Plaintiff's Discovery Requests (1533-1997)
- Toderick Griffin's Responses to Plaintiff's Discovery Requests;
- Joshua Hadnot's Responses to Plaintiff's Discovery Requests (1498-1532; 2006-2029);
- Sterling Linebaugh's Responses to Plaintiff's Discovery Requests;
- Heather O'Dell's Responses to Plaintiff's Discovery Requests;
- Defendants, City of Jasper, Griffin, Hadnot and Linebaugh's Motion to Dismiss Plaintiff's Original Complaint;
- Defendant, Heather O'Dell's Motion to Dismiss Plaintiff's Original Complaint; and
- Order entered on Defendants' Motion s to Dismiss Plaintiff's Original Complaint
- Plaintiff's Initial Disclosure and Expert Designations and Disclosures
- Videos
  - 1490 – Griffin-WG
  - 1491 – Interview
  - 1492 – Jail 1-4 Conoco
  - 1493 – Jail 5-7
  - 1494 – Jail 7
  - 1495 – Oberlechner & Linebaugh-WG
  - 1496 – Ranger TXDPS Investigation
  - 1497 – Scoggan-WG
- Defendants' Responses to Plaintiff's Second Set of Discovery Requests (2260-2738)
- Plaintiff's records from Burke Center; and
- Records from Jasper County Jail

**QUALIFICATIONS**:

*See* Resume included in Kerss report on Bates Label pages DEFT_COJ 002811-002813

**LIST OF CASES WHERE TESTIMONY GIVEN AT DEPOSITION/TRIAL**

*See* list included in Kerss report on Bates Label pages DEFT_COJ 2808-2809

3. **Robert C. Bux, MD**
   **1837 S. Nevada #261**
   **Colorado Springs, CO  80905**
   rebuxmd@homail.com

*See* Report dated November 1, 2020 attached hereto as Bates Label Document DEFT_COJ 002815-002821

Information provided to Dr. Bux for his review:

- Plaintiff's Original Complaint;
- Defendants' Initial Disclosures with documents and videos produced (1-1497);
- Defendants' Supplemental Disclosures with documents (2030-2070);

4

- Defendants' Second Supplemental Disclosures with documents (2071-2072);
- Defendant's Third Supplemental Disclosures with documents (2073-2259);
- Chief Hall's Responses to Plaintiff's Discovery Requests (1533-1997)
- Toderick Griffin's Responses to Plaintiff's Discovery Requests;
- Joshua Hadnot's Responses to Plaintiff's Discovery Requests (1498-1532; 2006-2029);
- Sterling Linebaugh's Responses to Plaintiff's Discovery Requests;
- Heather O'Dell's Responses to Plaintiff's Discovery Requests;
- Defendants, City of Jasper, Griffin, Hadnot and Linebaugh's Motion to Dismiss Plaintiff's Original Complaint;
- Defendant, Heather O'Dell's Motion to Dismiss Plaintiff's Original Complaint;
- Order entered on Defendants' Motion s to Dismiss Plaintiff's Original Complaint; and
- Plaintiff's Initial Disclosures and Expert Designations
- Plaintiff's Records from Burke Center; and
- Records from Jasper County Jail

**QUALIFICATIONS**:

*See* Resume attached hereto as Bates Label Document DEFT_COJ 002822-002826

**LIST OF CASES WHERE TESTIMONY GIVEN AT DEPOSITION/TRIAL**

*See* list attached hereto as Bates Label Document DEFT_COJ 002827-002831

## II.
## NON-RETAINED TESTIFYING EXPERTS

Defendants, **CITY OF JASPER, TODERICK D. GRIFFIN, STERLING RAMON LINEBAUGH, HEATHER RENE O'DELL and JOSHUA L. HADNOT** may call the following non-retained, expert witnesses to give expert testimony.  The following non-retained experts may possess expertise and knowledge in their respective areas.  This designation is made to permit Defendant the opportunity to introduce evidence from these individuals which might be deemed in the nature of opinion or expert testimony.

**Lt. Derek Woods**
**Sgt. Cody Christopher**
**Det. G. Hudson**
**Officer Brett Oberlechner**
**Officer Fowler**
**Officer Jared Scoggan**

5

**Officer Mark Fulcher**
**Officer Peters – Staff Officer**
**Jasper Police Department**
**555 South Main**
**Jasper, Texas  75951**
**Telephone:     409 384 3471**
**Facsimile:      409 383 6174**
*Officers on duty during the duration of Qualls' incarceration who may have knowledge of the facts involving this case and Qualls' behavior pattern while incarcerated (Identified in Hadnot Report  115-128)*

**Jack Armstrong**
**City of Jasper**
*Employee of the City of Jasper at the time of the incident who may have knowledge of the facts involving this case (Identified in Hadnot Report 123)*

**Rustie DeLome**
**Chasity Gray**
**Jasper Police Department**
**555 South main Jasper, Texas  75951**
**Telephone:     409 384 3471**
**Facsimile:      409 383 6174**
*Dispatcher(s) on duty during the time of Qualls incarceration who may have knowledge of facts involving this case and behavior pattern of Qualls during his incarceration (Identified in Hadnot Report 115-128)*

**Lena Lavender**
**Jasper Police Department**
*Crime Scene Investigator at scene of incident (Identified in Hadnot Report 115-128)*

**Jasper Police Department Personnel**
**Including but not limited to:**
    **Judge Robert Jackson – Municipal Judge**
    **Lt. Garret Foster**
    **Captain Mike Poindexter**
    **Chief Gerald Hall**
    **Sgt Anthony Smith - Narcotics**
    **Sgt Gary Pullen**
    **Det. Gerald Hudson**
    **Davy Hill – Narcotics Investigator**
    **Barbara Bienvenu – Mental Health Officer (*See Bienvenu Report 781*)**
*Personnel present during day shift who may have had contact with Qualls' during the time of his incarceration and may have knowledge of facts involving this case (Identified in Hadnot Report 115-128)*

Honorable Jimmie Miller
Justice of the Peace, Precinct 2
121 N. Austin, Room 105
Jasper, Texas  75951
Telephone: 409 384 4534
*Contacted by Captain Poindexter who arrived on scene after Decedent's Death and briefed on situation (Identified in Hadnot Report 116)*

Ronnie Billingsley
*Contacted by Captain Poindexter who arrived on scene after Decedent's Death and briefed on situation (Identified in Hadnot Report 116)*

Ranger Joe Haralson
Texas Department of Public Safety
*Contacted by Captain Poindexter who arrived on scene after Decedent's Death and briefed on situation (Identified in Hadnot Report 116)*

Deputy Cody Abshier
Constable Nile Nichols
Jasper County Sheriff's Department
*Other agency staff who may have had contact with Qualls during the time of his incarceration and may have knowledge of the facts involving this case (Identified in Hadnot Report 115-128 )*

Forensic Medical of Texas
Including but not limited to:
      Tommy J. Brown, DO – Forensic Pathologist
Beaumont/Jefferson County
P O Box 20097
Beaumont, Texas 77720-0097
Telephone: 409 726 2571
Facsimile:  409 726 2569
*Performed Autopsy of Steven Mitchell Qualls*

NMS Labs
Including but not limited to:
      William Schroedetr
3701 Welsh Road
P O Box 433A
Willow Grove, PA 19090-0437
Telephone: 215 657 4900
Facsimile:  215 657 2972
nms@nmslabs.com
*Toxicology Lab (See Report 846-851)*

*The following are Qualls' healthcare providers, including but not limited to all agents, representatives, treating physicians, nurses, technicians, employees and custodian of records and who may testify regarding Plaintiff's injuries sustained as a result of the incident made the basis of this lawsuit:*

**Christus SETX – Jasper Memorial Hospital**
**Including but not limited to:**
      Shanna Clark
      Becki Haley RN
      Pattie Sanders RN
      Jennifer Krajl RN
      Mary Cloyd RN
      Nancy Freck RN
      Christy Bailes
**1275 Marvin Hancock Drive**
**Jasper, Texas 75951-4985**
**Telephone:**    409 384 5461
**Facsimile:**    409 384 1991

**Acadian Ambulance Service**
**Including but not limited to:**
      Timothy McGee, EMT
      Williams Newcomer, EMT
      Nicholas Valdez, EMT
      Joshua Wahleithner, EMT
**130 E. Kaliste Saloom Road**
**Lafayette, LA  70508**
**Telephone:**    800 259 3333
**Facsimile:**    337 521 3641

### III.
### CROSS-DESIGNATION OF WITNESSES

Defendant hereby cross designates and states that it may call any expert witness identified or designated by any party to this litigation, whether an adverse party, intervenor, co-defendant or third-party defendant, if any, or any employee or representative of any party, subject to any objection Defendant may make concerning the designation of those expert witnesses.

## IV.
## <u>CROSS-EXAMINATION</u>

Defendant reserves the right to elicit, by way of cross-examination, opinion testimony from experts designated and called by other parties to the suit.  Defendant may also call, as a witness associated with other parties, any expert witness by any party who may be added to this lawsuit.

## V.
## <u>RIGHT TO WITHDRAW DESIGNATION OF ANY EXPERT</u>

Defendant reserves the right to withdraw the designation of any expert and to aver positively that any such previously designated expert will not be called as a witness to trial and to re-designate same as a consulting expert, who cannot be called by opposing counsel.

## VI.
## <u>RIGHT TO ELICIT ANY EXPERT OPINION OR LAY OPINION TESTIMONY</u>

Defendant reserves the right to elicit any expert opinion or lay opinion testimony at the time of trial which would be truthful, which would be of benefit to the jury to determine material issues of fact, which would not be violative of any existing Court order or the TEXAS RULES OF CIVIL PROCEDURE.

## VII.
## <u>DESIGNATION OF ADVERSE PARTIES</u>

Defendant hereby designates, as adverse parties, potentially adverse parties, and/or as witnesses associated with adverse parties, all parties to this suit, and all experts designated by any party to this suit, even if the designating party is not a party to the suit at the time of trial.  In the event that present or future parties designate an expert, but is subsequently dismissed for any reason from the suit or fails to call any designated expert, Defendant reserves the right to designate and/or call any such party or any such experts previously designated by any party.

## VIII.
## <u>RESERVATION OF ADDITIONAL RIGHTS</u>

Defendant reserves whatever additional rights it may have with regard to experts, pursuant to the Rules of Civil Procedure, the Rules of Civil Evidence, the case law construing same and the rulings of the Trial Court.

## IX.
## <u>RESERVATION OF RIGHT TO SUPPLEMENT DESIGNATION</u>

Defendant reserves the right to supplement this designation with additional designations of experts within any time limits imposed by the Court or any alterations of same by subsequent Court order or agreement of the parties or pursuant to the Rules of Civil Procedure, and as additional discovery is conducted in this matter.

*Edward B. Gripon, M.D. P.A.*

3560 DELAWARE STREET, SUITE 502
BEAUMONT, TX 77706
—
(409) 899-4472

October 30, 2020

Calvert Eaves Clarke & Stelly, LLP
Attorneys at Law
Frank Calvert—Attorney
Beaumont Tower
2615 Calder Ave., Suite 1070
Beaumont, TX 77702

RE: Civil Action No.1:20-cv-00124: Frances Earline Sims, Individually and as independent administrator, and on behalf of the Estate of Steven Mitchell Qualls and Steven Mitchell Qualls' heir(s)-at-law v. City of Jasper, et al, In the United States District Court—Eastern District

Dear Mr. Calvert:

I am writing, at this time, in regard to the above stated matter.

As you are aware, on or about October 20, 2020, you provided me some written documentation in regard to this issue.

I have had occasion to review the documents provided and will offer a summary of my initial opinion/s in the narrative below.

I had occasion to review two items.

These two items are as follows:

1)  A narrative summary from plaintiff's expert, Arthur Joyce, PhD dated October 2, 2020.

2)  Plaintiff's Original Complaint

Basically, the issue involves, from a mental health standpoint, any mental anguish and/or emotional distress experienced by France's Earline Sims as a result of the death of her son while in custody in Jasper, Texas on January 30, 2019 as well as the impact on her ability to cope and function after that incident.

Stephen Mitchell Qualls  was noted, in the documentation, to have a prior history of significant substance abuse.

This included, but may not be limited to, significant abuse of methamphetamine.

Arthur Joyce, PhD allocated to examine Francis Earline Sims on September 24, 2020 for what stated to be a total of three hours by tele medicine.

He ultimately opined that this individual was suffering from the following:

1) Major Depressive Disorder with "anxious distress"

In regard to depression, it would be important to separate a Grief Reaction, which is a normal process, from the existence of a Major Depressive Disorder.

Also, if a Major Depressive Disorder exists, it would be important to explore the impact of alternative psychosocial stressors.

2) Posttraumatic Stress Disorder

In my opinion, based upon reasonable psychiatric probability, there could be a number of factors that would play a role in the diagnosis of major depressive disorder.

Obviously, there could be both pre-existing issues as well as the possibility of a pre-existing condition.

In regard to Posttraumatic Stress Disorder,  I would have serious reservations about that diagnosis because I do not feel that she would meet the criteria for the initial "traumatic event".

Obviously, I can explain that in detail, if asked.

Discussion:  In regard to this ladies current condition and the impact of this incident, I would ask that I be allowed to perform a psychiatric interview with the formulation of a formal mental status examination in order to better address the issue of the impact of this incident, as well as, her current level of function/condition.

If after reviewing this brief narrative, any question might arise, please direct that inquiry to my office address listed above.

If I can be of further assistance in this matter, please do not hesitate to contact me through my office address listed above.

Signed: Edward B Gripon MD

## *Edward B. Gripon, M.D. P.A.*

3560 DELAWARE STREET, SUITE 502
BEAUMONT, TX 77706
———
(409) 899-4472

## CURRICULUM VITAE

**I**  **BIOGRAPHICAL:**

| | |
|---|---|
| Date of Birth: | July 31, 1943 |
| Place of Birth: | Houston, Texas |
| Marital Status: | Married |
| Wife: | Marilyn Thomas Gripon |
| Children: | Allison E. Gripon Gilbert<br>Date of Birth: 7/21/71 |
| Residence: | 2670 Thomas Road<br>Beaumont, Texas  77706 |
| Office: | 3560 Delaware Street, Suite 502<br>Beaumont, Texas 77706<br>Telephone #: 409-899-4472<br>Fax #: 409-899-9795<br>E-Mail: PSY 7147 @ AOL.COM |

**II:**  **EDUCATION:**

| | |
|---|---|
| Baylor University - | Waco, Texas 1961-1962 |
| B. S. Degree - 1964 | Lamar University - Beaumont, Texas<br>B. S. in Biology 1962-64 |
| M.D. Degree - 1968 | University of Texas Medical Branch<br>Galveston, Texas 1964-1968 |

**PAGE III**
**EDWARD B. GRIPON, M.D., P.A.**
**RESUME**

### VI.   MEDICAL LICENSURE:

1968:   Texas – License No. D5020
1970:   Florida – now inactive

### VII.   MILITARY SERVICE:

1968 - 1972:   United States Air Force, Flight Surgeon, Honorable Discharge,
Rank - Major

1969:   United States Air Force, Brook Air Force Base, Flight School, San Antonio,
Texas

### VIII:   TEACHING RESPONSIBILITIES:

Assistant Professor – University of Texas Medical Branch, Department of Psychiatry
and Behavioral Sciences 1975 until present

### IX.   MEMBERSHIP IN ORGANIZATIONS AND SCIENTIFIC SOCIETIES:

Phi Kappa Phi - 1964 - present
Phi Beta - 1964 - present (Medical Fraternity)
American Psychiatric Association - 1972 - 2003
APA Fellowship - awarded in 1984
Texas Medical Association - 1974 - present
Titus Harris Society - 1975 - present
American Academy of Psychiatry and The Law - 1988 - present
American College of Forensic Psychiatry - 2004 - present

### X.   COMMUNITY AND CIVIC ACTIVITIES:

Various community activities including involvement with the Trinity Episcopal School
and St. Mark's Episcopal Church

### XI.   SUMMARY OF TYPICAL CLINICAL PRESENTATIONS:

Have provided over 100 lectures to physicians over the past 30 years, involving the

**PAGE II**
**EDWARD B. GRIPON, M.D., P.A.**
**RESUME**

### III.   POSTGRADUATE TRAINING:

**1968 - 1969:**   Internship, Wilford Hall, United States Air Force  Hospital, San Antonio, Texas

**1972 - 1975:**   Residency in Psychiatry, Department of  Psychiatry and Behavioral Sciences, University of Texas Medical Branch, Galveston, Texas

**1974 - 1975:**   Chief Resident, Department of Neurology and Psychiatry, University of Texas Medical Branch, Galveston, Texas

### IV.   ACADEMIC AND HOSPITAL POSITIONS:

**1975 - present:**   Staff, UTMB Hospital System, Galveston, Texas

**1975 - 1982:**   Staff, St. Mary's Hospital, Galveston, Texas

**1979 - 1982:**   Chairman of the Department of Psychiatry, St. Mary's Hospital, Galveston, Texas

**1975 - present:**   Clinical Assistant Professor, Department of Psychiatry, University of Texas Medical Branch, Galveston, Texas

**1983 - present:**   Active Staff, Memorial Hermann Baptist Hospital - Psychiatric Facility, Beaumont, Texas

**1983 - present:** Consulting Staff, St. Elizabeth Hospital, Beaumont, Texas

**1992 - 2001:**   Medical Director, Memorial Hermann Behavioral Health, Beaumont, Texas

### V.   CURRENT HOSPITAL STAFF POSITIONS

1.   St. Elizabeth Hospital - Beaumont, Texas
2.   Memorial Hermann Hospital - Beaumont, Texas

DEFT_COJ 002743

PAGE IV
EDWARD B. GRIPON, M.D., P.A.
RESUME

treatment of mental health disorders, predominately in an outpatient setting.

My area of clinical expertise has involved predominately the utilization of psychopharmacology in the management of mental disorders.

XII.  HONORS

A). Fellowship - American Psychiatric Association, 1984
B). I also had the Honor awarded Distinguished Psychiatric Service Award by the Jefferson County Mental Health Association in 2008

XIII.  WORK HISTORY

| | |
|---|---|
| 1968-1969 | Internship |
| 1969-1972 | U. S. Air Force - Military Service |
| 1972-1975 | Residency in Psychiatry, UTMB - Galveston, Texas |
| 1975-12/82 | Private Practice of Psychiatry in Galveston, Texas |
| 1983-present | Private Practice of Psychiatry in Beaumont, Texas |

XIV.  CURRENT WORK AREAS

A). Outpatient Psychiatric Treatment
B). Forensic Psychiatry
  a). Clinical Evaluations
  b). Civil Evaluations

XV:  AREAS OF INTEREST

1.  Psychopharmacology
2.  Forensic Psychiatry

*Edward B. Gripon, M.D. P.A.*

3560 DELAWARE STREET, SUITE 502
BEAUMONT, TX 77706

(409) 899-4472

May 12, 2010

1.  RE:  Cause No. D-146,208; Arron J. Matt and Wife, Lavesta Matt vs. Kafong Investments, Ltd., Nordic Oriental Ship Management A/D and Sabine Pilots.

2.  RE:  Cause No. 92-CV-1129; David Earl Farney, et ux. vs. Glazer's Wholesale Drug Company, Inc. et al; in the 212th Judicial District Court, Galveston County, Texas.

3.  RE:  Cause No. 90-CV-1360; Russell B. Cornitius vs. Anchor Packing Company, et al; in the 212th Judicial District Court, Galveston County, Texas.

4.  RE:  Cause No. E-148,331; Mary Hodges as next friend of Jerel Duane Hodges, minor child, vs. Nations Bank of Texas, NA; 172nd Judicial District Court, Jefferson County, Texas.

5.  RE:  Cause No. B-145,061; Mary Kelley, individually and as natural guardian of Lakendra Kelley et al. vs Texas Drydock, Inc. et al; 60th Judicial District, Jefferson County, Texas.

6.  RE:  Cause No. 92-08778EV; Elizabeth McGill vs. Sugitek, Inc., et al; 157th Judicial District Court, Harris County, Texas.

7.  RE:  Cause No. 94-CV-00005; Winston and Betty L. Braswell vs. Sherwin Williams Company and Shaw Industries, Inc.; 122nd Judicial District Court, Galveston County, Texas.

8.  RE:  Cause No. D-149,679; Louis Esskew vs. Texas Inc., et al.

9.  RE:  Cause No. 92-8778EU; Susan Gunn vs. Medical Engineering Corporation et al; 157th Judicial District Court, Harris County, Texas.

10.  RE:  Cause No. 92—1123; Laura Elizabeth Brinson vs. Dow-Corning Corporation et al. in the 149th Judicial District Court, Brazoria County, Texas.

11.  RE:  Cause No. B-145,396; Mary A. Whitley vs. Fina Oil and Chemical Company et al; 60th Judicial District Court, Jefferson County, Texas.

DEFT_COJ 002745

**PAGE II**
**LEGAL CASES**
**May 12, 2010**

12.    RE:    Cause No. 15,126; Debra D. Foster vs. City of Jasper; District Court of Jasper County, Texas.

13.    RE:    Cause No. B-930,899-C; Judy Lavon Erway vs. Serv-Tech Inc. and Joseph David Self; 163rd District Court.

14.    RE:    James A. Trusty, Anita Terry, and Brenda Steed vs. Emken-Linton Mortuaries, Inc. and Scott Walker; 212nd Judicial District Court, Galveston County, Texas.

15.    RE:    Civil Action No. 9:94CV181; W. A. Shepard on his behalf and on behalf of a class of similarly situated persons vs. Albertson's Inc. in; United States District Court, Eastern District of Texas - Lufkin Division.

16.    RE:    Cause No. E-145,974; Gina Robinson vs. Munnaver Sultana, M.D. et al; 172nd Judicial District Court, Jefferson County, Texas.

17.    RE:    Cause No. 27,042-93-97; Amelia Guynes individually and as next of friend of Justin Ray Guynes, a minor, vs. Angelina County; District Court of Angelina County.

18.    RE:    Cause No. 20,690; in regard to John Campbell, deceased; County Court at Law No. 3 and Probate Court, Brazoria County, Texas.

19.    RE:    Cause No. 93-45155; Ralph L. Lowe vs. Monsanto Company et al in the 152nd Judicial District Court, Harris County, Texas.

20.    RE:    Terry Lynn Bass vs Southwestern Bell Telephone Company and Fred Morgan.

21.    RE:    Cause No. A-145,392; Janice Henderson Carrier vs Fina Oil and Chemical Company and Foster Wheeler Contractors, Inc. in the 58th Judicial Court of Jefferson County, Texas.

22.    RE:    Cause No. 94-CV-0367; Mary Beth Burkhardt vs Louis Alfred Lopez, M.D. et al in the 122nd Judicial District Court, Galveston County, Texas.

23.    RE:    Cause No. E-145,309; Linda Jones as next friend of Dena Barton vs Edward Northcutt and wife, Delores Northcutt et al; 172nd Judicial District Court, Jefferson County, Texas.

DEFT_COJ 002746

**PAGE III**
**LEGAL CASES**
**May 12, 2010**

24.   RE:   Cause No. 3,784-Estate of Ernest L. Kurth, Jr., deceased; Angelina County, Lufkin, Texas.

25.   RE:   Cause No. 92CV0995; J.E.M. and L.J.G., a minor by his next friend S.J.B. vs J.M.B. and B.A.B., 212th Judicial District Court, Galveston County, Texas.

26.   RE:   Cause No. 1-93-CV-143; State Farm vs Virgil Fullerton et al; District Court - Eastern District of Texas.

27.   RE:   Mary Kee and Vaughn Kee vs Sears, Roebuck, and Company and Herb Jensen.

28.   RE:   Cause No, E-135,337; Linda E. Reed vs Lester Franklin Henderson, Sr. and Lester Franklin Henderson, Jr.; 172nd Judicial District Court, Jefferson County, Texas.

29.   RE:   Cause No. 92-073165-A; Daniel Guzman et al vs Union Carbide Chemicals and Plastics Company, Inc.   et al in the 107th Judicial District Court of Cameron County, Texas.

30.   RE:   Cause No. 92-0022582; Rheta A, Morris vs Surgitech, a Division of Bristol-Meyers Squibb Company et al; 157th Judicial District Court, Harris County, Texas.

31.   RE:   Cause No. A-142,002; Luis Andrade et al vs Kirby Forest Industries, Inc. and Louisiana Pacific Corporation.

32.   RE:   Cause No. 92-CV1143; Frank Moore individually and on behalf of the Estate of Mary Louise Moore, deceased, vs Upjohn Company et al; 122nd Judicial District Court, Galveston County, Texas.

33.   RE:   Cause No. C-92-H-921548; United States District court, Southern District of Texas, Houston Division; in regard to   complaint  and  petition of OPI International, Inc. As owner of the DLB423 in cause of exoneration from or limitation of liability.

34.   RE:   Cause No. D-141,526; Gwendolyn Reck, et al vs Ray Coxe; 136th Judicial District Court, Jefferson County, Texas.

DEFT_COJ 002747

PAGE IV
LEGAL CASES
May 12, 2010

35.  RE:  Cause No. A-148,286; Diana LaDuca; individually and as next of friend of
         Chace Savoie, a minor vs Mary Libbon and Matt Libbon.

36.  RE:  Cause No. B-141,082; Katie Coghlan vs Paul Hugh Proffitt, M.D. et al; 60th
         Judicial District Court, Jefferson County, Texas.

37.  RE:  Cause No. 93-CV-00309; Michael Smith, Sr. and Wife, Jo Ann Smith vs
         Arkansas Louisiana Gas Company et al vs United States District Court,
         Eastern Division of Texas, Beaumont Division.

38.  RE:  Cause No. 94-20396; Costas Verinakis and Esfstrantia Verinakis vs The Ohio
         Life Insurance Company, et al; In the 190th Judicial District Court of Harris
         County, Texas.

39.  RE:  Mary Ruth Hightower, Jimmy Darrell Presnull, Sherian Elizabeth Rainwater,
         and Connie Sue McCleod, each individually and as representatives of the
         estate of Edward Leon Presnull, deceased vs Tri-County Mental Health
         Mental Retardation Services, Tri-County MHMR and Tri-County MHMR
         d/b/a/Life Sync

40.  RE:  Henry Fruedenburg, et al vs Gulf Health Care, Inc. et al; 56th Judicial District
         Court of Galveston County, Texas.

41.  RE:  C.A. No. 93-15995; Mary Meacham Saldivar vs Surgitek, Inc. et al; 157th
         Judicial District Court of Harris County, Texas.

42.  RE:  Cause No. 93-28967; Cindy McCampbell vs. Medical Engineering, Corp, et
         al; 157th Judicial District Court, Harris County, Texas.

43.  RE:  Cause No. 94-44052; Denise Butler vs Medical Engineering Corporation, et
         al; 157th Judicial District Court, Harris County, Texas.

44.  RE:  Cause No. B-152,475; Randy LeBlanc vs Air Logistics, Inc. et al.

45.  RE:  Cause No. 94-CV-0174; Jose R. Lozano vs Houston Industries, Inc. et al;
         56th Judicial District Court, Galveston County, Texas.

46.  RE:  Cause No. 95-CV-0148; Hubert McGaha and Louise McGaha vs McDonald
         Transit Associates, Inc.; Galveston Transit Management, Inc., d/b/a/ Island
         Transit; and Carlos Alcazar, III;  10th Judicial District Court, Galveston

PAGE V
LEGAL CASES
May 12, 2010

      County, Texas.

47.   RE:   Cause No. 93-65502-EC; Lucille Teran vs Medical Engineering Corporation, et al; 334th Judicial District Court, Harris County, Texas.

48.   RE:   Cause No. D950268-C; Debbie Bishop vs Coy Riggin and Safety Kleen Corporation; 260th Judicial District Court, Orange County, Texas.

49.   RE:   Cause No. 93-45391; Dianne Hope Self vs Medical Engineering Corporation d/b/a/ Surgitek, Inc. et al; 334th Judicial District Court, Harris County, Texas.

50.   RE:   Cause No. 93-47112; Melinda Wutke vs Medical Engineering Corporation, et al; 334th Judicial District Court, Harris County, Texas.

51.   RE:   No. 95-049-D; Craig A. Johnson, Individually and As Next Friend of Sarah Johnson and Betty R. Ruben vs Affiliated Consultants International, Inc., Alliance USA, Inc., Roy J. Hotz, Jr., M.D., The Chemins Company, Inc., James Cameron, Donald Smothers, and Royce McCoy; 105th Judicial District Court, Kleberg County, Texas.

52.   RE:   Cause No. 8-64267;   Ray T. Lanthier vs  Crumpler's Shipbuilding; In The United States  Department  of Labor Employment Standards Administration Office of Worker's Compensation Programs, Eighth Compensation District.

53.   RE:   Cause No. 2734-86-12; Fredonia State Bank, et al vs General American Life Insurance Company; District Court of Nacogdoches County, Texas.

54.   RE:   Cause No. 17,701; Harold L. Crose vs The AT&SF Railway Company; 32nd Judicial District Court, Nolan County, Texas.

55.   RE:   No. 94-033265; Bonnie Harris and Cecil Harris vs MEC Subsidiary, Inc. et al, 334th Judicial District Court, Harris County, Texas.

56.   RE:   Cause No. 92-08778PH; Anna Ives vs Medical Engineering Corporation, et al; 334th Judicial District Court of Harris County, Texas.

57.   RE:   Cause No. 92-08778GE;   Wendy Ferguson vs Medical   Engineering Corporation, et al; 344th Judicial District Court, Harris County, Texas.

58.   RE:   Cause No. 93-002875; Alpha Merle Denton and Charles William Denton vs

**PAGE VI**
**LEGAL CASES**
May 12, 2010

Baxter Healthcare Corporation, et al;   334th Judicial District Court, Harris County, Texas.

59.   RE:   Breast Implant Litigation; October Plaintiff, Linda Kelley.

60.   RE:   No. E-150,593; Michael S. Mace vs Zahi Youwakim, Betz Laboratories, Inc., Paul Van Namen, Alfred P. LaFleur, Charles R. Wills and Dale Conner

61.   RE:   Cause No. 93-17213; Betty Lou Hill and Roger D. Hill vs Medical Engineering d/b/a/ Surgitek, Inc., et al; 334th Judicial District Court, Harris County, Texas.

62.   RE:   Cause No. B-154,525; Tod Zellers vs OPI International Vessels, Ltd, et al; 60th District Court of Jefferson County, Texas.

63.   RE:   Cause No. 92-62623; Catherine Lanier vs Medical Engineering Corp., et al; In the 334th Judicial District Court of Harris County, Texas

64.   RE:   Cause No. 92-08778PV; Margaret Rabon vs Medical Engineering Corp, et al; In the 334th Judicial District Court of Harris County, Texas

65.   RE:   Cause No. 92-08778PU; Mary (Marilyn) Wilson vs Medical Engineering Corp., et al; In the 334th Judicial District Court of Harris County, Texas

66.   RE:   Cause No. H-93-1251; Elisha Haley vs Dow Corning Corp., et al; In the United States District Court for the Southern District of Texas, Houston Division

67.   RE:   Cause No. A-152,915; Donald Estell Dyer, et al vs United Parcel Services, Inc., et al; In the 58th Judicial District Court of Jefferson County, Texas

68.   RE:   Civil Action No. 94-2809 - Theresa Keohane v. Minnesota Mining & Manufacturing Corp., et al; In the United States District Court for the Southern District of Texas - Houston Division

69.   RE:   Huston v. American Snuff Company, et al.

70.   RE:   Cause No. B-150-678; Katherine F. McGill, Individually and as Executrix of the Estate of  Stephen Greer, Deceased and as next Friend of Stephen R. Greer, II and Shawn R. Greer, Minor Children vs Calaveras Asbestos, ltd., et

**PAGE VII**
**LEGAL CASES**
**May 12, 2010**

            al; In the 60th Judicial District of Jefferson County, Texas

71.    RE:    Cause No. 73343; The State of Texas vs. William Glenn Galbreath

72.    RE:    Candy Alonzo

73.    RE:    Cause No. 12,016-92-2, Wende Margaret Young vs. Arthur King and S & T Poultry, Inc., in the District Court of Nacogdoches County, Texas

74.    RE:    No. 95-04-1728-D; Manuel P. Gonzales, et al. v. Owens-Corning Fiberglass Corporation, et al; In the 103rd Judicial District Court of Cameron County, Texas

75.    RE:    No. E-152,591; Arthur Cruz, et. ux vs. Kari-Kool Transports, Inc., et. al; File No. 4193,43538

76.    RE:    Autholia Delce

77.    RE:    Clarissa Farmer, et vir vs. Triple R. Trucking, et al; District Court of Nacogdoches County, Texas; Cause No. 12,208-96-4

78.    RE:    No. B-144,211; Steven Randall vs. J & J Manufacturing Company; In the 60th Judicial District, Jefferson County, Texas; Our File: 47204

79.    RE:    No. E-156,506; Lisa Vincent vs. Gulf Copper & Manufacturing Corporation; In the 172nd Judicial District, Jefferson County, Texas; Our file: 77689

80.    RE:    Jefferson County Norplant Trial Plaintiffs

81.    RE:    Jewelene Bell, on her own behalf, on behalf of the estate of her son, Byron M. Bell, and on behalf of the surviving children of Byron M. Bell v. State Care Inc., et al

82.    RE:    Steven K. Bruce

83.    RE:    Cause No. 95-030427; Wenona Meier, et al v. Wyeth-Ayerst Laboratories Company, Inc., In the 129th Judicial District Court of Harris County, Texas

84.    RE:    D-960, 357-C; John L. Alston, and Cheryl C. Alston vs. Russell Holderby and

**PAGE VIII**
**LEGAL CASES**
**May 12, 2010**

L. M. Daigle Oil Company, Inc.,; 260th Judicial District Court, Orange County, Texas ; consolidated with D-960, 358-C; Danny E. Scott and Dawn W. Scott vs. Russell Holderby and L. M. Daigle Oil Company, Inc.,; 128th Judicial District Court, Orange County, Texas

85.   RE:   Cause No. 93-CV-0133; Pete S. Miller v Vic Maceo; in the 56th District Court, Galveston County, Texas

86.   RE:   Cindi Attaway-Gill vs Pfizer Incorporated, Carter-Wallace, Inc., the Estate of Linda Kluckhohn, LPC, Deceased and W. E. Furniss, M.D.; Cause No. 12,304-96-6 in the District Court of Nacogdoches County, Texas

87.   RE:   Records of John R. Allinson, deceased

88.   RE:   No. 1:97CV0584; Jack Williamson, et al vs Eli Lilly & Company M & W. File No. 3300-102

89.   RE:   Cause No. 18,622; Eugene Nance and Wynona Nance vs Mahindra USA, Inc. and Keating Tractor, Inc.; in the 1st Judicial Court of Jasper County, Texas

90.   RE:   Upsprung Family v Cathedral in the Pines Day Care Center

91.   RE:   Stacey M. Pias vs No. 94-5393 Wilson Lee, et al File #: 6991-9582

92.   RE:   Sharon Moorehead and Terri Short vs Tipton Ford, Inc.; District Court of Nacogdoches County, Texas; Cause No. 12,302-96-6

93.   RE:   No. A-153,055; Ricky Earnest vs. Ameripol Synpol; Our File: 70562

94.   RE:   No. 19,522; Tara Austin vs Exxon Corporation, et al; in the 76/276th Judicial District Court of Morris County, Texas

95.   RE:   Ellis V. Chatman vs. City of Nacogdoches, et al; U.S. District Court for the Eastern District of Texas, Lufkin Division; Civil Action No. 9:97CV082

96.   RE:   Cause No. 94CV00005; Winston and Betty L. Braswell vs. Sherwin-Williams Company and Shaw Industries, Inc.; In the District Court of Galveston County, Texas; 122nd Judicial District      Our File No. 3150.013

97.   RE:   Cause No. 16745; Stephanie Lynn Tate and Howard Tate vs. Clinton Daniel

DEFT_COJ 002752

**PAGE IX**
**LEGAL CASES**
**May 12, 2010**

Alexander, Jenarie F. Alexander and Country Mutual Insurance Company; In The 258th Judicial District Court of Polk County, Texas

98.  RE:  Cause No. 98-CV-0080; Charles McDonald and Melinda McDonald, Individually and as Next Friends of Blake McDonald, A Minor vs. George E. S. Reynolds, M.D., James A. Twining, M.D., Winnette V. Wimberly, M.D. and Bay Area Pediatric Associates, P.A.; In the 122nd Judicial District Court in and for Galveston County, Texas

99.  RE:  No. 97-CV-0618; Cynthia Jackson, et al. V. Bridgestone/Firestone, Inc. et al; In the 212th Judicial District Court of Galveston County, Texas

100.  RE:  CN: E-154,726; John Staggs, Christine Staggs, Jeff Moore, and Grace Moore vs. Dew Drop Inn, Inc., et al; in the 172nd Judicial District Court of Jefferson County, Texas

101.  RE:  Cause No. 97-CV-0907
McPherson v USAA Life Insurance Company

102.  RE:  Cause No. 1:97CV0628; Emily Turner vs. Bradley Holts, Dallas Moreau and Lucy Moreau; In the United States District Court for the Eastern District of Texas, Beaumont Division

103.  RE:  No. 18779; Mitchell Tyler vs. Temple-Inland, Inc., Temple-Inland Forest Products Corporation, et al; In the District Court, Jasper County, Texas; Our File: 76370

104.  RE:  Cause No. 16,214; Deborah Morgan v. Mack Anthony, In the District Court of Tyler County, Texas

105.  RE:  Rhonda Hardesty vs. Dr. John Simmons, Cause No. 31,640-98-12 in the District Court of Angelina County, Texas

106.  RE:  Cause No. 97-43594; Jane B. Ratisseau et al. V. Pasadena Bayshore Hospital, Inc., et al; In the 133rd Judicial District Court, Harris County, Texas

107.  RE:  No. 18779; Mitchell Tyler vs. Temple-Inland, Inc., Temple-Inland Forest Products Corporation, et al; In the District Court, Jasper County, Texas; Our file: 76370

PAGE X
LEGAL CASES
May 12, 2010

108.  RE:  Cause No. B-158,095; John McAllister v. Prime Time Pumping, Inc.; In the 60th Judicial District Court of Jefferson County, Texas; Our File No. 4875.21

109.  RE:  Cause No. A-950082; Linda Eaton v. West Orange-Cove Consolidated Independent School District

110.  RE:  Cause No. CV-98-286-JWF; The Carlsbad National Bank vs. Jim P. Meadows, Ann Wilson, Lee Meadows, and Lakeview Christian Home of the Southwest, Inc., in the Fifth Judicial District Court, County of Eddy, State of New Mexico

111.  RE:  Cause No. B-159, 890; Frank Strech, Individually and as Administrator of the Estate of Charlene Strech, and Thomas McCain v. Houston Industries, Incorporated d/b/a Entex and USAA Property & Casualty Insurance Agency, Inc., In the 60th Judicial District Court of Jefferson County, Texas

112.  RE:  Sheree Bruce, et al vs. Beaumont Regional Hospital, et al

113.  RE:  Civil Action No. A 98 CA 447 SS
          Norred et al; Plaintiffs vs. Amerson, R.N., et al., Defendants
          In the United States District Court
          For the Western District of Texas
          Austin Division

114.  RE:  Woodrow Edwards, Jr. vs. Jefferson County;
          Cause No.: E-156,122 in the 172nd Judicial District
          Court in Jefferson County, Texas
          G&G File No.: 11033

115.  RE:  No. 98-07-02354-CV; Michael Donnelly, et al vs. Aubrey Lasseigne, et al; In the 410th Judicial District Court, Montgomery County, Texas

116.  RE:  No. 98CV0573; James Garner and Kenneth Wayne Allen v. Houston Industries; In the 10th Judicial District Court of Galveston County, Texas

117.  RE:  Joshua Allen

118.  RE:  Harold Berg

119.  RE:  Willis Stout

DEFT_COJ 002754

**PAGE XI**
**LEGAL CASES**
**May 12, 2010**

120.   RE:   Cause No. 20629; Sandra Hopson v. Angelo Iafrate Construction Company
d/b/a Denton Highway Paving; In the District Court of Jasper County, Texas;
M&W No. 4928-3

121.   RE:   No. 97-8553, Bryan Ryan, et al v. Conoco, et al; In the 14th Judicial District
Court, Parish of Calcasieu, State of Louisiana

122.   RE:   No. 93CV0986; Brian Norman, et al. V. American Honda Motor Co., Inc.,
et al; In the 56th Judicial District Court of Galveston County, Texas

123.   RE:   Cause No. 97CV0457 - Willie Garza, et al vs. The City of Galveston, et al;
In the 122nd Judicial District Court of Galveston County, Texas

124.   RE:   Civil Action No. H-99-1073; George Watson v. AST Research, Inc. d/b/a
AST Computer; in the United States District Court for the Southern District
of Texas, Houston Division

125.   RE:   Cause No. 151,504-B; Linda Compton v Richard Bibb, M.D.; in the 78th
Judicial District Court of Wichita County, Texas

126.   RE:   KK's Corner

127.   RE:   No. 99CV0410 - Georgette McGuire v StanTrans, Inc. - in the 212th Judicial
District Court of Galveston County, Texas

128.   RE:   Stephen McKenna

129.   RE:   Jeannie Grinnell, et. al. v. The American Tobacco Company, Cause No. E-
122878, in the 172nd Judicial District Court of Jefferson County, Texas

130.   RE:   Cause No. D-162,736; Farland Bottoms, et al v. Percy Bailey, M.D., et al

131.   RE:   Civil Action No. 1:00CV-032; Marcia Fertitta vs. Texas Department of
Transportation and Longview Asphalt, Inc., In the United States District
Court, Eastern District of Texas, Beaumont Division

132.   RE:   No. E-159,087; Buncy Seago, Sr. and Audrey Seago, Individually and as
Heirs of the Estate of Deanene Linette Seago and Philip Cox v. Patrick
Barton, The City of Beaumont, Williams Medic-Aid EMS, Ford Motor

PAGE XII
LEGAL CASES
May 12, 2010

                  Company, and Collins Ambulance Corporation; 172nd Judicial District Court, Jefferson County, Texas

133.   RE:     Cause No. 96CV1189 - Kathy Lisa Barborak, et al. vs. Nina L. Miller., et al., In the 212th Judicial District Court of Galveston County, Texas

134.   RE:     William Samuel, III

135.   RE:     Kimberly Rodriguez

136.   RE:     Cause No. D-159277; Christopher Hanna, et al vs. Oryx Energy; In the 136th Judicial District Court of Jefferson County, Texas

137.   RE:     Cause No. 236-179505-99; Martye Ferguson v. American Medical Response of Texas, Inc., et al., In the 236th Judicial District Court of Tarrant County, Texas

138.   RE:     Cause No. 99CV0789 - David Dean VanAntwerp, Individually and As Surviving Parent of Michael Scott VanAntwerp, Deceased vs. The City of Galveston, The Flagship Hotel, Ltd., and The Flagship Hotel., d/b/a Flagship Hotel Over the Water; In the 212th Judicial Court of Galveston County, Texas

139.   RE:     Cause No. 00-02-01259; John Laguna v. Kevin Lynn Spells and Knoll Pharmaceutical Company, In the 221st Judicial District Court, Montgomery County, Texas

140.   RE:     Mitzi Eberhard

141.   RE:     Cause No.: G-01-155; Mary Jane DiPaolo, Individually and as trustee of the Francis A. DiPaolo Family Trust vs. U. S. Financial Life Insurance Company; In the United States District Court, Southern District of Texas, Galveston, Texas

142.   RE:     Kristen Tyler

143.   RE:     Cause No. B-0163574; Stephen P. Boyd v. John Earl Conner and Processors of Electric Conductor of Texas, Inc. D/B/A Pelco; In the 60th Judicial District Court of Jefferson County, Texas

DEFT_COJ 002756

**PAGE XIII**
**LEGAL CASES**
**May 12, 2010**

144.   RE:   Cause No. 1999956701; John Laguna vs. Kevin Lynn Spells and Knoll Pharmaceutical Company; In the District Court of Harris County, Texas; 280th Judicial District

145.   RE:   C.A. No. G-00-283; Wylie M. Wilkinson and John Wilkinson vs Suzuki Motor Corporation, et al

146.   RE:   Gordon House vs Texas Department of Transportation and Conley Owen, Individually and in his Official Capacity as a Texas Department of Transportation Official; Civil Action No. 6:00CV210 in the United States District Court for the Eastern District of Texas, Tyler Division

147.   RE:   Cause No. 21922; Elizabeth Ann McMahon v. Jasper Memorial Hospital, et al; District Court, Jasper County, Texas

148.   RE:   Cause No. A-159, 446; Clay Walker, Sr., et al vs. Centana Intrastate Pipeline Company, et al; In the 58th Judicial District Court of Jefferson County, Texas

149.   RE:   Dreyer vs. Evanston Northwestern Healthcare, et al

150.   RE:   Norman Batey

151.   RE:   Cause No. 2000-4069; Herlinda Gonzalez v. Providence Memorial Hospital, County Court at Law Number Five, El Paso County, Texas

152.   RE:   Laura S. Gee McMillon

153.   RE:   Cause No. 306,816-401
In Re: Estate of Charles David Kipple, Deceased, Barbara Kipple, Individually and as Representative of the Estate of Charles Kipple, Deceased, Charles Wellington Kipple, John Christopher Kipple and Kimberly Lynn Kipple Richardson v. Eileen K. Starbranch, M.D., Starbranch Psychiatry Associates, P.A., Metro National Corporation d/b/a Spring Shadows Glen Psychiatric Hospital, Memorial Hermann Hospital System, G.D. Searle &Co., Walgreen Co.; In Probate Court No. 2 of Harris County, Texas

154.   RE:   The State of Texas vs. Edith Beebe; In the 253rd District Court of Liberty County, Texas; Number 24,322; 24,323; 24,324 and 24,325

155.   RE:   State of Texas vs. Demetric Alfred

**PAGE XIV**
**LEGAL CASES**
**May 12, 2010**

156.   RE:   Stephan Southern, et al. v. United States of America
              Civil Action No. A-00-CA-374-JN

157.   RE:   9:01-CR-30 United States vs. Dr. Ronald Landefeld

158.   RE:   Cause No. D-162,981; Jerry Ardoin and Diann Ardoin vs. Bannum Place of
              Beaumont Inc., Bannum Inc., Timothy Morrison and Charles Hurley.; In the
              136th District Court of Jefferson County, Texas

159.   RE:   Amanda Allbright v. Brookshire Brothers, ltd.; In the District Court of Polk
              County, Texas; Cause No. 17,406

160.   RE:   Civil Action No. 1:01CV-185; Orvel D. Bounds vs. The Estate of Louis E.
              Phillips, Deceased and Louis E. Phillips; In the United States District Court,
              Eastern District of Texas, Beaumont Division; GBG File # 13773

161.   RE:   Cause No. 00CV0308; Mario Alaniz, et al vs. Rebello Food and Beverage
              Services, LLC et al, 212th District Court, Galveston County, Texas

162.   RE:   Felipe Medina-Mar #89062-079

163.   RE:   Donald Keith Newbury

164.   RE:   State v. Michael Rodriguez

165.   RE:   Cause No. E 166488; Deborah L. Staley, Phillip B. Jones, Daniel M. Staley
              and Melissa E. Staley vs Texas Farm Bureau Mutual Insurance Company and
              Michael S. Dugger; In the District Court of Jefferson County, Texas, 172nd
              Judicial District Court

166.   RE:   Jeffrey Sayrie

167.   RE:   Cause No. 02-05239-00-0-C; Arthur Allen and Cynthia Allen v. Novartis
              Consumer Health, Inc., et al.; In the 94th Judicial District Court of Nueces
              County, Texas

168.   RE:   Cause No. 23472*BH03; Ronald Presler and Patsy Presler vs. The Lincoln
              Electric Company, et al; In the 23rd Judicial District Court of Brazoria
              County, Texas

DEFT_COJ 002758

**PAGE XV**
**LEGAL CASES**
**May 12, 2010**

169.   RE:   No. 65,987-A; Juanita Rohecek, Individually and as a Representative of the Estate of Joseph Thomas Rohecek, Jr., Deceased, et al. V. Oneak Inc. dba Texas Gas Service Company; Southern Union Gas Company Inc. and The Estate of Clement Harvey Kober, Deceased; In the Probate Court of Galveston County, Texas

170.   RE:   Michael Mullins vs USSTC

171.   RE:   Carol Matthews-Williams

172.   RE:   Cause No. A-167,215; Wesley Thedford, et al v. State Farm Mutual Automobile Insurance Company, et al; In the 58th Judicial District Court, Jefferson County, Texas

173.   RE:   Cause No. 10799; The State of Texas vs. Demetrius Tyrone Holloway; In the 278th Judicial District Court of Madison County, Texas

174.   RE:   Cause No. 87-38746; In the Interest of Chase Taylor, A Child; In the 246th Judicial District Court of Harris County, Texas

175.   RE:   David Hollier

176.   RE:   State of Texas vs. Edward Beck Sandefer

177.   RE:   No. 167,429; Jack Mullin v. Star Enterprise

178.   RE:   State of Texas vs. Shane Dykes; Aggravated Assault on a Public Servant

179.   RE:   Cause No. A-170,432; Frank Folks vs. Handicapped Lift Aids, Inc., et al; in the 58th Judicial District Court of Jefferson County, Texas

180.   RE:   Shannon Agofsky

181.   RE:   Paula Richmond v. Jefferson County; Cause No. D-166,960 in the 136th Judicial District Court of Jefferson County, Texas

182.   RE:   Klein Children

**PAGE XVI**
**LEGAL CASES**
**May 12, 2010**

183.   RE:   Cause No. 34,813-01-12; Carrie Holland v. Memorial Health System of East Texas and LeRoy Patton, Jr.; in the Judicial District of Angelina County, Texas

184.   RE:   Wilson Prejean

185.   RE:   The State of Texas vs. Justin Clapp, Cause No. 007-1244-02
The State of Texas vs. Shawn Wilhelm, Cause No. 241-1231-02
The State of Texas vs. Heather Mizer, Cause No. 241-1230-02
The State of Texas vs. Joseph Walton, Cause No. 007-1252-02
The State of Texas vs. Brett Matthews, Cause No. 007-1249-02

186.   RE:   Cause No. B-166,892; Nancy Lynn Kuecker, et al v. Wyeth, and Joe Doe

187.   RE:   In the Matter of Joshua Boaz
Juvenile Murder
Cause No. 003-0062-03

188.   RE:   State of Texas vs. Zaid Albana; Murder

189.   RE:   Cause No. 25685-A, et al v. Janet Gay; In the County Court at Law No. 3 and Probate Court of Brazoria County, Texas

190.   RE:   Capital Murder Trial, Frank Javier Padilla

191.   RE:   State of Texas vs. Johnny Lee Williams Jr. Capital Murder
Cause No. 114-0524-05

192.   RE:   Tamarah Lynn Boykin
Vs. No. 2003-2620
PPG Industries Inc., et al

193.   RE:   Cause No. 04CP0094; In the Interest of Victoria Gonzales, Shelby Gilbert and Daniel Gilbert Children; In the 306th Judicial Court of Galveston County, Texas

194.   RE:   C. A. No. 05-377; Richard Corsey vs BP Amaco Chemical Company, et al; In the United States Court for the Southern District of Texas, Galveston

**PAGE XVII**
**LEGAL CASES**
**May 12, 2010**

Division

195.  RE:  Civil Action No. G-05-376; James Michael Patrick vs BP Amoco Chemical Company, et al; In the United States District Court for the Southern District of Texas, Galveston Division

196.  RE:  State v. Luis Manuel Avalos
Cause No. 15941

197.  RE:  State of Texas vs. Clifton Williams, 114-1739-05, Capital Murder

198.  RE:  State of Texas vs. Allen Bridges, Capital Murder, 114-81252-97

199.  RE:  The State of Texas vs. Gary Sinegal
Cause Nos. 94878 / 95860 / 95938

200.  RE:  Cause No. E-170,882; Valarie Teague v. Baptist Hospitals of Southeast Texas, et al; In the 172nd Judicial District Court, Jefferson County, Texas; GG#: 51445

201.  RE:  Cause No. 05-CV-0337; Miguel Arenazas, et al. vs. BP Products North America, Inc., et al; In the 212th District Court of Galveston County, Texas

Cause No. 05-CV-0337-A; In the BP Amoco Explosion March 23, 2005 Coordinated Discovery Proceedings; In the 212th Judicial District Court of Galveston County, Texas

202.  RE:  Cause No. D-170-007; Robert S. Watson, et al v Ezea D. Ede, M.D., et al OB&T File 64592

203.  RE:  Cause No. E173011; Lisa Condon and Brian Condon v. Derrick Dale Foxworth and Herschel L. Hobson, Attorney at Law; In the 172nd Judicial District Court of Jefferson County, Texas

204.  RE:  Cause No. 2003-38188; Richard Fielder, et al v. Cemex / Houston Shell & Concrete and Otis Howard, III; In the 281st Judicial District Court of Harris County, Texas

205.  RE:  Cause No. B-169-540; Facility Insurance Corp., the Successor in Interest to the Texas Worker's Compensation Assigned Risk Pool v. Anthony Zenon

PAGE XVIII
LEGAL CASES
May 12, 2010

and Neurobehavioral Resources, Ltd., In the 60th District Court of Jefferson County, Texas

206.   RE:   No. D-173-880 in the 136th Judicial District Court of Jefferson County, Texas; Thomas Louis v. Mobil Chemical Company, et al

207.   RE:   Cause No. 26,430 Johnny Bradley, Individually and a/n/f of Lauren Bradley and Phillip Bradley, Minors v. Beverly Rauscher, PA-C in the Judicial District Court of Jasper County, Texas

208.   RE:   No. D-0173953; Patsy Holland, Individually and on behalf of the Estate of Larry Holland, Deceased, Micah L. Holland, Sandra Holland and William A. Holland v. Baptist Hospitals of Southeast Texas dba Memorial Hermann Baptist Hospital and Sharad B. Kulkarni, M.D.; In the 136th Judicial District Court of Jefferson County, Texas

209.   RE:   Cause No. A-175,506; Mary Garcia, Ind. and as Personal Representative of the Estate of Melany Avila, Deceased; In the 58th Judicial District Court of Jefferson County, Texas

210.   RE:   Cause No. A-177,115; Dorethia Thomas and Greg Powell, Individuall and as the Representatively of the Estate of Dezre Dietra Powell, Deceased, Dorethia Thomas Individually and as n/b/f of Najehwan Rhodes and Italy Powell, Minor Children, and Tywan Thomas vs. Tony Neville and Transit Mix Concrete & Materials Company; In the 58th Judicial District Court of Jefferson County, Texas

211.   RE:   David Renteria

212.   RE:   The State of Texas vs. Randall Wayne Mays
              Capital Murder; 5/17/07

213.   RE:   Ronald W. Yates vs Pine Bluff Sand & Gravel Company
              Cause No: 106-CV-0376

214.   RE:   State of Texas v. Jose Esparza, 20060D05258, Capital Murder

215.   RE:   Deanna Laney, Appellant v. The State of Texas, Appellee
              Cause No: 12-06-00170-CV

**PAGE XIX**
**LEGAL CASES**
**May 12, 2010**

216. RE: The State of Texas vs Clifton Lamar Williams
Cause No: 114-1505-06

217. RE: Kim Ly Lim
Cause No: 599621-A and B

218. RE: Mary Garcia, Individually and as Personal Representative of The Estate of
Melany Avila, deceased vs Golden Triangle Living Centers
Cause No: A-175-506

219. RE: State of Texas vs. David McBride, Murder, 007-1643-07

220. RE: State of Texas vs. Joshua Mauldin
Cause No: 07CR1560

221. RE: State of Texas vs. Jackie Green, Murder, 241-1602-07

222. RE: State of Texas vs Shawn Marr, Murder, 241-0829-06

223. RE: State of Texas vs Steven Umphress, Murder, 241-0839-06

224. RE: State of Texas vs Catherine Stevens, Capital Murder, 007-1842-07

225. RE: State of Texas vs James Cowart, Capital Murder, 241-0991-07

226. RE: State of Texas vs Robert Spencer, Murder, 241-1593-06

227. RE: State of Texas vs Timothy Johnson, Capital Murder, 114-2867-06

228. RE: State of Texas vs Korrenthin Baker, Capital Murder, 114-2864-07

229. RE: C.A. No. G-06-749; Keith Joseph v. RDL Energy Services, LP, et al; United
States District Court, Southern District of Texas, Galveston Division

230. RE: Christina Boston

231. RE: Cause No. A-176,613; Brent L. Mainwaring, M.D., P.A. and Brent L.
Mainwaring, M.D. vs. Advanced Imaging Associates, L.L.P. and James D.
King, M.D., P.A.

**PAGE XX**
**LEGAL CASES**
May 12, 2010

232.   RE:   No. B-166,524 in the 60th Judicial District Court of Jefferson County, Texas;
Terry Reese v. Rodney Rife

233.   RE:   George Stephens

234.   RE:   Cause No. D-168792; James Wolff and Patti Wolff, Individually and as
Representative of the Estate of James Wolff, Deceased vs Hoffman-La Roche
Inc. and Roche Laboratories Inc., In the 136th Judicial District, Jefferson
County, Texas

235.   RE:   Susan Smith, as Guardian for William Cole Cooper, a Minor vs UST, Inc.,
a foreign corporation, U. S. Smokeless Tobacco Company, a foreign
corporation; and U. S. Smokeless Tobacco Brands, Inc., a foreign corporation
No. CIV- 04-170-E-BLW

236.   RE:   Raymond T. Kitchens, et al vs The Lincoln Electric Company
Cause No: 23472*BH03

237.   RE:   No. 2007-07422; Augustine Turner, Lionel Coleman, Sr., Ronniqua D.
Coleman and Laporscha Coleman, as Heirs and Representatives of the Estate
of Karen Yvette Green, Deceased v. San Jacinto Methodist Hospital,
Mansour Sanjar, M.D., Ted W. Krell, M.D., Beth A. Choby, M.D. and Jeb
Johnson, M.D.; in the 215th Judicial District Court of Harris County, Texas

238.   RE:   Dennis McDonald, Individually and as Next of Friend to Margaret Sue
McDonald, Deceased vs Woodlea Community Home, et al
OBT No: 60.62461.040

239.   RE:   Macias vs c.p. Allstar, et al

240.   RE:   Thomas Louis vs Mobil Chemical Company, a Division of Exxon Mobil Oil
Corporation, James Bowser, and Randall Roy

241.   RE:   State vs James Jones
Cause No:   84140

242.   RE:   Lisa Carroll and Lee Carroll, Plaintiffs vs Robert Faseler, D.O. and Keli An
Prestridge, CNP
Cause No: B175438

DEFT_COJ 002764

PAGE XXI
LEGAL CASES
May 12, 2010

243.   RE:   Lisa Condon and Brian Condon, Plaintiffs vs Derrick Dale Foxworth, and
             Herschel L. Hobson, Individually, D/B/A Herschel L. Hobson, Attorney at
             Law
             Cause No; A 050418 C

244.   RE:   Cesar Roberto Fierro aka Cesar Roberto Reyna v The State of Texas
             Cause No: 68383

245.   RE:   Rosemary Gaines

246.   RE:   The State of Texas v Daniel Lee Flores, No. 03-3303 before the 106th Judicial
             District Court of Gaines County, Texas

247.   RE:   State of Texas vs Harold Ashlock
             Cause No: 94663

248.   RE:   Arthur Allen

249.   RE:   Kelly June Hill, et all vs U. S. Smokeless Tobacco Company
             Docket No. X05-CV-05-400

250.   RE:   Lourdes Maria Vargas De Damian, Individually, as Next Friend to Nicole
             Denisse Damian Vargas and as representative of the estate of Demetrio
             Damian Chen, Deceased; Guillermo Jose Gasperi, Individually and as
             representative of the estate of Gloria Gasperi, Deceased; Carla Gasperi,
             Individually and as representative of the Gloria Gasperi, Deceased; Ricardo
             Adolfo Garay Barrios; Lorenzo Romagosa Acrich; and Ida Romagosa De
             Aranjo vs Bell Helicopter Textron, Inc., Bell Helicopter Corporation; Bell
             Helicopter Korea, Inc.; Bell Helicopter International, Inc., and Bell
             Helicopter International Sales Corporation
             Cause No:  352-191163-02

251.   RE:   Robbie Wiley, et al vs. FedEx Ground, et al
             Number; 520,253        Division "8"
                      consolidated with
             Safeway Services, Inc. vs Bernard Bethley, et al
             Number: 514,553        Division "26"
             19th Judicial District Court
             Parish of East Baton Rouge / State of Louisiana

DEFT_COJ 002765

**PAGE XXII**
**LEGAL CASES**
**May 12, 2010**

252.   RE:   State of Texas vs Irving Alvin Davis
                Cause No.  20010D06419

253.   RE:   Case #1:06-cr-102; U.S.A. vs Ellis Mosher

254.   RE:   The State of Texas vs Lossie Rashad Wade, Jr.
                Cause No: 114-1218-07

255.   RE:   Michael L. McMullin
                Kelli McMullin
                        Plaintiffs

                vs

                United States Tobacco Company, a foreign
                corporations; Winn-Dixie Stores, Inc.,
                a Florida corporation; and
                Lil' Champ Food Stores, Inc.,
                a Florida corporation
                        Defendants

256.   RE:   Robert Anthony Golden and
                Shannon Coyle Golden
                vs.
                Irisndt, Inc., Enpro Systems, LTD.,
                Kevin Wieland and Doyle Rogers
                Case No: 2006-39051

257.   RE:   State of Texas vs Parker Lee Francis
                Cause No. 94174

258.   RE:   Cause No. E17698; Lisa Batiste, et al vs Spindletop MHMR Service; in the
                District Court of Jefferson County, Texas

259.   RE:   The State of Texas vs Juan C. Lopez
                Cause No. 07-1949

260.   RE:   Cause No: 306,816-401; In RE: Estate of Charles David Kipple, Deceased,
                Barbara Kipple, Individually and as Representative of the Estate of Charles
                Kipple, Deceased, et al v. Eileen K. Starbranch, M.D., et al; In Probate Court

PAGE XXIII
LEGAL CASES
May 12, 2010

No 2 of Harris County, Texas

261.  RE:  Cause No. E-0170049; Gerri L. Opferkuch, Individually and as Next Friend of Aaron Opferkuch and Andrew Opferkuch, Minors, and on Behalf of the Estate of Sam Opferkuch, Deceased, and Amanda Opferkuch v Baptist Hospital of Southeast Texas d/b/a Memorial Hermann Baptist Fannin Hospital and d/b/a Memorial Hermann Baptist Behavioral Center and Ramaswami Lakshmanan, M.D., In the 172nd Judicial District of Jefferson County, Texas

262.  RE:  State of Texas vs Donna L. Wilde aka Donna Smith
          Cause No. 96415

263.  RE:  Cause No. 26,430 Johnny Bradley, Individually and a/n/f of Lauren Bradley and Philip Bradley, Minors vs Beverly Rauscher, PA-C in the Judicial District Court of Jasper County, Texas

264.  RE:  Beverly Cherry vs State Farm Lloyd's, Ronnie Lopez, Tom Frankum and Premier Claims Investigation, Inc.
          Cause No:  44669

265.  RE:  Cause No. C-184,804; In the Interest of Colton Allen Engle, a Child, In the 279th Judicial District Court of Jefferson County, Texas

266.  RE:  State vs Lee French
          Cause No: 94252

267.  RE:  The State of Texas vs Squire James Jones
          Cause No: 84140

268.  RE:  Chester Mason - Murder

269.  RE:  Cause No. A175,072; Marcelo Molfino vs The City of Port Arthur, et al; 58th District Court, Jefferson County, Texas

270.  RE:  Tinh Thanh Pham
          Cause No: C9943-J

271.  RE:  State of Texas vs Gary Sinegal
          Cause Nos: 94878 / 95860 / 95938

DEFT_COJ 002767

PAGE XXIV
LEGAL CASES
May 12, 2010

272.   RE:   Cause No: E-170,882; Valarie Teague vs Baptist Hospitals of Southeast
Texas, et al, In the 172nd Judicial District Court, Jefferson County, Texas;
GG#: 51445

273.   RE:   Cause No: A-177,115; Dorethia Thomas and Greg Powell, Individually and
as the Representative of the Estate of Dezre Dietria Powell, Deceased,
Dorethia Thomas, Individually and as n/b/f of Najahwan Rhodes and Italy
Powell, Minor Children, and Tywan Thomas vs Tony Neville and Transit
Mix Concrete & Materials Company; In the 58th Judicial District Court of
Jefferson County, Texas

274.   RE:   Cause No: E-170,007; Robert S. Watson, et al Ezea D. Ede, M.D., et al
OB&T File 64592

275.   RE:   State of Texas vs Blake Allen
Cause No: 1005901

276.   RE:   Cause No. 2004-21304-A; Bruce Lee Crowley and Amanda Deeanne
Crowley vs Sunbelt Hotels Limited Partnership and Harold Edward
Stanislaw; In the 113th Judicial District Court of Harris County, Texas

277.   RE:   A-175,873 Phyllis Gish v Christus S. Elizabeth, et al

278.   RE:   Jon Russell, Deceased. Our Client: Donna Russell. Date of death: 2/13/2008

279.   RE:   Cause No. E-172,552-H; Terry Reed, et al v. Kenco Group., et al.; In the
172nd Judicial District Court of Jefferson County, Texas.

280.   RE:   No. 08CV1010; Robert Goswick vs. H.B. Zachry Company, et al; In the 122nd
Judicial District Court of Galveston County, Texas

281.   RE:   No. 2008-74658 - (Multidistrict Litigation Docket No. 08-0725); In re Deep
South Crane &Rigging Company - Crane Collapse Litigation; In the 157th
Judicial District Court of Harris County, Texas

282.   RE:   Robert Lee Stevens

283.   RE:   Cause No. B-181,905; John and Jane H, Individually and on Behalf of KH,
a minor child v Wesley United Methodist Church, Beaumont, Texas; et al.;
in the 60th Judicial District Court of Jefferson County, Texas

PAGE XXV
LEGAL CASES
May 12, 2010

284.   RE:   Clearvalve, Inc and Richard Alan Haase vs Pearl River Polymers, Inc., et al
             Civil Action No. 6:06-CV-197 LED

285.   RE:   Miss Jessica Floyd

286.   RE:   State of Texas vs Cedric Granger
             Cause No. 09-06456

287.   RE:   Cause No. 08CV0038; Robbie Garcia, et al. vs. BP Products of North
             America Inc.; In the 405th Judicial District Court of Galveston County, Texas

288.   RE:   State of Texas vs. John Pippen
             Cause Nos: 007-2039-09, 007-0240-09, 007-0241-09, 007-0242-09, 007-
             0243-09, 007-0244-09

289.   RE:   State of Texas vs. Thomas Dunn, Capital Murder, Unindicted, victim -
             Francis Willingham

290.   RE:   Cause No. DC-08-12129; Jose Munoz v. Liberty Mutual Insurance Company
             and Latrice Hayes, In the 162nd Judicial District, Dallas County, Texas

291.   RE:   State of Texas vs. Omar Sharis Jackson, Capital Murder, 241-1397-09

292.   RE:   State of Texas vs Joe Melvin Wells
             Cause No. 08-03511

293.   RE:   State of Texas vs Keyona Henderson, Capital Murder, 007-1399-09

294,   RE:   State of Texas vs James Cowart, Capital Murder, 241-0991-07

295.   RE:   Andrew Casey Howard

296.   RE:   State of Texas vs Demontrell Miller, Capital Murder, 241-1251-08

297.   RE:   State of Texas vs Thomas Dunn, Capital Murder, Unindicted, victim -
             Catheryn Powell

298.   RE:   State of Texas vs Jason Robert Bourque, Arson - Unindicted

299.   RE:   State of Texas vs Cathryn Lake, Criminal Solicitation to Commit Capital

DEFT_COJ 002769

**PAGE XXVI**
**LEGAL CASES**
**May 12, 2010**

               Murder, 241-0851-09

300.   RE:   State of Texas vs Rudolph Regalado, Jr., Criminal Solicitation to Commit
                Capital Murder, 241-0852-09

301.   RE:   State of Texas vs Isidro Vences, Murder, 114-0354-10

**Frances Earline Sims v City of Jasper, Toderick Griffin, Sterling Linebaugh, Heather O'Dell and Joshua Hadnot**

CIVIL ACTION NO. 1:20-CV-00124

# United States District Court
# Eastern District of Texas, Beaumont Division

## Statement of Opinions by Expert for the Defense Regarding Law Enforcement and Jail Operations

**11/2/2020**

## Thomas Charles Kerss

Law Enforcement Consultant
4188 State Highway 204
Nacogdoches, TX 75964
thomas_kerss@yahoo.com
(936) 556-2575 or (512) 589-3922

Greetings,

I have been retained as an expert witness regarding law enforcement and jail matters by Mr. Frank Calvert, counsel for the defense in the above styled cause. My Curriculum Vitae (CV) and a summary of my professional qualifications, testimonial experience, and fees is included with this report. The body of this report contains a statement of the beliefs and the professional opinions I formed after making an examination of the facts and information made available to me regarding this matter, as referenced below. The opinions and conclusions stated herein are wholly mine and were reached using my professional judgments as founded upon my training, education, and years of experience as a career peace officer, law enforcement and jail administrator, law enforcement consultant and law enforcement instructor. I reserve the right to alter or modify these opinions in the future, should additional information be made available to me that would cause all or a portion of these beliefs to change.

DEFT_COJ 002771

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO.  1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

# I. Qualifications:

My name is Thomas Kerss.  I am a citizen of the United States of America and a lifelong resident of the Great State of Texas.  I am 59 years of age and have been a licensed Texas peace officer for the past 39 years.  I began my law enforcement career as a patrol officer with the City of Tyler, Texas Police Department in 1981.  I am currently employed by the Texas Association of Counties (TAC) based in Austin, Texas as supervisor of TAC's team of Law Enforcement Consultants and Trainers.

I first joined TAC as a Law Enforcement Consultant in 2013.  I advanced to the status of Senior Law Enforcement Consultant before being promoted to the newly created position of law enforcement team supervisor near the start of 2020.   Prior to my employment at TAC, I served as a peace officer and jailer with the Nacogdoches County, Texas Sheriff's Office for approximately twenty-three years, including three consecutive terms of office as sheriff (2001-2012).

I hold a Master Peace Officer's License, a Master Jailer's License and a Law Enforcement Instructor Certificate (1986) through the Texas Commission on Law Enforcement (TCOLE).  I have a Bachelor of Applied Arts and Sciences (BAAS) degree in Law Enforcement from Stephen F. Austin State University and I am a Certified Public Manager (CPM).  I am a 1995 graduate of the FBI National Academy (Session 181) in Quantico, VA, as well as a 1981 graduate of the Kilgore College, East Texas Police Academy.  I am a Past-President of the Sheriffs' Association of Texas (2009 & 2010), as well as the East Texas Peace Officers' Association (2000-2001) and the Nacogdoches County Peace Officers' Association (1992-1993).  I am an active member of the National Sheriffs' Association (NSA) and I have served as a member of the NSA Legal Affairs Committee since 2009.   Between 2009-2012, I was one of only twenty sheriffs, nationwide, selected to meet on a semi-annual basis with the director of Immigration and Customs Enforcement (ICE) regarding Homeland Security and Border Security matters. From 2006-2014, I was the lone appointee designated to represent Texas Jails on the

DEFT_COJ 002772

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

National Institute of Justice (NIJ) Corrections and Technology Assessment Committee for the Rocky Mountain Region.

Nacogdoches County, Texas was in the Burke Center's local mental health authority (LMHA) coverage area.  During my tenure in office as sheriff, I served as a Committee Member on the Burke Center Regional Mental Health Advisory Council and chaired the Nacogdoches County Mental Health Advisory Council.

In addition to my law enforcement and jail managerial experience, I have extensive experience dealing with emergency management and domestic preparedness situations. As sheriff, I gained national recognition for my administrative role as Operations Commander during the Columbia Space Shuttle Disaster (2003).  I performed similar roles during responses to hurricanes Katrina/Rita, Gustov & Ike, as well as wildland fires earthquakes and other significant local disasters and events.

In 1985, I left the city of Tyler and began working as a peace officer for the Nacogdoches, Texas Police Department.  My duties there largely consisted of serving as a patrol officer, accident investigator and field training officer (FTO), albeit a portion of my duties included caring for inmates that were confined in the Nacogdoches city jail.  A part of those duties included booking and housing, monitoring and feeding inmates, as well as arranging the release or transfer of inmates to the county jail.

In 1990, I joined the Nacogdoches County Sheriff's Office as a patrol deputy.  I quickly promoted through the ranks at the Sheriff's Office, first to patrol sergeant in 1991, then to a Lieutenant over the Criminal Investigation Division, Technical Services and Tele-communications about a year later.  In 1994, I promoted to the Chief Deputy Sheriff and remained in that capacity until I took office as Sheriff in 2001.  During my service as Chief Deputy, I had direct administrative authority and responsibility over all county law enforcement activities, including jail, civil, courts and dispatch operations, second only to the sheriff.

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

During my career as a peace officer, I have responded to and investigated thousands of law enforcement calls for service, including murders, kidnappings, assaults, sexual assaults, robberies, disturbances and other violent offenses.  I have investigated or overseen and directed the investigation of dozens of situations involving deceased individuals, including deaths from natural causes, and accidental deaths from crashes, drownings, overdoses and withdrawals, as well as suicides and murders, including the capital murders of three fellow peace officers.  I have driven in tense emergency situations requiring the activation and prolonged use of emergency vehicle warning equipment.  I have performed thousands of motor vehicle stops and I have arrested hundreds of individuals for crimes against both people and property, including some that were intoxicated from the effects of drugs or alcohol.  I have encountered and arrested individuals that cooperated, as well as those that did not.  I have come across individuals that lied, fled, fought, evaded arrest, resisted arrest, and those that actively threatened my life, their lives, or the safety of others.  I have experienced the challenges of attempting to calm and de-escalate situations, reason with and safeguard belligerent or intoxicated individuals, or those that were mentally or emotionally disturbed, apprehend individuals that were intoxicated, and control uncooperative and combative individuals, many of whom acted irrationally, were oblivious to pain or were made dangerously strong from the effects of alcohol or illicit drugs.

I have extensive experience as a law enforcement administrator, approximately 20 years of which includes overseeing law enforcement, jail and dispatch operations at the Nacogdoches County Sheriff's Office.  I have designed and implemented strategies for promoting public safety and protecting citizens, communities and property.  I have crafted, enacted and enforced policies and measures necessary to maintain effective law enforcement and jail operations.  I have developed and implemented operational strategies and plans designed to promote the safety and wellbeing of members of the public, my employees and inmates that were under my custody or control.  Under my leadership, I have witnessed my staff successfully attained goals that helped promote public trust and confidence.  During my tenure as sheriff, the Nacogdoches County

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Sheriff's Office produced a 100% clearance rate on murder investigations reported during my time in office, and the Nacogdoches County Jail did not allow any successful inmate suicides.

I am a certified TCOLE trainer and have been for the past 34 years.  I chair the TCOLE Law Enforcement Training Advisory Committee for TAC and help develop and implement the law enforcement curriculum we provide to peace officers and jailers throughout Texas.  I routinely instruct law enforcement and jail related courses to peace officers, jailers and other law enforcement professionals, as well as other emergency responders and government officials.  In addition to the training that I presently oversee and perform for TAC, I serve as a curriculum advisor and trainer at the Correctional Management Institute of Texas (CMIT) and I serve on the steering committee for the Texas Jails Mental Health Officers master training initiative.

I have conducted hundreds of statewide, regional and local trainings on a variety of law enforcement and public safety topics including de-escalation; suicide detection and prevention; assessing inmate medical and mental health needs; courthouse and courtroom security; active shooter safety; officer safety; defensive tactics; response to resistance (use of force) and more. I have spoken as a keynote speaker or been a lead presenter at conferences and gatherings of law enforcement, corrections, public safety and governmental officials throughout Texas and in other states, including presenting at the  International Conference on Mental Health held in San Antonio Texas (2011).    I have been certified by the United States Department of Justice (DOJ), Department of Homeland Security as an instructor on Weapons of Mass Destruction, as well as having been certified as a law enforcement and corrections trainer on various officer safety tactics and less lethal defensive weapons.  I have instructed at the Law Enforcement Management Institute of Texas (LEMIT) and trained peace officers and jailers through the Angelina College Police Academy, the Kilgore College, East Texas Police Academy and the Lamar University Police Academy.  I have also appeared as a guest lecturer at Stephen F. Austin State University and Sam Houston State University on multiple occasions and provided lectures on various topics dealing with administration and management, mass

DEFT_COJ 002775

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

media events, law enforcement and corrections operations, public safety and other topics of governmental interest.

I have testified as a witness and expert witness in various law enforcement matters before several state and local courts during an array of criminal and civil proceedings.  I have also provided consultation and rendered expert witness opinions or given expert testimony in civil matters pertaining to law enforcement and jail operations in each federal judicial district of Texas, including opinions regarding the reasonableness standards of officers and jailers regarding situations involving custodial deaths; conditions of confinement; use of force; arrest, search and seizure; administrative policy, procedure, supervision and training; and, inmate medical or mental health assessment and care.  I have provided testimony before the Texas Legislature on many occasions and have submitted testimony and comments to the United States Congress and Department of Justice on behalf of Texas' sheriffs regarding matters of law enforcement, jail inmate care, public safety and domestic preparedness and security.

## II.  Documents and Information Reviewed for Reference:

The following is a list of materials and information that I reviewed during my work on this case and which helped form the basis of the opinions and conclusions contained herein.

2.1    Plaintiffs' Original Complaint

2.2    Plaintiff's Discovery Requests for Chief Hall, Officers Griffin, Linebaugh, Hadnot, and TCO O'Dell

2.3    Plaintiff Expert Designations

2.4    Plaintiff's Expert Reports,

2.5    Plaintiff's Initial Disclosures

2.6    Defendants' Answers to Plaintiff's Original Complaint

2.7    Defendants' Notice and Initial, Supplemental, 2nd and 3rd Supplemental Disclosures

2.8    Defendants' Motions to Dismiss Plaintiff's Original Complaint For The City Of Jasper, and Officers Linebaugh, Griffin, Hadnot and TCO O'Dell

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

2.9     Order Granting the Motion To Dismiss As To Failure To Train, ADA and RA Claims and Denying All Other Requests to Dismiss

2.10    Defendants' Responses to Plaintiff's Discovery Requests (Chief Hall, Officers Griffin, Hadnot, Linebaugh and TCO O'Dell)

2.11    Responses to Plaintiff's Requests For Production from the Texas Commission on Law Enforcement (TCOLE), Texas Municipal Police Association (TMPA) and Law Enforcement Management Institute of Texas (LEMIT)

2.12    Lumberton Funeral Home video

2.13    Jasper Police Department Policy Manual, Photographs, Audio/Video, Radio and Telephone Recording made or obtained by the Jasper Police Department Between 01/28/2019 and 01/30/2019 That Pertained to Decedent, Including:

- in-car and body camera recordings from Officers Griffin and Linebaugh at Jasper Memorial Hospital and during transport to the Jasper Police Department (JPD);
- telephone calls to or from JPD Dispatch with employees of Jasper Memorial Hospital, Acadian EMS, and Jasper County Sheriff's Office;
- detox cell and jail photographs taken during the custodial death investigation of decedent;
- audio and video recordings of activities that transpired in the jail booking area and detox holding cell during decedent's incarceration period and subsequent death investigation;
- 18 telephone and radio transmission recordings to or from JPD Dispatch and accompanying electronically captured activity log;
- video recordings from a Conoco station in Jasper showing decedent's activities prior to his arrival at Jasper Memorial Hospital;

2.14    Reports from Jasper Police Department Regarding the Arrest, Incarceration and Death Investigation Of Decedent consisting of 107 pages of information, including offense or incident and supplemental reports related to the decedent's death, decedent's arrest records and intake and booking information, probable cause affidavit, statements and a 19 page report from Detective Hadnot.

2.15    Texas Ranger's Report, consisting of 10 pages, Accompanying Investigative Materials: Autopsy Findings for Decedent, Photographs and an Audio Recorded Interview with Plaintiff.

DEFT_COJ 002777

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

2.16 Defendants Responses or Objections to Plaintiff's Second Set of Discovery Requests, consisting of 483 pages.

2.17 Burke Center Records Regarding Decedent, consisting of 72 pages.

2.18 Jasper County Sheriff's Office & Jail Arrest Records of Decedent, consisting of 35 pages.

2.19 Texas Constitution and Statutes (Penal Code & Code of Criminal Procedure) https://statutes.capitol.texas.gov/

2.20 Powell v. Texas, 392 U.S. 514, 528 (1968)

2.21 Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)

2.22 Bell v. Wolfish 441 U.S. at 535, 99 S.Ct. 1861 (1979)

2.23 Garza, et al v. City of Donna, 5th Cir., January 16, 2018 2017 WL 6498392

2.24 Hare v. City of Corinth, Miss., 74 F.3d 633, 650 (5th Cir. 1996) (Hare II)

## III.  Scene Summary:

3.1 The arrest of Mr. Steven Mitchell Qualls, the decedent in this matter, occurred in the parking lot of the CHRISTUS Jasper Memorial Hospital, just outside the Emergency Room entrance.  Jasper Memorial was located along the north side of US Highway 190 at 1275 Marvin Hancock Drive, Jasper, TX, 75951.

3.2 Following his arrest Mr. Qualls was transported to the city of Jasper, Texas police department jail, located at 555 South Main Street in Jasper, TX 75951[i]. The building was a single-story bricked structure that including the emergency dispatch and tele-communications center for the city of Jasper and adjoined the city of Jasper Municipal Court.  The police department and court shared a common public entrance at the front of the building.  The police department was positioned at the northwest corner of the intersection of Main and Cavin streets; the building predominately faced east toward South Main Street. A parking lot that extended north to south the length of the building was adjacent to the front of the building along South Main Street and was accessible from either Main or Cavin streets.  The building also had a rear parking lot located adjacent to the back of the building that was only accessible from Cavin street.  The rear parking lot was primarily intended for use by

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

employee and emergency services vehicles.  An entrance was located at the rear of the building that led from the back-parking lot into the jail and police department.

3.3   The city jail (lock-up, holding facility) was made of materials commonly used in the construction of jails, including concrete floors, cinderblock walls and steel doors.  An inmate booking area was centrally located in the jail and was accessible by multiple entryways. The dispatch (tele-communications) office was adjacent to and slightly south of the booking room, on the opposite side of the book-in desk from the detox cell.  The jail cells were easily accessible from the dispatch area.  The booking and inmate housing areas of the jail were equipped with audio/video equipment that was capable of being recorded and monitored from dispatch.

3.4   Directly across from the booking area, when facing north, was the detox-holding (detox, holding) cell where Mr. Qualls was confined throughout his stay in the Jasper city jail.  The door to the detox cell was centrally located along the south wall of the cell and faced one side of an "L" shaped booking desk located near the center of the booking room.  The detox cell was only a few feet away and within direct line of sight and sound to individuals located at the booking desk.  Other cells designed for inmate housing were located within the jail, none of which adjoined the detox cell.  The detox cell had no bars or windows that allowed for direct observation or ingress and egress other than at the door.  The detox cell door contained a small rectangular shaped observation window on the upper left portion of the door and had a slightly wider and narrower rectangular shaped slot centrally located in the lower portion.  The slot, often referred to in correctional settings as a pan hole, bean hole, or meal port because of its use for passing meal trays into cells, had a hinged metal door covering that folded outward (toward the booking desk) and stopped at a 90-degree angle, forming a shelf when open. The metal door covering the meal slot could be locked in the upright position from outside the cell.

DEFT_COJ 002779

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

3.5   The detox cell had bare concrete floors and cinderblock walls.  A floor drain was located near the center of the room.  The detox cell contained a toilet and sink unit located in the back, right portion of the cell (northeast corner).  A privacy shield was positioned in the detox cell between the toilet and the door so that it obstructed the toilet from view of persons near the door or monitoring the room by camera.  The detox cell contained no furniture, except for a mattress that was positioned on the floor to the right of the door (facing north).  The length of the mattress extended toward the back of the cell and paralleled the east wall.  A video camera was mounted near the ceiling in the southeast corner of the detox cell that provided audio/visual monitoring capabilities of a substantial portion of the detox cell to those working in dispatch.

## IV.   General Summary of Relevant Details:

4.1   This cause originates from claims of Constitutional Violations made by the Plaintiff surrounding the custodial death of Mr. Steven Mitchell Qualls (Decedent) during his incarceration in the city of Jasper, Texas jail on or about Wednesday, January 30, 2019.  Mr. Qualls was a white male that was 28 years of age (DOB:  06/27/1990).  Mr. Qualls listed a residential address of 7760 Case Lane, Silsbee (Harden County), Texas, yet records of Mr. Qualls movements indicate that he had no permanent home.  When Mr. Qualls was not incarcerated, he most often wandered sporadically from place to place and stayed with various acquaintances or family members, often in Tyler County, Texas.   Mr. Qualls was a known and self-admitted user of methamphetamine and other drugs.  He had a history of arrests, particularly in Tyler and Jasper Counties.   Many of his arrests were related to drug intoxication or criminal trespass, although Mr. Qualls also had arrests for disorderly conduct and abusive of 9-1-1 emergency calls.   Before Mr. Qualls was arrested by the city of Jasper Police Department on 01/28/2019, Plaintiff advised during her interview with Texas Ranger Joe Haralson that Decedent had been incarcerated in the Tyler County Jail, having only been discharged a few days prior to this incident (on or about

DEFT_COJ 002780

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

01/23/2019).  Prior to that arrest, records show that Mr. Qualls was arrested and booked into jail by the Jasper Police Department on 01/09/2019, and Jasper County Sheriff's Office Arrest Records show that the Decedent had been discharged on 01/2/2019, after having been incarcerated for 55 days in the Jasper County Jail for Failure to Appear-Criminal Trespass.

4.2   Shortly after 4:30 p.m. on Monday, January 28, 2019 the Jasper Police Department (Police Department, JPD or PD) was notified that Mr. Qualls was being transported by ambulance to Jasper Memorial Hospital in Jasper, Texas.  An employee of Acadian Ambulance Service (EMS) had telephoned the police department to request law enforcement assistance because a patient on the ambulance (Mr. Qualls) had become uncooperative and was becoming aggressive toward the emergency medical responders on the ambulance.     Officers were informed of the situation and responded to the hospital emergency room to meet the ambulance.  JPD Officers Oberlechner and Scoggins joined Detective Hudson and Jasper County Precinct 2 Constable Niles Nichols at the hospital in response to that call.  They all arrived ahead of the ambulance.  Once the ambulance arrived at the hospital those officers contacted EMS staff and learned that Mr. Qualls had not been assaultive with EMS personnel and he did not appear combative with hospital staff at the time; however, Mr. Qualls was not effectively communicating and was failing to comply with directions given to him by medical personnel.  Mr. Qualls reported chest pains and he was highly intoxicated[ii] on illicit drugs.  Mr. Qualls had difficulty forming complete sentences, remaining focused or comprehending and obeying medical personnel's instructions and suggestions. Once Mr. Qualls was admitted to the hospital and placed in an examination room Officers Oberlechner and Scoggins left the hospital.

4.3   A dispatcher from the Jasper County, Texas Sheriff's Office (JCSO) telephoned Jasper PD at approximately 6:28 PM on 01/28/2019 and advised that Mr. Qualls had taken possession of a telephone while at Jasper Memorial Hospital and had used that phone to repeatedly call and harass the Jasper County Sheriff's Office

DEFT_COJ 002781

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Telecommunications Operator (TCO Jackie Burrow).  Mr. Qualls had memorized the telephone number to JCSO and kept calling and requesting to speak with the sheriff or a deputy despite being told to stop calling and being asked to return the telephone by hospital personnel.   Jasper Police Department was requested to assist and TCO, Defendant Heather O'Dell again dispatched officers to Jasper Hospital emergency room regarding Mr. Qualls behavior.  JCSO advised that a deputy sheriff had also been sent to the hospital to speak with Mr. Qualls.

4.4   At approximately 6:30 PM on 01/28/2019 Defendants, Sergeant (Sgt.) Toderick Griffin and Officer Sterling Linebaugh were dispatched to Jasper Memorial Hospital regarding Mr. Qualls.    Sgt. Griffin was familiar with Mr. Qualls from previous law enforcement encounters; Officer Linebaugh was not.  Sgt. Griffin knew Mr. Qualls was a drug addict that frequently came to Jasper Memorial Hospital in an intoxicated condition, usually from methamphetamine.    Sgt. Griffin was also aware that Mr. Qualls often refused to leave the hospital grounds after being discharged and was previously administered Criminal Trespass warnings by the hospital.  Sgt. Griffin and Officer Linebaugh arrived at Jasper Memorial Emergency Room (ER) and contacted ER personnel.  Defendants Griffin and Linebarger also contacted JCSO Deputy Cody Abshier, who was removing a telephone from Mr. Qualls possession after witnessing Mr. Qualls place another call to JCSO as Deputy Abshier was attempting to speak with him.

4.5   Defendants, Sgt. Griffin and Officer Linebaugh, and Deputy Abshier leaned from ER personnel that Mr. Qualls had been treated for drug intoxication, although Mr. Qualls had forcibly removed the intravenous (IV) drip before he received the complete dosage.  Because of the medication administered, Mr. Qualls could not leave the hospital of his own accord at that time.  Sgt. Griffin, Officer Linebaugh, Deputy Abshier and several hospital workers attempted to explain that fact to Mr. Qualls and repeatedly asked for him to supply a name and number of someone they could contact to assist by accepting responsibility for Mr. Qualls.  During that discussion,

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

the mother of Mr. Qualls, Plaintiff Frances Sims, was contacted by an ER worker. Both Sgt. Griffin and Deputy Abshier spoke on the phone with Plaintiff Sims and asked her to come to the ER and give Mr. Qualls a ride.  Plaintiff refused, stating that she could not be around Mr. Qualls when he was "high" and claiming that she was done with him.  Plaintiff also declined to provide the name of anyone else that may be willing to assist Mr. Qualls at that time, stating there was no one she knew of that was willing to help him in that condition.

4.6   Mr. Qualls was also repeatedly asked by Defendants Griffin and Linebaugh, Deputy Abshier and ER personnel if there was someone besides his mother that could be contacted to assist him in obtaining a ride, to no avail.  The only number Mr. Qualls ever provided was to the Jasper County Sheriff's Office.

4.7   Mr. Qualls appeared confused and his movements appeared lethargic and uncoordinated during his hospital stay on 1/28/2019.  Mr. Qualls made random gestures, froze in place from time to time, and proved incapable of completing some of his thoughts.  He carried on broken conversations with people that were not physically present, as well as made long pauses while attempting to converse with officers and hospital employees.  Mr. Qualls refused to remain in his assigned examination room (#9) and frequently wandered or stood in the hallway of the ER. His behavior was disruptive to the hospital employees' efforts to treat other patients, and he was exhaustively asked to return to his assigned room and remain there until an appropriate time had passed so that he could be discharged.  After approximately an hour of attempting to reason with Mr. Qualls, Sgt. Griffin and Officer Linebaugh left the ER and returned to their patrol duties at 7:35 PM as Deputy Abshier continued speaking with him.  At that time, Mr. Qualls was in his exam room and had remained there for several minutes.

4.8   After approximately 1/2 hour had passed, employees from Jasper Memorial Hospital ER again contacted the Jasper PD seeking assistance with Mr. Qualls not staying in his assigned room, first at 8:10 PM and again at 8:27 PM.  Mr. Qualls was again

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

wandering into the hallway of the emergency room, causing obstructions with the movement of other patients and interfering with their treatment.  Defendants, Sgt. Griffin and Officer Linebaugh again responded to the ER and assisted in getting Mr. Qualls to return to his assigned hospital room.  Once again, Sgt. Griffin and Officer Linebaugh left the hospital and returned to their patrol duties.

4.9   At approximately 9:30 PM an employee of Jasper Memorial ER telephoned Jasper PD and stated that Mr. Qualls had been discharged from the hospital but had made no effort to leave the premises. Defendants, Sgt. Griffin and Officer Linebaugh went back to Jasper Memorial ER and contacted Mr. Qualls.  They assisted Mr. Qualls in obtaining his medical discharge paperwork and they escorted him just outside the building.  Sgt. Griffin patiently and exhaustively made attempts to get Mr. Qualls to name any bonified address or location within Jasper County where he could stay the night so that a courtesy ride could be given to that location.  Despite Sgt. Griffin's efforts, Mr. Qualls was either unwilling or unable to do so.  Defendants, Sgt. Griffin and Officer Linebaugh eventually stopped their generous efforts to assist Mr. Qualls and returned to their vehicles, leaving Mr. Qualls standing near the Emergency Room driveway.

4.10  After clearing the 9:30 PM call, Defendants, Sgt. Griffin and Officer Linebaugh drove their patrol vehicles to an isolated area of the hospital parking lot and parked in such a way as to be able to visually observe Mr. Qualls.

4.11  Rather than leaving the area of his own volition, Mr. Qualls continued to stand at the emergency entrance to the Emergency Room and he repeatedly activated an alarm sensor that was installed near the doors.  The alarm was intended for use by EMS workers so that they could alert hospital staff to assist when arriving with emergent ambulance patients.  The emergency door alarm could only be silenced from outside the building, forcing nurses to exit the ER emergency entrance to silence the alarm each time Mr. Qualls activated it.  On each such occasion, Mr.

DEFT_COJ 002784

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Qualls attempted to re-enter the emergency room when hospital staff opened the doors to silence the alarm.  At approximately 10:00 PM, the nurse calling JPD advised that the ER staff wanted Mr. Qualls removed from the property.  That information was relayed by Defendant O'Dell to Defendants Griffin and Linebaugh and they responded to the call for service.

4.12 Sgt. Griffin and Officer Linebaugh drove their patrol vehicles near the ER entrance, exited their vehicles, and contacted Mr. Griffin.  Not wanting to file the higher degree offense of Criminal Trespass, Officers informed Mr. Qualls he was under arrest for Public Intoxication[iii] (PI), handcuffed Mr. Qualls and placed him in the back seat of Defendant Sgt. Griffin's patrol unit.  Mr. Qualls was transported from the scene to the Jasper city jail at approximately 10:07 PM by Sgt. Griffin.  Officer Linebaugh retrieved the discharge paperwork that had fallen from Mr. Qualls possession during the arrest and drove to the PD to assist Sgt. Griffin.

4.13 Upon arrival at the Jasper city jail, Mr. Qualls was escorted into the booking area of the jail and instructed to sit at a bench near the detox cell.  Defendants Griffin and Linebaugh attempted to complete the book-in paperwork and ask Mr. Qualls a series of personal, medical and mental health related questions but Mr. Qualls was unable or unwilling to verbalize discernable responses to most of the questions.  Mr. Qualls shoes, coat, wallet and watch were collected from him and logged into inmate property.  A search for weapons and contraband was conducted of Mr. Qualls person and garments, he was issued a mattress and placed in the detox holding cell at the city jail shortly before midnight on 01/28/2019.  Mr. Qualls remained confined in that cell until he succumbed to methamphetamine toxicity shortly before 8:00 AM on the morning of 01/30/2019.

4.14 At various times throughout the duration of Mr. Qualls incarceration several employees of the city of Jasper (Defendant) made visual observations of Mr. Qualls, both in person and by video monitoring, including Defendants Griffin, Linebaugh,

DEFT_COJ 002785

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

O'Dell and Detective Hadnot.  Mr. Qualls was provided meals that he did not consume, and multiple attempts were made to converse with the decedent at various times.  Mr. Qualls remained highly intoxicated throughout the duration of his incarceration, so much so that JPD Officers were never able to complete the book-in process or present him before a magistrate because his speech, comprehension and demeanor did not improve.

4.15 Mr. Qualls spent the first several hours of his incarceration in the detox holding cell sitting or kneeling beside the cell, peering through, and extending his arm out the meal slot opening.  During this period, Mr. Qualls was partially visible to anyone passing near the booking desk.  While positioned there, Mr. Qualls frequently made utterances, most of which were random words or noises, but some of which sounded like Mr. Qualls was attempting to talk with employees of JPD.  At other times, Mr. Qualls sounds indicated he was imagining carrying on a conversation with unknown individuals that were not physically present at the jail.  That pattern of behavior continued throughout the duration of his incarceration.

4.16 Juvenile offenders were brought into the jail for fingerprinting on dayshift, 01/29/2019. At that time the meal slot door to the detox cell was closed, forcing Mr. Qualls to retract his arm from the meal slot.  Mr. Qualls only slightly shifted his body position and continued to kneel or sit near the cell door most of the day.  Around 7:00 PM on 01/29/2019, Mr. Qualls got on his hands and knees and crawled toward the middle of the detox cell.  Remaining in that position, Mr. Qualls vomited on the cell floor.  He continued to remain hunched on his all fours afterwards and his body position shielded the vomit from view of the camera located in his cell for a few minutes.  Defendant, Detective Hadnot went to the dispatch office of JPD and detected the vomit once it came into view.  Detective Hadnot then walked to detox cell and made a visual check of Mr. Qualls.  Detective Hadnot instructed Defendant O'Dell to have Defendant, Sgt. Griffin notified to attend to Mr. Qualls, as Detective Hadnot had a case follow-up to conduct.  Defendant O'Dell relayed the information

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

as instructed and both Defendants Griffin and Linebaugh came to the jail, entered the detox cell, checked the welfare of Mr. Qualls and cleaned the vomit from the cell.

4.17 As Defendants Griffin and Linebaugh cleaned the detox cell, both Defendants took hold of Mr. Qualls and lifted him away from the pool of vomit, gently placing him face down on his mattress.  As the Defendants did so, Mr. Qualls continuously shouted aloud.  Mr. Qualls stopped shouting the moment officers Griffin and Linebaugh stopped touching him.  Mr. Qualls did not appear to favor or grab a part of his body, or otherwise visibly signal that he was injured or in pain, making it difficult to determine whether he was actually experiencing pain or merely startled and confused by the sensation of being lifted off the floor and moved.

4.18 After being placed on the mattress, Mr. Qualls laid in a prone position near the side of the mattress that was closest to the floor drain with his head pointed north for the next few hours.  Mr. Qualls vomits again near 10:30 PM and, afterwards calls out "hello", at which time Defendant O'Dell responds to the detox cell.  Realizing that Mr. Qualls had vomited again, Ms. O'Dell returned to dispatch and notified Sgt. Griffin and Officer Linebaugh.  Both Sgt. Griffin and Officer Linebaugh returned to the PD and entered the detox cell to check on Mr. Qualls.  They also cleaned the vomit from his face and the floor.  As the cell was being mopped, Sgt. Griffin noticed part of a small plastic baggie covered in the vomit.  Sgt. Griffin retrieved and inspected the baggie.  Noticing that it was empty, he placed the item in a trash receptacle.  Afterwards, Sgt. Griffin told Officer Linebaugh about the item and Officer Linebaugh questioned if that may have been the reason Mr. Qualls had asked for an ambulance the prior afternoon.

4.19 Mr. Qualls remained relatively calm and still on his mattress in the detox cell, other than almost constant slight head and hand motions like what he had demonstrated since his arrest on 01/28/2019.  At approximately 2:40 AM on 01/30/2019, Mr. Qualls vomited a small amount of fluid on the floor beside his mattress.  That vomit

DEFT_COJ 002787

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

was not immediately detected by Ms. O'Dell, and Mr. Qualls continued to lay beside it.   A few minutes later, Mr. Qualls placed his left hand in the vomit, possibly unintentionally, and smeared the vomit into a circle until it dried and looked more like a stain on the floor than a puddle.  Mr. Qualls made some regurgitating noises at approximately 5:05 AM but did not vomit again.  Sgt. Griffin and Officer Linebaugh made several passes by the detox cell and made visual observations of Mr. Qualls throughout the remainder of their shift, which ended at approximately 6:00 AM on 01/30/2019.   Defendants Griffin, Linebaugh and O'Dell relayed details about Mr. Qualls having vomited to the personnel arriving for work on the day shift.

4.20 Mr.  Qualls  wiggled  off  his  mattress  and  began  to  slowly  rotate  his  body counterclockwise on the floor near the center of the detox cell, starting at about 6:30 AM on 01/30/2019.  As he did so, Mr. Qualls made grunting noises and called out single words, such as hello a few times, and on at least one occasion murmured "help".  Also, during that time period, Mr. Qualls made a few rambling statements, again sounding as if he was holding a conversation with a person that was not visibly present.  After rotating approximately 180 degrees over the course of approximately an hour, Mr. Qualls again was positioned face down on his mattress, this time with his head pointed south.   Mr. Qualls grew still, and he ceased making noises at approximately 7:38 AM.  He was later discovered lifeless by Detective Hadnot.  EMS was immediately summoned to the jail for Mr. Qualls, but he had succumbed.  An autopsy later concluded that Mr. Qualls died from methamphetamine toxicity and other contributing factors commonly associated with drug addiction.

4.21 Several employees of the Jasper Police Department recognized Mr. Qualls from previous arrests and incarcerations in the Jasper city jail, including Defendants Griffin, Hadnot, O'Dell, and Station Officer Peters.  Well before his death, most of those employees remembered that Mr. Qualls had exhibited extreme levels of intoxication that lasted a prolonged duration on prior arrests and made verbal comments of such.

DEFT_COJ 002788

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO.  1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

# V.    Opinions:

Using the applicable standards when facing the same or similar circumstances as the defendants, I have formed the following professional opinions regarding what a reasonable peace officer, dispatcher or agency administrator would believe when confronted with the same circumstances that each defendant faced in this matter.   My opinions include applying that same reasonableness standard to administrative policies, customs, or operating procedures necessary for maintaining a Constitutionally compliant jail, as they relate to the facts of this matter.   These opinions were formed based upon a review of the information and items referenced in section II above, coupled with my vast years of training, education, knowledge and experience as a Texas peace officer, jailer, law enforcement and jail administrator and trainer.  I state the following:

## Opinion # 1.

### Regarding the facts surrounding the arrest of Mr. Steven Mitchell Qualls by Defendants Griffin and Linebaugh, as detailed above:

5.1.1    A reasonable peace officer that responds to multiple calls for service at a local hospital would take steps to assist the parties involved and would make attempts to peacefully resolve conflicts, curtail aggressive outbursts, and prevent or stop violence.  A reasonable peace office would recognize from personal observations, or information gathered during the calls that the patient that was the focus of those calls was intoxicated.  A reasonable peace officer that either possessed personal knowledge, or received reliable information that the patient in question was a known methamphetamine user who had a history of intoxication and criminal trespass arrests would conclude that the patient's failure to cooperate with hospital staff may likely lead to the patient being arrested again. Upon learning that the patient's immediate family had refused to assume responsibility for the patient's control, and learning that no other responsible adult could be identified to do so, a reasonable peace officer would attempt to persuade the patient to remain at the hospital and

DEFT_COJ 002789

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

cooperate with his or her medical providers until he or she was sober in hopes of avoiding having to arrest the patient, just as Defendants Griffin and Linebaugh did in this matter.

5.1.2   Upon later learning that the same intoxicated individual had been discharged from the hospital, but remained on hospital grounds because no responsible party had provided that individual with a ride, a reasonable peace officer would have gone to the hospital, contacted the discharged patient, and extended a courtesy ride to a residence or similar location within his or her jurisdiction to try and avoid arresting the individual, just as Defendant Sgt. Griffin repeatedly did in this matter[iv].  Upon being unsuccessful in obtaining a safe residential location to transport the individual, a reasonable peace officer may conclude that the individual posed a potential risk to himself or another once that individual had been warned to leave the hospital grounds and would have arrested that individual for Public Intoxication.

5.1.3   A reasonable peace officer that had personal knowledge that the intoxicated individual he or she just arrested had been medically cleared and discharged from the hospital where the arrest was made only minutes beforehand, and who did not detect any obvious wounds or new medical or mental health concerns that had not already been examined by the hospital, would have believed that further medical examination was unnecessary and would have transported the arrested individual to jail, as Defendant Griffin did in this matter.  In doing so, a reasonable peace officer would not believe that he or she was violating the arrested individual's Constitutional Rights under the 14th Amendment, or his or her employer's policy regarding the examination and treatment of highly intoxicated individuals, and I concur.

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

## Opinion # 2.

**Regarding the facts surrounding the attempted booking, intake screening and incarceration of Decedent at the Jasper City Jail by Defendants Griffin and Linebaugh, as detailed above:**

5.2.1   A reasonable peace officer assisting in the arrest and booking of an individual in a city jail for public intoxication would attempt to follow the prescribed book-in process outlined by his or her employer, and would attempt to gather reasonable amounts of information from the arrestee, including personal identifiers, address, next of kin, history of medical and mental health illnesses.  A reasonable peace officer would also attempt to identify and denote common risk factors for self-harm, such as suicidal thoughts or tendencies.  A reasonable peace officer would not be surprised to learn that an intoxicated arrestee was not being forthcoming with the information needed to complete the booking process and, after making a reasonable attempt to complete the intake screening, would conclude that the individual must sober before the process could be completed, just as Defendants Linebaugh and Griffin did in this matter.  Under those circumstances, a reasonable peace officer would not believe that he or she was outside the scope and intent of his or her employer's policies by doing so.

5.2.2   A reasonable peace officer would not believe that it was necessary to notify EMS or have an arrested individual medically screened when the officer possessed firsthand knowledge that the individual had just been medically cleared and released from an emergency room.  Neither would a reasonable peace officer automatically conclude that the arrestee was mentally ill or at risk of suicide simply because the arrestee mentioned having previously attempted to go to a local mental health authority facility (Burke Center).  A reasonable peace officer working in rural East Texas would also know that representatives of their local mental health authority (Burke Center) would not customarily respond to or accept patients that are intoxicated.  A reasonable peace officer would not feel compelled to notify a magistrate or the Burke Center at that time.  A reasonable peace officer that was

DEFT_COJ 002791

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

unable to complete the booking process due to an arrestee's level of intoxication would have acted and believed as Defendants Griffin and Linebaugh did in this matter, and would have placed the intoxicated individual in a detox-holding cell in hopes of completing the booking information at a later time.

5.2.3    A reasonable peace officer that placed an intoxicated individual into a jail detox cell would, first, remove certain articles of clothing from the individual, such as shoes, belt and coat.  A reasonable peace officer would also conduct a thorough pat-down search of the individual's outer garments, and would search common clothing areas where inmates often attempt to conceal contraband or weapons, such as the individual's pant pockets, waist band, or socks prior to securing the individual in a detox cell. A reasonable peace officer would not believe that a strip or body cavity search was proper, justified or required at that time, and would believe that probable cause did not exist for such a search.  A reasonable peace officer working in Texas would recognize that there was no legal requirement to force an arrestee being placed in a holding cell to exchange his or her clothing for an inmate uniform and would understand that was a commonly accepted practice throughout the state. A reasonable peace officer would believe that "dressing out an inmate" as referred to in JPD Policy 5.1, commonly applies to when an inmate is being housed in a cell block, not initially when placed in a detox or holding cell.  A reasonable peace officer would allow the arrestee to remain in his or her shirt, pants and socks, as defendants did in this matter.

5.2.4     A reasonable peace officer would record pertinent details or circumstances concerning an arrest, and would list an arrestee's name and cell location on a white board provided for that purpose so that other employees entering the jail could easily recognize the number of inmates and their cell locations.  A reasonable peace officer would alert the on-duty telecommunications officer, in this case Defendant O'Dell, of a newly incarcerated inmate's location and status so that the telecommunications officer could assist in monitoring and checking the inmate, as

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE: Frances Earline Sims v City of Jasper, et al. CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Defendants Griffin and Linebaugh did in this matter. A reasonable telecommunications operator that learned an inmate that had just been discharged from a local hospital had been placed in a detox cell for Public Intoxication would not believe that the arrestee needed to immediately be re-evaluated for medical clearance and would rely on the judgement of the arresting officers and releasing hospital staff to have made a proper determination of the arrestee's medical and mental health status, just as Defendant O'Dell did in this matter.

5.2.5   A reasonable peace officer or telecommunicator that faces the same circumstances as the defendants did in this matter, would not believe that he or she violated the intent or spirit of his or her employer's policy regarding Prisoner Detention and Lockup under the circumstances. A reasonable peace officer would believe that a good faith effort was being made to conform to the purpose and intent of that policy by knowing that the individual was medically cleared before arrest and by making reasonable attempts to solicit information from the arrestee. Additionally, a reasonable law enforcement agency administrator would recognize that written policy is intended as a guide to help inform, direct and assist employees in completing tasks, defining job roles and functions, accomplishing goals and identifying mission objectives. A reasonable peace officer or telecommunication, and a reasonable law enforcement agency administrator would equally recognize that agency policy cannot be practically written to be all-encompassing, or to account for every potential variable that could occur in given situations. A reasonable peace officer or telecommunicator would believe that he or she should examine the intent and purpose of such policies, and then apply that intent toward the totality of the circumstances in order to determine a proper course of action to take.

5.2.6   It is my professional opinion that Defendants Griffin, Linebaugh and O'Dell did not blatantly disregard JPD policy 5.100: HEALTH/MEDICAL SCREENING REPORT AND HEALTH CARE SERVICES, and I believe they acted reasonably by incarcerating Mr.

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Qualls without completing the booking paperwork, dressing him out in inmate attire, or calling for another medical assessment after the defendants knew that he had just been released from a hospital and they failed to detect any substantial change in Mr. Qualls's behavior, mood or health status.

## Opinion #3:

**Regarding Defendants follow-up assessments of decedent in this matter and the decisions for continued confinement without contacting EMS:**

5.3.1   A reasonable peace officer or telecommunicator that had previously encountered a person that was currently confined in jail in a highly intoxicated state, and who possessed personal knowledge, or has been informed by another officer about the inmate's known history of methamphetamine abuse would not suspect that the inmate was in a medical crisis when the officer or telecommunicator possessed knowledge that the inmate often became intoxicated on methamphetamine and had just been treated and released from a hospital while in an intoxicated condition from illicit drug use.

5.3.2    A reasonable peace officer or telecommunicator that possesses knowledge or has gained information that said inmate had displayed behaviors that included mumbling and uttering incoherently, making long pauses when attempting to form words and sentences, participated in verbal conversations with people not physically present, remained stationary for long periods of time or moved lethargically, made random twitches and jerks, demonstrated erratic hand and arm gestures, or vomited would not become unduly concerned because the officer or telecommunicator would believe that the inmate would safely regain sobriety and return to his or her normal faculties, as in past experiences.

5.3.3    A reasonable peace officer or telecommunicator that performed or witnessed others perform periodic welfare checks of the inmate while the inmate was confined and who witnessed little change in the inmate's behavior or actions would

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

not believe that the inmate was in need of medical care and would not have summoned it for the inmate.  A reasonable peace officer or telecommunicator that failed to recognize the signs of increased danger would not believe he or she was being indifferent to the inmate's medical needs or deliberately disregarding the inmate's health or safety. A reasonable peace officer or telecommunicator would also believe that he or she was not acting maliciously or sadistically and was not attempting to punish the inmate.

5.3.4     It is my professional opinion that Defendants Griffin, Linebaugh, O'Dell and Hadnot reasonably believed that they were satisfactorily caring for Mr. Qualls medical needs and none of the defendants in this matter recognized the serious condition that Mr. Qualls reached prior to his death.  Further, it is my professional opinion that none of the defendants deliberately ignored Mr. Qualls medical needs or acted with intent to harm or punish Mr. Qualls.  The defendants believed that their checking and monitoring of Mr. Qualls, and their cleaning of Mr. Qualls and his cell after he vomited were reasonable attempts to care for him. Their actions demonstrated their positive intent to assist Mr. Qualls, even if their beliefs that Mr. Qualls would safely detoxify were mistaken.

## Opinion #4:

**Regarding defendants' confinement of decedent without first notifying a magistrate, or the Local Mental Health Authority (Burke Center):**

5.4.1     A reasonable peace officer would recognize that making an arrest for the offense of Public Intoxication was being done to help prevent a risk of self-harm to the individual and was intended to help safeguard the individual.  A reasonable peace officer would believe that he or she was helping to protect an individual that had no family or friends available to assist him or her, as in this matter, and was not being done to punish the individual.

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

5.4.2     A reasonable peace officer licensed in the state of Texas would be aware that the Texas Code of Criminal Procedure, Art. 16.06 allows an intoxicated individual to remain in a detox or holding cell for a period of up to 48 hours before being carried before a magistrate[v].   Additionally, a reasonable peace officer would recognize that it was not prudent or safe to release a highly intoxicated inmate since the inmate had not sobered and there was no responsible adult willing to accept responsibility of the inmate[vi].

5.4.3     A reasonable peace officer or dispatcher that did not subjectively become aware that an inmate in his or her custody was at risk of dying, or of committing acts of self-harm such as suicide would not believe that he or she was being deliberately indifferent to the needs of that inmate by not immediately seeking medical or mental health services for the inmate.   A reasonable peace office that did not detect behavior or garner information that would lead the officer to conclude that an inmate was at substantial risk of attempting suicide, or who did not believe that the inmate was mentally ill, or in a state of mental health crisis at the time would not believe there was a need to notify a magistrate, medical provider or Local Mental Health Authority (LMHA) for an emergency examination of the inmate, as identified in Texas Code of Criminal Procedure, Art. 16.22[vii].

5.4.4     In my professional opinion, the defendants in this matter did not consider Mr. Qualls to be mentally ill or in a state of medical or mental health crisis throughout his incarceration in the Jasper city jail and did not believe it unreasonable or cruel to hold Mr. Qualls in a detox cell of a jail for a period less than 48 hours without notifying a magistrate or contacting their LMHA (Burke Center).

DEFT_COJ 002796

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO.  1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

## Opinion #5:

**Regarding the allegation that Defendants Griffin and Linebaugh allowed Mr. Qualls to conceal and later ingest a baggie of methamphetamine:**

5.5.1    Defendant Linebaugh made a clothed search of Mr. Qualls and removed his coat, shoes and personal effects prior to placing Mr. Qualls in the JPD detox cell on 01/28/2019.  The Plaintiff asserted in the original petition that Defendants Griffin and Linebaugh failed to adequately search Mr. Qualls upon his arrest, and in so doing recklessly allowed Mr. Qualls to keep a baggie of methamphetamine in his possession, which Mr. Qualls supposedly swallowed during confinement, thus ingesting more methamphetamine that resulted in his death.  A reasonable peace officer that arrests someone and is about to confine that person to jail would make a reasonable attempt to detect weapons and contraband that the individual may possess and would remove those items from the inmate's possession.  A reasonable peace officer would realize that small items are sometimes concealed in areas that are private or hard to detect, as well as sometimes being concealed by the inmate inside the body, by him or her inserting or ingesting the contraband prior to incarceration.  A reasonable peace officer would believe that a clothed search of the inmate was a good faith effort to locate weapons and contraband such as illicit drugs and was done as a measure to protect both the inmate and others.  A reasonable peace officer would have had no probable cause to have conducted a more in-depth search at that time.  A reasonable peace officer would not believe he or she was being deliberately indifferent to the safety and security of the inmate or the facility by performing that type of search, and would have had no legitimate way of knowing if the arrestee had ingested a baggie of methamphetamine or similar substance prior to being arrested.

5.5.2      In my professional opinion, no evidence has been established in this matter to support the notion that Mr. Qualls had a baggie of methamphetamine, or other drug, concealed on his person at the time of his arrest.  Neither does evidence support

DEFT_COJ 002797

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

the fact that Mr. Qualls removed a baggie from hiding and ingested that bag or any contents of the bag as he was being confined in the city of Jasper jail.

5.5.3     Upon finding a torn bag part covered in vomit in an inmate's cell, a reasonable peace officer may conclude that the inmate had regurgitated the bag part while confined in his or her cell.  A reasonable peace officer may also conclude that the inmate had intentionally or unintentionally removed the bag part from another previously undetected location and coincidentally vomited on the bag part. A reasonable peace officer would conclude that if that inmate had swallowed a baggie of methamphetamine or other drug, the inmate did so prior to ever being arrested; possibly prior to being transported by ambulance to an emergency room, just as Defendant Linebaugh verbalized suspicion of upon learning about the bag part being found by Defendant Griffin.

5.5.4     In my professional opinion, Defendants Linebaugh and Griffin were not deliberately indifferent to Mr. Qualls health and safety by the type of search conducted on Mr. Qualls, and those defendants were not deliberately indifferent in allowing Mr. Qualls to keep or consume a bag part that may or may not have ever been ingested or have contained drugs, by failing to strip search Mr. Qualls or exchange his clothing in this matter.   Mr. Qualls acts regarding the bag part were not detected on camera, and it is unknown when, where or if Mr. Qualls swallowed the baggie.  It is also unknown if the bag part ever contained methamphetamine or another drug.

5.5.5     Additionally, it is my professional opinion that Defendant Griffin reasonably believed that the torn bag part he recovered from Mr. Qualls's cell had no evidentiary value.  Defendant Griffin reasonably believed that the empty bag part did not serve as evidence in the pending charge of Public Intoxication, nor did it create evidence to support the filing of new criminal charges against Mr. Qualls. Defendant Griffin had no way of knowing at the time that Mr. Qualls would later die in jail and he

DEFT_COJ 002798

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

could not have reasonably anticipated a need to retain the bag part for an unforeseen event.

## Opinion #6:

### Regarding staffing levels and inmate monitoring practices in place at the Jasper PD jail during the time of Decedent's death:

5.6.1   A reasonable peace officer that was the chief law enforcement administrator over a municipal jail would recognize that he or she had no minimum federal or state staffing ratios to maintain, but would recognize that he or she had a duty to try and safeguard the wellbeing of inmates confined in the jail, as well as keep the inmates securely confined in order to prevent escape.  A reasonable agency administrator would believe that he or she was not being indifferent to the safety and wellbeing of an inmate by using a widely accepted and commonly utilized method among municipal jails of varying size throughout the state and deploying on-duty officers to periodically check the welfare of inmates while have on-duty telecommunications personnel monitor inmates by audio and video camera, as well as in person.  A reasonable law enforcement agency administrator overseeing the operations of a city jail that had no previously known inmate deaths would believe that the combined use of patrol officers and dispatchers to periodically check and monitor inmates was reasonable and enough to maintain a Constitutionally compliant jail.  A reasonable peace officer or agency administrator would not believe he or she was being deliberately indifferent to the welfare of inmates by implementing such a policy or custom for maintaining inmates' safety.

5.6.2    In my professional opinion, I believe the staffing ratio and monitoring methods enacted by the Defendant, city of Jasper was reasonably sufficient to safeguard inmates and was not deliberately indifferent to the welfare of inmates.  I further believe that the policies enacted by the Chief of Police regarding the detention and monitoring of inmates in the jail at the city of Jasper were not intended to unjustly punish or grossly neglect the wellbeing of inmates confined there.

DEFT_COJ 002799

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO.  1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

## Opinion #7:

**Regarding allegations that Defendant Sgt. Griffin was subjectively deliberately indifferent to Mr. Qualls serious medical needs:**

5.7.1   In my professional opinion, the facts in this matter demonstrate that Defendant Officer Griffin was neither deliberately indifferent to the needs of Mr. Qualls nor aware that Mr. Qualls was at critical risk of dying while Defendant Griffin was on-duty and responsible for the care of Mr. Qualls.  Defendant Griffin had personal knowledge of Mr. Qualls habits of intoxication and his characteristics when incarcerated while intoxicated on drugs.   Defendant Griffin demonstrated compassion and regard for Mr. Qualls on numerous occasions, starting with his repetitive attempts trying to avoid arresting Mr. Qualls by trying to contact a reasonable adult that would assume responsibility for Mr. Qualls, followed by his trying to persuade Mr. Qualls to remain in a designated examination room at Jasper Memorial Hospital and comply with the nurses requests.   Defendant Griffin also showed great regard for Mr. Qualls by repeatedly offering to provide a courtesy ride to Mr. Qualls before ultimately being left with no other choice than to arrest Mr. Qualls for his own safety.

5.7.2   After Mr. Qualls was arrested and confined in jail, Defendant Griffin made multiple checks on Mr. Qualls during his shifts, between 01/28/2019 and 01/30/2019, particularly after Mr. Qualls vomited a second time.  Additionally, Defendant Griffin mopped and cleaned Mr. Qualls's cell of vomit on two occasions and helped move Mr. Qualls away from the vomit and onto his mattress following the first incident. In my professional opinion, the efforts and actions demonstrated by Defendant Griffin in this matter demonstrate that Sergeant Griffin was not deliberately indifferent to Mr. Qualls medical needs, nor intended to punish Mr. Qualls or cruelly cause Mr. Qualls to suffer harm.

DEFT_COJ 002800

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

5.7.3   During the hours that Defendant Griffin was on duty, he neither observed, nor learned of any substantial changes to Mr. Qualls health status the led him to believe Mr. Qualls was in critical need of medical help.  Much as a parent would not immediately suspect a child was critically ill merely because the child vomited on multiple occasions over a period of several hours, Defendant Griffin did not recognize Mr. Qualls few acts of vomiting as a serious medical need developing.  In response to Mr. Qualls's having vomited, Defendant Griffin did increasingly monitor Mr. Qualls condition in efforts to detect a serious medical need that may have been developing. On the morning of 01/30/2019, Defendant Griffin personally checked on Mr. Qualls five times, at approximately 1:37, 2:43, 4:03, 5:10 and 5:45 AM, and was subjectively aware that Officer Linebaugh made independent checks of Mr. Qualls also.  Defendant Griffin left work around 6:00 AM on the morning of 01/30/2019 without suspecting that Mr. Qualls health may have been declining, and he was not on duty when Mr. Qualls began demonstrating signs of severe discomfort, or when he expired.  In my professional opinion, Defendant Griffin was not subjectively deliberately indifferent to Mr. Qualls medical needs and his behavior was not malicious or sadistic toward Mr. Qualls for the purpose of causing harm.

## Opinion #8:

**Regarding allegations that Defendant Linebaugh was subjectively deliberately indifferent to decedent's serious medical needs:**

5.8.1     In my professional opinion, the facts demonstrate that Defendant Officer Linebaugh was neither deliberately indifferent to the needs of Mr. Qualls, nor aware that Mr. Qualls was at risk of death or serious injury.  Defendant Linebaugh had no previous encounters with Mr. Qualls prior to 01/28/2019 and the information Defendant Linebaugh obtained from coworkers and other available information on or after that date led Defendant Linebaugh to conclude that it was not uncommon for Mr. Qualls to remain in a highly intoxicated state for multiple days while he detoxified in a jail cell. Defendant Linebaugh was subjectively aware that Mr. Qualls was high on methamphetamine and that he had been medically treated for several

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

hours before being released by a local hospital.  Defendant Linebaugh heard Mr. Qualls use random words or phrases, take long pauses when attempting to complete sentences, and utter incomprehensible noises while at the hospital, immediately after his release from the hospital, and while incarcerated at the JPD jail.   Defendant Linebaugh also observed Mr. Qualls display of slow, sluggish movements, twitching of his hands or head and general display of uncoordinated motor skills, both while at the hospital and after his discharge from the hospital, therefore his seeing those patterns continue during incarceration did not cause Defendant Linebaugh to believe a serious medical need existed with Mr. Qualls.

5.8.2   Like Defendant Griffin, Defendant Linebaugh was aware that Mr. Qualls vomited twice.  Both times, Defendant Linebaugh assisted with efforts to help clean and care for Mr. Qualls.  Defendant Linebaugh did not believe that Mr. Qualls was growing critically ill because simply because he had vomited, just as Defendant Griffin had not.  Defendant Linebaugh reasonably assumed that his vomiting was a part of the detoxifying process that would not result in harm to Mr. Qualls, as had been the result on other occasions.  During his work hours, Defendant Linebaugh made a reasonable effort to assist Mr. Qualls by making visual observations of Mr. Qualls, attempting to converse with Mr. Qualls, and by his assisting in cleaning Mr. Qualls of vomit and moving Mr. Qualls away from the vomit and onto his mattress. Defendant Linebaugh also made personal checks of Mr. Qualls on at least two occasions the morning of 01/30/2019, near 2:12 and 4:32 AM, and he was subjectively aware that other employees had made additional checks of Mr. Qualls. In my professional opinion, Defendant Linebaugh's actions demonstrated compassion and concern for Mr. Qualls's wellbeing, not a pattern of deliberate indifference.

5.8.3   Prior to his leaving work around 6:00 AM on the morning of 01/30/2019 Defendant Linebaugh detected no extraordinary observances beyond what other inmates in similar circumstances may exhibit, and he never suspected that Mr. Qualls was in

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

danger of dying or in need of immediate medical care.  Defendant Linebaugh was not deliberately indifferent to Mr. Qualls medical needs and did not act with malice or intent to punish Mr. Qualls.  In my professional opinion, Defendant Linebaugh believed that he was taking reasonable measures in dealing with Mr. Qualls throughout the incarceration and I opine that he was not deliberately indifferent to Mr. Qualls medical needs.

## Opinion #9:

**Regarding allegations that Defendant O'Dell was subjectively deliberately indifferent to decedent's serious medical needs:**

5.9.1  In my opinion, the facts demonstrate that Defendant, Telecommunications Officer O'Dell was not deliberately indifferent to the needs of Mr. Qualls.  Nor was she subjectively aware that Mr. Qualls was at substantial risk of injury or death while confined in the city of Jasper jail.  Defendant O'Dell subjectively had personal information regarding previous arrests of Mr. Qualls, and she had been provided information from other defendant officers that Mr. Qualls was detoxifying from his drug induced state of intoxication when she observed his speech and behavioral patterns.  Defendant O'Dell was led to believe that Mr. Qualls was not in danger and the symptoms she observed were part of the detoxifying process.  Defendant O'Dell had personal knowledge, plus information gained from coworkers that supported her beliefs, as she was aware that Mr. Qualls had displayed similar symptoms during prior incarcerations.  She even commented "I think he threw up that black stuff last time" when Defendant O'Dell first learned that Mr. Qualls had vomited in his cell on the evening of 01/29/2019.  Defendant O'Dell reasonably believed that the detoxification process could include vomiting, moaning and not eating food, and believed that it could last multiple days without causing harm to Mr. Qualls.

DEFT_COJ 002803

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

5.9.2   Defendant O'Dell was aware that Mr. Qualls had been treated and released from a local hospital immediately prior to his arrest.  Defendant O'Dell never concluded that Mr. Qualls condition had critically worsened or that he was in at risk of dying. Like other defendants in this matter, Defendant O'Dell subjectively assumed that Mr. Qualls would safely reach a point of sobriety without experiencing an emergent medical crisis, just as he had done in the past.  In my professional opinion, the facts show that Defendant O'Dell made reasonable beliefs regarding Mr. Qualls that were not deliberately indifferent to his wellbeing and were in no way intended to punish Mr. Qualls or cause him cruelty, suffering and harm.

## Opinion #10:

**Regarding allegations that Defendant Hadnot was subjectively deliberately indifferent to Decedent's serious medical or mental health needs:**

5.10.1   In my professional opinion, the facts demonstrate that Defendant Detective Hadnot was neither deliberately indifferent to the needs of Mr. Qualls, nor was Defendant Hadnot subjectively aware that Mr. Qualls was at imminent risk of death or injury.  Defendant Hadnot was familiar with Mr. Qualls from previous arrests in the city of Jasper. On the morning of 01/29/2019, Defendant Hadnot became aware that Mr. Qualls had been arrested for drug intoxication after he had been discharged from, and then failed to leave the Jasper Memorial Hospital, when requested.  As a Detective for JPD, Defendant Hadnot was not primarily assigned to work in the jail and interact with Mr. Qualls, but his work frequently caused him to enter the jail or dispatch office and come into close proximity to Mr. Qualls.  During those times, Defendant Hadnot made reasonable efforts to check the welfare of Mr. Qualls.  On the evening of 01/29/2019, Defendant Hadnot was the first person to detect a dark puddle on the floor of Mr. Qualls' cell near where Mr. Qualls laid while viewing a video monitor in dispatch. Afterwards, Defendant Hadnot went directly to the detox cell and checked Mr. Qualls wellbeing.  Upon discovering that Mr. Qualls had vomited, Defendant Hadnot coordinated assistance for Mr. Qualls before leaving to conduct a scheduled follow-up investigation.  When he did so, Defendant Hadnot

DEFT_COJ 002804

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

discovered that Mr. Qualls had vomited in his cell and he promptly ensured that others were made aware of that fact.   Defendant Hadnot immediately gave instructions to TCO O'Dell to have Sgt. Griffin notified to respond and assist Mr. Qualls.

5.10.2    Defendant Hadnot did not initially make contact with Mr. Qualls upon reporting to work on the morning of 01/30/2019.  Neither had Defendant Hadnot received any new information that would have caused him to suspect Mr. Qualls's condition may have worsened overnight.  Defendant Hadnot entered the jail on the morning of 01/30/2019 to assist with a computer maintenance matter, and at approximately 8:41 AM Defendant Hadnot peered into Mr. Qualls cell to check his welfare. When he did so, Defendant Hadnot grew immediately concerned at his observation of Mr. Qualls body positioning and skin color.  Defendant Hadnot immediately called out to Station Officer Peters, the on-duty jail officer, for a key to open the jail cell and then entered the detox cell to help Mr. Qualls, at which time he discovered Mr. Qualls's lifeless body.   Defendant Hadnot heard Officer Peters immediately request an ambulance and he was aware that emergency medical assistance was coming to attend to Mr. Qualls.

5.10.3    Throughout his involvement in this matter, Defendant Hadnot repeatedly demonstrated a willingness to help Mr. Qualls and to help ensure that Mr. Qualls was provided with reasonable care and assistance.  Defendant Hadnot's actions clearly demonstrated that he was not deliberately indifferent to Mr. Qualls serious medical needs, and Defendant Hadnot never demonstrated a desire or intent to punish Mr. Qualls or to cause Mr. Qualls any malicious pain or suffering.  In my professional opinion, the facts show that Defendant Detective Joshua Hadnot acted reasonably in dealing with Mr. Qualls throughout his involvement in this matter.

DEFT_COJ 002805

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

## Opinion #11:

**Regarding allegations that Defendant City of Jasper was deliberately indifferent to decedent's serious medical needs:**

5.11.1  The facts demonstrate that the Defendant, city of Jasper Police Department was under the administrative direction of Chief Gerald Hall during all times relevant to this matter. No facts indicate that Chief Hall was ever made aware that Mr. Qualls had been arrested and was incarcerated in the JPD jail until after Mr. Qualls had expired on 01/30/2019 and Chief Hall never interacted with Mr. Qualls during that incarceration period.  Chief Hall had reasonable policies in place to help direct law enforcement, telecommunications and jail operations.  The city of Jasper supplied reasonable staffing levels on patrol, in dispatch and at the jail, and the Defendant city demonstrated a reasonable practice of having officers and dispatchers make observations of inmates and attend to their needs.

5.11.2  The city of Jasper operated a clean and orderly jail facility that had electronic audio and video monitoring and recording capabilities installed to assist in the monitoring of inmates.  The city of Jasper provided meals to inmates at appropriate times and demonstrated a willingness to help clean inmate clothing, bedding and cells.  The Defendant city had not experienced a prior custodial death.  Chief Hall reasonably believed that his policies, training and supervision methods complied with constitutional standards and were effective in providing reasonable caring for inmates in the Jasper city jail.

5.11.3  Defendant, city of Jasper had made reasonable efforts to properly hire, train, govern and direct the employees of the Jasper Police Department. A reasonable agency administrator that governs law enforcement, telecommunications and jail operations, like Chief Hall in this matter, would trust that he or she had not created an environment that promoted deliberate indifference and would believe that his or her employees were satisfactorily qualified to recognize and react to any highly concerning risks that may evolve within the jail.  Additionally, a reasonable law

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

enforcement administrator, such as Chief Hall in this matter, would believe that he or she had properly taken measures to ensure that his or her employees would avoid punishing or maliciously treating inmates under their care.  It is my professional opinion that Chief Hall and the city of Jasper took reasonable measures to safely confine and care for individuals within their custody and I do not believe that city of Jasper was vicariously liable for any negligent acts or unintentional failures that may have arisen on the part of other defendants in this matter.

## VI.  Conclusion of Opinions:

6.1     Mr. Qualls life came to a tragic end on the morning of Wednesday, January 30, 2019 while he was an inmate in the Jasper city jail.  This outcome was due to a series of poor choices that Mr. Qualls had made leading up to that event, including his conscious choice to consume a large quantity of illicit drugs, primarily methamphetamine, as well as his decision to not cooperate with medical staff at Jasper Memorial Hospital, coupled with and his inability to obtain a ride from a responsible adult, followed by his refusal to take advantage of the many opportunities he was provided to leave the hospital, after discharge, by Defendant Griffin.  Sadly, Mr. Qualls drug addiction had led the Plaintiff to reach a point that Mr. Qualls was not normally welcome at her home and she refused to assist by taking responsibility for his care on the evening of 01/28/2019, leaving jail the only reasonable alternative for Mr. Qualls after he was discharged from the hospital.

6.2     No reasonable peace officer, telecommunicator or law enforcement administrator wants to have an individual die while in their custody, and neither did the defendants in this matter. Unfortunately, none of the defendants identified or recognized the level of urgency that developed with Mr. Qualls on the early morning hours of 10/30/2019 until it was too late.   Throughout this incident, each defendant independently believed that he or she was taking reasonable efforts to safeguard Mr. Qualls and they relied heavily on their subjective knowledge that Mr. Qualls had been medically cleared before coming to jail, as well as their awareness that he had

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

previously vomited, mumbled and taken days to detox in the city jail without it resulting in harm.  It is my professional belief that none of the defendants became aware that Mr. Qualls was at serious risk of death leading up to the discovery of his body and no defendant acted subjectively deliberate indifference to Mr. Qualls wellbeing.  None of the defendants in this matter had unkind motives or displayed cruel or sadistic behavior intended to punish or harm Mr. Qualls.


Respectfully,

Thomas Kerss,
Law Enforcement Consultant and
Expert Witness for the Defense


## VI.    Compensation Rate:

My compensation rate for any type of work performed regarding this matter, including travel, testimony or standby time, is $150.00 per hour.  Work hours shall be denoted in quarter-hour increments, with a minimum time of two-hours credited for each day a personal appearance is made.   Vehicle mileage shall be billed at the applicable GSA rate (currently 57.5 cents per mile). Any other travel related expenses or business purpose expenses regarding this matter shall be submitted for reimbursement at cost.  A 5% late payment fee may be applied to the total sum of any past-due invoice balance that remains unpaid beyond sixty days.


## VII.    Relevant Expert Witness Casework History 2013-2020

Watson v Lemonade, Attorneys Gregory Hudson and Karl Schulz, Defense, Cause No. 1134836, County Civil Court #1, Harris County, TX, pending.

Sanchez v Bell County, et al – Attorneys Roy Barrett and John Hawkins, Defense, Civil Action # 6:19-CV-00221-ADA-JCM, US Northern District of Texas, Dallas Division; Pending.

D.H.by Guardian, Miracle Farr v City of Texarkana, et al – Attorney Robert Weber, Defense, Civil Action # 5:19-CV-16, US Eastern District of Texas, Texarkana Division; pending.

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Estate of Patrick Wise v Officer Robert Carlson and City of Gladewater, et al - Darren Coleman and Lance Vincent, Defense, Civil Action Number: 2:17-cv-788-RSP, US Eastern District of Texas, Marshall Division; Deposition Testimony Given; MSJ-Qualified Immunity Granted.

Kipp v Ellis County, et al –Randy Montgomery, Defense; Civil Action No. 3:17-cv-67, US Northern District of Texas, Dallas Division; Report Filed; Partial MJS Granted, Partial Agreed Settlement.

Estate of Devin Dial, et al v Officer Emit Kennedy, Darren Coleman, Defense; Civil Action No: 2:17-cv-00604-RSP; US Eastern District of Texas, Marshall Division; Deposition Testimony Given; MSJ granted.

Deckard v Nacogdoches County, et al –Robin O'Donahue, Defense; Civil Action No:  9:13cv294-MHS, US Eastern District of Texas, Lufkin Division; Deposition Testimony Given; MSJ granted.

Coignard v City of Longview, et al –Darren Coleman, Defense; Civil Action No. 2:15-cv-01229-JRG, US Eastern District of Texas, Marshall Division; Report Filed; Agreed Settlement.

SOI Enterprises v Continental Casualty, et al– Gregory Hudson, Defense; Civil Action No. 4:14-cv-2929, US Southern District of Texas, Houston Division; Report Filed; MSJ granted.

Guerrero v Wichita County, et al–D'Lyn Davison, Defense; Civil Action No. 7-14-CV-58-O, US Northern District of Texas, Wichita Falls Division; Report Filed; Agreed Settlement.

Brown v Angelina County–Attorney Chad Rook, Defense; Civil Action No. 9:13-cv-286-RC, US Eastern District of Texas, Lufkin Division; Report Filed; MSJ granted.

Aziz v Lloyds of London–Attorney Karl Shultz, Defense; Civil Action No. D192,668, 136th Judicial District Court, Harris County, TX; Agreed Settlement.

Weathersby v Harrison County– Attorney Robert Davis, Defense; Civil Action No. 2:11cv450-DF, US Eastern District of Texas, Marshall Division; Trial Testimony Given; Jury Verdict, Defendant Prevailed.


## VIII.  CV of Law Enforcement Expert Witness

# Thomas Kerss

4188 State Highway 204,
Nacogdoches, TX 75964
thomas_kerss@yahoo.com


## Professional Summary

My name is Thomas Kerss and I am 59 years of age.  I am a citizen of the United States of America and a lifelong resident of Nacogdoches County, Texas.   I began my law enforcement career in

DEFT_COJ 002809

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

1981 as a patrol officer with the City of Tyler, Texas Police Department, and now have 39 years of continuous years of service as a licensed Texas peace officer. I am currently employed at Texas Association of Counties (TAC) as supervisor over Law Enforcement operations, where supervise a team of Law Enforcement and Simulator Consultants, and direct law enforcement risk control initiatives and training.  I joined TAC in 2013 and served as the Senior Law Enforcement Consultant until being promoted into the newly created law enforcement supervisor role earlier this year.  Before joining TAC, I was the duly elected sheriff of Nacogdoches County, Texas (2001-2012).  I am a Texas' Certified Public Manager (CPM), as well as a Past-President of the Sheriffs' Association of Texas (2009 & 2010), the East Texas Peace Officers' Association (2000-2001) and the Nacogdoches County Peace Officers' Association (1992-1993). I am an active member of the National Sheriffs' Association (NSA) and have served on the NSA Legal Affairs Committee for the past decade.

I have a Bachelor of Applied Arts and Sciences (BAAS) degree in Law Enforcement from Stephen F. Austin State University.  I am a graduate of the FBI National Academy (1995, Session 181) in Quantico, VA, as well as a 1981 graduate of the Kilgore College, East Texas Police Academy.  I hold both a Master Peace Officer's License and a Master Jailer's License through the Texas Commission on Law Enforcement (TCOLE), as well as a Law Enforcement Instructor Certificate (1986).  I have trained hundreds of peace officers, jailers and other public servants on a variety of topics including courtroom safety, officer safety, use of force (Response to Resistance), lethal and less lethal weapons, jail suicide detection and prevention, assessing for drug and alcohol withdrawal, medical and mental health impairments in a jail setting, emergency management preparedness, and much more.  I have presented as a keynote speaker or instructor at numerous conferences across the United States and throughout Texas on an array of law enforcement, corrections or emergency management matters.  In 2011, I was a lead presenter at the International Mental Health Conference held in San Antonio, Texas regarding the challenges law enforcement and Local Mental Health Authorities (LMHA) faced when dealing with intervention, transport and detention of individuals in mental health crisis.  I regularly conduct training for the Texas Jail Association and I have taught as a guest lecturer or adjunct faculty member at several state universities and college police academies, as well as the Law Enforcement and Correctional Management Institutes of Texas (LEMIT and CMIT) on a variety of topics pertaining to law enforcement, corrections, leadership, management, critical incident response and media.  I currently serve on the CMIT Professional Curriculum Development Board at Sam Houston State University, as well as the State's Steering Committee for Mental Health Officer Training in Texas Jails.

I have testified as an expert witness in both federal and state courts regarding law enforcement and jail related matters, including:  use of force, employee supervision, policy and procedure, jail

DEFT_COJ 002810

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

operations, inmate medical and mental health care, vehicular driving conduct and a wide array of offenses involving criminal conduct.  I have testified before the Texas State Legislature on many occasions regarding law enforcement and jail operations, illicit drug enforcement, mental health and other public safety matters.  I have provided information and written testimony to Congress and the Department of Justice regarding proposed legislation and national policy, and between 2009-2012, I was one of only 20 sheriffs from across the country chosen to meet on a semi-annual basis with the director of Immigration and Customs Enforcement (ICE) to discuss border security and illegal immigrant detention policies.  I routinely confer with the Texas Commission on Jail Standards and from 2006-2014, I served on the National Institute of Justice (NIJ) Corrections Information and Technology Assessment Committee as Texas' representative for county jails in the Rocky Mountain Region of the United States.  In 2015, I was asked by the Governor's Office, Criminal Justice Division, to assist with efforts to establish uniform model policies for Texas Counties regarding the detention and housing of juvenile offenders.

During my career, I have personally responded to and investigated thousands of law enforcement calls for service, including assaults, rapes, robberies, burglaries and thefts.  I have made countless arrests of individuals for an array of crimes committed against people and property.  I have investigated or overseen the investigation of dozens of deaths, including murders, suicides, accidental deaths and deaths from natural causes.   I received national recognition for my leadership role as sheriff and area operational commander when Nacogdoches County became "ground-zero" for the Columbia Space Shuttle Disaster in 2003.  I also assumed key local emergency management roles during hurricanes Katrina, Rita, Gustav, and Ike, as well as during floods, wildfires, windstorms and earthquakes.  During my tenure as sheriff,  the Nacogdoches County Sheriff's Office produced a 100% clearance rate on reported murder investigations; identified and documented more than 300 criminal gang members; disrupted multi-state burglary and theft rings; dismantled large scale drug manufacturing operations; disrupted human smuggling activities and arrested numerous sex offenders and child predators.

# Professional Experiences

39 years of experience as a licensed peace officer;
24 years of experience as a licensed county jailer;
20 years of upper management experience in law enforcement at a Sheriff's Office;
34 years of experience as a certified law enforcement trainer; having taught law enforcement, public safety, public administration, mass media, jail management and civil and criminal liability related courses at Stephen F. Austin State University, Sam Houston State University; the Angelina College, Kilgore College, East Texas and Lamar Regional Police Academies, the Law Enforcement Management Institute (LEMIT) and the Correctional Management Institute of Texas (CMIT).

DEFT_COJ 002811

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

Certified ALERRT Academy Instructor, Citizen Response to Active Shooter Events

Certified Instructor, Weapons of Mass Destruction, National Bureau of Justice (BJA)

Certified Instructor, Emergency Management, National Incident Management System

Certified Instructor, Less Lethal Control and Impact Weapons:  PR-24, ASP and Centurion Control Stick

Area Command Operations Chief, NASA's Columbia Space Shuttle Disaster (2003)

Local Incident Commander/Operations Chief, Hurricanes Katrina & Rita (2005), Gustav & Ike (2008)

Area Command Operations Chief, Angelina River-bottom Wildfire (2011)

Local Incident Commander/Operations Chief, East Texas Earthquakes (2012)

## Employment History

2020-Present, Law Enforcement and Simulator Consultants Supervisor, Texas Association of Counties

2015-2020, Senior Law Enforcement Consultant, Texas Association of Counties

2013-2015, Law Enforcement Consultant, Texas Association of Counties

2001-2012, Elected Sheriff of Nacogdoches County, Texas

1994-2001, Chief Deputy, Nacogdoches County Sheriff's Office

1992-1994, Lieutenant, Criminal Investigation Division, Nacogdoches County Sheriff's Office

1991-1992, Patrol Sergeant, Nacogdoches County Sheriff's Office

1990-1991, Patrol Deputy, FTO, Nacogdoches County Sheriff's Office

1985-1990, Patrol Officer, FTO, City of Nacogdoches, Texas Police Department

1981-1985, Patrol Officer, City of Tyler, Texas Police Department

## Education

Graduate of Stephen F. Austin State University, BAAS, Law Enforcement

Graduate of Cushing High School, Cushing, Texas

Graduate of the F.B.I. National Academy, Quantico, Virginia

Graduate of Kilgore College, East Texas Police Academy, Kilgore, Texas

Graduate of Texas A&M Extension (TEEX) Accident Reconstruction Program

Graduate of the state of Texas' Certified Public Managers (CPM) Program

## Professional Licenses and Certifications

Master Level, Texas Peace Officer's License

Master Level, Texas Jailer's License

Certified Law Enforcement Instructor, Texas Commission on Law Enforcement

Certified Public Manager, State of Texas

Certified Motor Vehicle Accident Reconstructionist

DEFT_COJ 002812

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO.  1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

## Career Achievements and Appointments:

President, Sheriffs' Association of Texas (2009 and 2010)

Committee Member, Legal Affairs Committee, National Sheriffs' Association (2009-Present)

Committee Member, Corrections and Technology Assessment Committee, National Institute of Justice-Rocky Mountain Region (2006-2014)

Committee Member, Border Security Committee, National Sheriffs' Association (2009-2012)

Committee Member, Texas Criminal Justice Advisory Committee, Sam Houston State University (2013-Present)

Committee Member, National Council on Homeland Security, Domestic Readiness and Preparedness United States Congress Sub-Council (2004-2006)

Co-Chair, Sheriffs' Association of Texas Legislative Committee (2006-2012)

Board of Directors, Texas Association of Counties (2009-2012)

Board of Directors, Deep East Texas Regional Mental Health Advisory Council (2001-2012)

Chair, Nacogdoches County Mental Health Advisory Council (2008-2012)

President, East Texas Peace Officers' Association (2000-2001)

President, Nacogdoches County Peace Officers' Association (1992-1993)

## Personal and Professional Awards and Recognitions

 "Administrator of the Year", East Texas Peace Officers' Association, 2012

" Law Enforcement Officer of the Year for Texas", Veterans of Foreign Wars of Texas, 2004

"Texas' Lawman of the Year", Sheriff's Association of Texas, 2003

"Citizen of the Year", Nacogdoches County Chamber of Commerce, 2003

 "Outstanding Leadership Award", East Texas Peace Officers' Association, 2003

"Leadership Award", Nacogdoches Rotary Club, 2003

"Law Enforcement Officer of the Year", Nacogdoches VFW Post 3893, 2004

"Leadership Award", East Texas Peace Officers Association, 1994

"Peace Officer of the Year", Nacogdoches County Peace Officers' Association, 1992

"National Championship", Coach-Little Dribblers Basketball, 11-12 yoa Girls, 2007

DEFT_COJ 002813

Report of Thomas Kerss, Law Enforcement and Jail Subject Matter Expert for Defense
RE:  Frances Earline Sims v City of Jasper, et al.  CIVIL ACTION NO. 1:20-CV-00124
U.S. Federal District Court, Eastern District of Texas, Beaumont Division

# IX.   Endnote References:

---

[i] https://earth.google.com/web/search/555+South+Main+Street,+Jasper,+TX/@30.91562114,-94.00103241,68.43188237a,82.27967231d,35y,27.48184414h,0t,0r/data=CigiJgokCZgz0fuXKUBAER78SbxHKUBAGeqWR7blDFjAlaST71hJDVjA

[ii] Texas Penal Code, Sec. 49.01, (2) "Intoxicated" means: (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body;  or (B)  having an alcohol concentration of 0.08 or more.

[iii] Texas Penal Code, Sec. 49.02.  PUBLIC INTOXICATION.  (a)  A person commits an offense if the person appears in a public place while intoxicated to the degree that the person may endanger the person or another.

[iv] Texas Code of Criminal Procedure, Art. 14.031. PUBLIC INTOXICATION.  (a)  In lieu of arresting an individual who is not a child, as defined by Section 51.02, Family Code, and who commits an offense under Section 49.02, Penal Code, a peace officer may release the individual if:  (1) the officer believes detention in a penal facility is unnecessary for the protection of the individual or others; and (2) the individual:  (A) is released to the care of an adult who agrees to assume responsibility for the individual;

[v] Texas Code of Criminal Procedure, Art. 14.06. MUST TAKE OFFENDER BEFORE MAGISTRATE. (a) Except as otherwise provided by this article, in each case enumerated in this Code, the person making the arrest or the person having custody of the person arrested shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in any other county of this state.

[vi] *See, e.g., Powell v. Texas, 392 U.S. 514, 528 (1968) ("It would be tragic to return large numbers of helpless, sometimes dangerous and frequently unsanitary inebriates to the streets of our cities without even the opportunity to sober up adequately which a brief jail term provides.").*
[vii] Texas Code of Criminal Procedure, Art. 16.22.  EARLY IDENTIFICATION OF DEFENDANT SUSPECTED OF HAVING MENTAL ILLNESS OR MENTAL RETARDATION. (a) (1)  Not later than 72 hours after receiving credible information that may establish reasonable cause to believe that a defendant committed to the sheriff's custody has a mental illness or is a person with mental retardation, including observation of the defendant's behavior immediately before, during, and after the defendant's arrest and the results of any previous assessment of the defendant, the sheriff shall provide written or electronic notice of the information to the magistrate.

DEFT_COJ 002814

1060 Skylight View
Colorado Springs, CO
80906

November 1, 2020

Mr. Frank D. Calvert
CALVERT EAVES CLARKE & STELLY, L.L.P.
Beaumont Tower
2615 Calder Avenue, Suite 1070
Beaumont, Texas
77702

RE:  Civil Action No. 1:20-cv-00124; Frances Earline Sims, Individually and as
dependent administrator of, and on behalf of the Estate of Steven Mitchell Quall and
Steven Mitchell Qualls' heir(s)-at-law v. City of Jasper, et al; In the United States District
Court, Eastern District of Texas, Beaumont Division.

Dear Mr. Calvert:

As you have requested, I have reviewed the materials regarding Steven Mitchell Qualls.
Below you will find my report.

I have reviewed the Plaintiff's Original Complaint and Plaintiff's Initial Disclosures;
Defendants' Initial Disclosures with documents (1-1497); Defendant's Supplemental
Disclosures with documents (2030-2070), Defendants'' Second Supplemental Disclosures
with documents (2071-2), Defendants' Third Supplemental Disclosures (2073-2259);
Chief Hall's Reponses to Plaintiff's Discovery Requests (1533-1997), Toderick  Griffin's
Responses to Plaintiff's Discovery Requests, Joshua Hadnot's  Responses to Plaintiff's
Discovery Requests (1498-1531; 2006-2939), Sterling Linebaugh's Responses to
Plaintiff's Discovery Requests,  and Heather O'Dell's Responses to Plaintiff's Discovery
Requests; Defendants, City of Jasper, Toderick Griffin's, Joshua Hadnot's,  Sterling
Linebaugh's, and Heather O'Dell's' Motions to Dismiss Plaintiff's Original Complaint,
and the Order entered on Defendants' Motions to Dismiss Plaintiff's Original Complaint;
and the videos.

I am a board certified forensic pathologist licensed to practice medicine in the States of
Colorado and Texas.  I have been licensed to practice in Texas since 1978 and Colorado
since 1982.  I obtained my B.S. in Zoology in 1971 from the University of Washington,
Seattle, Washington.  I attended the Universidad Autonoma de Guadalajara, Mexico
graduating in 1974 and received an M.D. degree.  I then performed an American Medical
Association rotating internship at the Moncton Hospital, Moncton New Brunswick,
Canada beginning July 1, 1974 and finishing on June 30, 1975.  I performed a one year
Servicio Social (Social Service) as required for licensure in the Republic of Mexico from
August of 1975 to August of 1976 in Guadalajara, Mexico.  I then entered active duty in
early November 1976 with the United State Army as a Captain in the Medical Corps and

was assigned as a Brigade Surgeon to the 7th Infantry Division and was stationed at Fort Ord, California.  In July of 1978 I began a four year residency in Anatomical and Clinical Pathology at Fort Sam Houston, Texas at Brooke Army Medical Center completing my residency at the end of June 1982.  I completed a forensic pathology fellowship at the Bexar County Forensic Science Center in San Antonio, Texas, beginning in August of 1984 and finishing in August 1985.  I have been board certified in Anatomical and Clinical pathology since June of 1982 and Forensic Pathology since May of 1985.  I retired as the El Paso County Coroner in January of 2019 but continue to do consulting.  I was appointed Coroner of El Paso County, Colorado in January of 2006 and elected to that position in November of 2006, 2010, and 2014.  I was an Associate Coroner Medical Examiner, El Paso County, Colorado from July, 2002 to January of 2006.  I was the Deputy Chief Medical Examiner at the Bexar County Forensics Science Center in San Antonio, Texas from June of 1992 through December of 2002.  I was a staff Medical Examiner at the Bexar County Forensic Science Center from August of 1984 to June of 1992.  I was Chief of the Department of Pathology for the U.S. Army Hospital, Fort Carson, Colorado between March 1984 and September of 1984, and I was the Assistant Chief of the Department of Pathology between July 1982 and March of 1984.

I practiced emergency medicine on a part time basis between 1978 and 1991.  My military service and awards, medical society and other professional society memberships and appointments, as well as my international professional activities are further outlined in my attached curriculum vitae.  My fee schedule and a list of courtroom cases other than when called upon by the State of Colorado where I have either given a deposition or testified at trial is also attached to this letter.

Steven Mitchell Qualls was a 28 year old male with the past medical history of cardiomyopathy, methamphetamine addiction as well as other substances, anxiety, bipolar disorder suicidal ideation, suicide attempt in the past, and MRSA left finger neck in the past.  He was taking Adderall (amphetamine) for his attention deficit disorder, Seroquel (quetiapine) which is typically used for psychosis, ephedrine a nasal decongestant, and Strattera (atomoxetine) which can be used for attention deficit order as well as depression.

On the afternoon of January 28, 2019 Mr. Qualls was transported to the Jasper Memorial Hospital arriving at 4:42 p.m. The EMS record noted that he had a long history or polysubstance abuse and was brought in for agitation.  The triage note added that the history is unclear on this patient but someone at his house called their services secondary to patient's agitation.   There is a long documented history of this patient's methamphetamine abuse.  EMS had a strong suspicion of methamphetamine ingestion because of the smell on the patient.   EMS noted that the patient is agitated and tachycardic in the 150's and complaining of chest and abdominal discomfort.   His physical examination revealed a pulse of 122, and he was oriented only to self.

At 5:10 p.m. a behavioral assessment documented that Mr. Qualls was restless, agitated, anxious, suspicious, paranoid, rambling with inappropriate speech pattern, hyperactive

with tics and tremors, had disorganized thought processes, was delusional, had suicidal ideation, and was currently thinking about suicide.

Another nurse documented at 6:30 p.m. that Mr. Qualls was pacing and wandering around the ER and repeatedly on his phone and would not go back to his room. Jasper Police Department returned to the ER at 8:31 p.m. because he would not stay in his room and were informed that "he was talking to his reflection in the ER entrance glass doors and was getting agitated again." Officers arrived and spoke with Qualls who was still highly intoxicated on some drug but went back to his room and he was told to stay there until discharge. The family was contacted to come and pick Mr. Qualls up but apparently refused to pick him up.

He was treated with medications and fluids and felt to be stable for discharge by Dr. Rosanova at 9:30 p.m. with a documented pulse of 99, respirations of 18, and pulse oximetry of 100%. At 9:33 p.m. Mr. Qualls was presented his discharge papers but was unable to sign. The reason given by the nurse who signed the discharge papers was "altered mental status". He refused to leave the ER. Jasper Police Department personnel arrived as Mr. Qualls had been discharged but was not wanting to leave the property. Officers walked Qualls to a patrol unit and offered him a ride to anywhere he wanted to go. Qualls accepted that ride but once at the patrol unit would get in. The officers left him standing in the parking lot with his items and drove to the back of the parking lot to sit and observe what he would do. Qualls never left the sidewalk and attempted to reenter the ER by pressing on the key pad multiple times until Jasper Memorial Hospital called dispatch again. Dispatch state that the nurse wanted him off the property so he was arrested for Public Intoxication due to him being a danger to himself if he was allowed to leave.

On arrival to the Police Department Mr. Qualls was booked in. He was checked for any weapons or illegal narcotics. He was allowed to keep his clothes on but they were checked. Qualls went into the cell and sat at the door for the rest of the night. He was checked during the night.

During the day of the 29th of January Mr. Qualls remained kneeling by the door and at one point appeared to be having a conversation with someone who was not present (hallucinating). At 10:30 a.m. he was still not following commands or instructions and still speaking unintelligibly. At 12:10 p.m. Mr. Qualls was still unable to speak coherently and could not be taken before Judge Jackson for arraignment. Around 6:00 p.m. Sergeant Griffin, after returning to work took the evening meal to Mr. Qualls and observed him to be leaning over and "talking but not in sentences, just a lot of words." At 7:02 p.m. Mr. Qualls vomited and Sergeant Griffin returned to the police department and helped to clean the vomit off of Mr. Qualls as well as in the cell area. Sergeant Griffin Observed Qualls still moving around and talking about the commissary which is served at the county jail. At 10:31 p.m. Sergeant Griffin was notified that Mr. Qualls had vomited again and returns to the police department. The officers again cleaned Mr. Qualls up and also the cell area. Sergeant Qualls observed while mopping a small plastic baggie that was tied up which is normally used to hold illegal narcotics. He further noted

that the bottom of the bag was not there and there was nothing in the top area which was tied in a knot. He then opened the bag and did not see any narcotics or any substance and then discarded the bag in the trash.

On January 30th around 5:45 a.m. Mr. Qualls was checked for the last time by Sergeant Griffin who noted that he was still talking and moving at that time. At 7:15 a.m. Mr. Qualls was still speaking incoherently. By 7:38 a.m. he was no longer moving and was silent. Mr. Qualls was found deceased at 8:40 a.m.

An autopsy was performed on January 31st by Tommy J. Brown, D.O. in Beaumont, Texas at the Forensic Medical Management Services of Texas. Minimal external injuries were found but included a 1 inch bruise in the distal right upper arm, a 5/8 inch abrasion to the medical left knee, and bilateral 1 ½ inch bruises over both the left and right knees. The internal examination revealed no injuries. The heart weighed 390 gm and was normal by both gross and microscopic description. The right lung weighed 660 grams and the left lung weighed 600 grams and both lungs were congested. Microscopically the lungs had had red blood cells in the septa and in large coalescent alveolar spaces. The left kidney weighed 200 grams and the right kidney weighed 175 grams. Both had capsules that stripped with ease to reveal smooth brown surfaces. On sectioning, the cortices and medullae were well demarcated. The urinary bladder contained 50 milliliters of urine.

The toxicology performed was extensive and thorough. Cotinine was detected in heart blood but not quantitated. The ephedrine postmortem heart blood level was determined to be 8.1 ng/mL, the phenylpropanolamine heart blood level 17 ng/mL, the amphetamine heart blood level 1,200 ng/mL (1.2 mg/L) and the heart blood methamphetamine level 13,000 ng/mL (13.0 mg/L). The postmortem vitreous electrolytes revealed a creatinine level of 2.0 mg/dL, a sodium level of 155 mmol/L, a potassium level of 14 mmol/L, a chloride level of 133 mmol/L, glucose not detected, and urea nitrogen (BUN) level of 47 mg/dL.

Dr. Brown made the following pathologic diagnoses: 1. Amphetamine and methamphetamine toxicity; 2. Mild pulmonary edema; 3. Mild dehydration (creatinine 2.0 mg/dL, Urea nitrogen of 47 mg/dL; sodium 155 mmol/L); and 4. Decedent known drug abuser. He determined the cause of death to be "Complications of amphetamine and methamphetamine intoxication" and the manner of death "accident".

Methamphetamine is a potent stimulant with a prolonged half-life. Methamphetamine stimulates the sympathetic nervous system both in the central nervous system and peripherally causing high levels of dopamine and norepinephrine. This results in high blood pressure and increased heart rate (tachycardia). High levels such as in this case can cause euphoria, increased physical activity and wakefulness for long periods of time. Other common observable effects are confusion, agitation, anxiety, hallucinations, aggressive behavior and paranoia. Hyperthermia, secondary rhabdomyolysis, irregular heart rhythms, circulatory collapse, coma, convulsions and death can occur. Deaths have been reported to occur at levels as low as 0.09 mg/L. There is no antidote that can reverse

the effects of intoxication. The National Vital Statistics Reports reported that in 2016 that 6,762 individuals died of methamphetamine overdoses in the United States.

The most common sample to test for almost all drugs in a living person is a peripheral blood specimen. In performing postmortem drug testing the preferred  sample for testing if available is peripheral blood and if not available then subclavian or heart blood. Peripheral blood more closely reflects the circulating level of a given drug at the time of death.  However, almost all drugs including amphetamine and methamphetamine undergo postmortem redistribution where additional quantities of amphetamine and methamphetamine passively diffuse into the blood from stomach contents, internal organs such as the heart, liver, lungs and kidneys or other tissues.  This must be taken into account and the postmortem redistribution studies can be utilized to compare with levels of a given drug level in a living patient.

It has been found that the heart/femoral blood methamphetamine concentration ratios average 1.61 (range of +/- .48).  In this case of the heart blood methamphetamine level of 13.0 mg/L is in reality a peripheral blood level of 13.0 mg/L/1.13 to 2.1 postmortem redistribution factor which approximately equals a peripheral blood methamphetamine level in a living patient  of around 6.19 mg/L to 11.5 mg/L.  The metabolic half-life for methamphetamine is 6-15 hour or longer depending on the urine ph.  The oral absorption rate is 2.6 to 3.6 hours depending on how the drug is taken i.e. oral, smoking, skin popping to intravenous.

The amphetamine heart/femoral blood concentration ratio is approximately 1.5 (range of +/- of 0.049). In this case the heart amphetamine level of 1.2 mg/L/1.46 to 1.56 postmortem redistribution factor which approximately equal a peripheral blood amphetamine level in a living person of around 0.77 mg/L to 0.82 mg/L.  The metabolic half- life for amphetamine is 7-34 hours and 4 ½ half-life's are needed to eliminate 90-95% of the drug.  The absorption rate for amphetamine is 2 to 3.5 hours in an oral form. Amphetamine is a metabolite of methamphetamine and the amphetamine level usually peaks around 12 hours post ingestion.

Since the 1960s vitreous fluid has been withdrawn postmortem from the globe of the eye between the lens and the retina.  Vitreous fluid is the only postmortem fluid that can give you information regarding postmortem electrolytes such as sodium, chloride, potassium, as well as glucose, urea nitrogen (VUN), creatinine, alcohols, and a variety of other substances.  In this case the sodium level is 155 mmol/L, potassium level is 14 mmol/L, the chloride level is 133 mmol/L, the glucose level is none detected, the creatinine is 2.0 mg/dL and the urea nitrogen (VUN) level is 47 mg/dL.  In interpreting these levels one first has to make sure that the potassium level is < 15mmol/L which indicates that there has not been significant decomposition such that the levels of the other substances would be significantly altered.  In this case the sodium level is 155 mmol/L which is 1 mmol/L below what is considered to be mild hypernatremic dehydration, and the chloride level is 133 mmol/L which is 3 mmol/L below what one could consider being mild hypernatremic dehydration.  The creatinine level of 2.0 mg/dL and the urea nitrogen (VUN) of 47 mg/dL also indicate mild hypernatremic dehydration with any value of creatinine > than 1.3 mg/dL and a urea nitrogen (VUN) value > than 40 mg/dL.  The

glucose in the vitreous fluid decreases after death and can certainly be undetected at 24 hours postmortem interval.  A vitreous glucose > than 200 mg/dL is consistent with diabetes mellitus.

Based on reasonable medical probability I have the following medical opinions.

First, I agree with Dr. Tommy Brown that the cause of death was amphetamine and methamphetamine toxicity. The mechanism of death is due to a lethal cardiac arrhythmia. A methamphetamine level in the range of 6.19 to 11.5 mg/L coupled with an amphetamine level in the range of 0.77 mg/dL to 0.82 mg/dL can certainly cause death. Methamphetamine deaths can occur well below 1.0 mg/dL.  However, as noted in Principles of Forensic Toxicology, Fourth addition edited by Barry Levine page 369 states that "since the degree of tolerance for any drug is impossible to determine at autopsy, attributing significance to isolated postmortem concentrations or attempting to back-calculate to a dose is unwise."

Second, when an individual takes a large amount of methamphetamine such as in this case, the stimulant effects may last from 6 to 24 hours or longer. When Mr. Qualls arrived at the police department he was noted to be intoxicated, and incoherent, with altered mental status similar to other occasions.  When he was placed in the detox cell he was noted to have incoherent mumbling and kneeled by the door.  On January 29th he stated that he was hearing voices of other people who were with him and having a conversation with them.  Later that day it was noted by Sergeant Griffin that Mr. Qualls was "talking but not in sentences, just a lot of words".  At this point he has been under observation for 24 plus hours and still appeared to be in a similar level case of intoxication that had been observed before.

Third, there are numerous variables including at least one baggie containing an unknown amount of methamphetamine that Mr. Qualls swallowed.  There is no way to determine when this baggie was swallowed, when it began to leak methamphetamine, how soon it took for all of the methamphetamine to be dissolved in the stomach contents or absorbed into the blood stream, or if other baggies were still in the gastrointestinal tract and had transited thorough the stomach and were in the small or large bowel. In addition the number of methamphetamine doses and over what time frame also are important variables.

Fourth, rigor mortis cannot be used to determine the exact time of death.  In fact in some individuals will never go into rigor mortis.  Rigor mortis can be rarely present at death, be present within minutes or delayed for hours depending on the person or the circumstances of the death scene such as temperature, clothing, sunshine, wind, etc.

Fifth, there is no evidence at autopsy that Mr. Qualls had either hyperthermia or rhabdomyolysis.  The body was noted to be cold when discovered. The postmortem vitreous analysis indicated borderline to mild hypernatremic dehydration.  The bladder was noted to contain 50 cc of urine at autopsy and had the urine been discolored or in some way abnormal this would have been mentioned could have been tested for

myoglobin.  Furthermore the kidneys at autopsy appeared normal and the creatinine and urea nitrogen (VUN) were consistent with mild dehydration.

Sixth, as to the clinical impression of cardiomyopathy, the heart weighed 390 grams which is near the upper limit of normal.  The heart was described grossly as being normal in shape, form, normal valves, normal appearing myocardium and normal coronary arteries.  Furthermore a microscopic slide was described as normal and without evidence of interstitial and/or perivascular fibrosis and there was no evidence of myocardial ischemia or necrosis.

Seventh, it is quite clear from the medical record that the medical staff in the ER wanted Mr. Qualls away from their facility.  At the time of discharge, they noted that he was alert and oriented although a nurse noted that Mr. Qualls could not sign his discharge papers due to "altered mental status".  He also was still hallucinating.  It has been my anecdotal experience that law enforcement officers when told that an individual has been discharged from the ED they conclude that there is no medical condition that would prevent arrest and incarceration because the doctor and or nurse(s) told them so.  Therefore everything should be fine.

As more information becomes available I reserve my right to alter my opinions and offer additional opinions.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

Robert C. Bux, MD

# CURRICULUM VITAE

**Robert C. Bux, MD**
El Paso County Coroner's Office
2741 East Las Vegas Street
Colorado Springs, Colorado 80906

Born:   May 22, 1948
Columbus, Kansas

January 9, 2019

## Education

College:

University of Washington, Seattle, WA
Bachelor of Science in Zoology
1966 - 1970

Medical School:

Universidad Autonoma de Guadalajara
Guadalajara, Jalisco, Mexico
1970 - 1974

Rotating Internship:

The Moncton Hospital, Moncton
New Brunswick, Canada
July 1974 - June 1975

Residency in Pathology:
San Antonio, Texas

Brooke Army Medical Center

Anatomic and Clinical Pathology
July 1978 – June 1982

Fellowship:

Bexar County Forensic Science Center
San Antonio, Texas
Forensic Pathology
August 1984 – August 1985

## Board Certification

American Board of Pathology

ANATOMICAL PATHOLOGY, 1982

American Board of Pathology

CLINICAL PATHOLOGY, 1982

American Board of Pathology

FORENSIC PATHOLOGY, 1985

## Licensure and Certifications

Licensure

New Mexico - 1976 to 2013
Texas - 1978 to present
California – 1980 to 1987
Colorado - 1982 to present

DEFT_COJ 002822

## Present Position

| | |
|---|---|
| Coroner/Medical Examiner | El Paso County Coroner's Office, Colorado Springs, CO.  Appointed Coroner January, 2006<br>Elected Coroner to 4 year term on November 2, 2006, reelected to second 4 year Term November 6, 20010, and reelected to third term November 4, 2014.<br>Sworn into office on January 9, 2007, January 11, 2011 and January 13, 2015.   Retired at end of last Term on January 8, 2019 |

## Past Positions

| | |
|---|---|
| Associate Coroner/Medical Examiner El Paso County, Colorado | El Paso County Coroner's Office, Colorado Springs, Colorado.  July 2002-January 2006 |
| Deputy Chief Medical Examiner | Bexar County Forensic Science Center, San Antonio, Texas June 1992 – December 2002 |
| Staff Medical Examiner | Bexar County Forensic Science Center San Antonio, TX August 1984 – May 1992 |
| Chief Dept. of Pathology Fort Carson, CO | U.S. Army Hospital March 1984 – September 1984 |
| Assistant Chief Dept. of Pathology | U.S. Army Hospital Fort Carson, CO July 1982 – March 1984 |
| Part-Time Emergency Room Physician EPA and TEXEM | October 1978-January 1991 |

## Military Service and Awards

Major, Medical Corps, United States Army Reserve, October 1971 – June 2002

Expert Field Medical Badge, 1977

United States Army Commendation Medal, Fort Ord, CA – 1978; Fort Carson, CO – 1984

Meritorious Service Medal, Fort Carson, CO – 1984

## Medical Society Memberships

Bexar County Medical Society, San Antonio, Texas, 1980 – 2002

Texas Medical Association, 1981 – 2002

DEFT_COJ 002823

American Medical Association, 1982 –2010

College of American Pathologists, 1980- 2000 (Fellow – 1983)

National Association of Medical Examiners – 1985 to present

American Academy of Forensic Sciences 1989 – present (Fellow – 1998)


**Other Professional Offices and Appointments**

Board of Directors, San Antonio Chapter, National Sudden Infant Death Foundation 1987 – 1997, Advisor – 1997 through 2002

Instructor in Intubation of EMS Paramedics 1988 – 1998

Faculty, Southwest Symposium on Forensic Dentistry, 1986, 1988, 1990, 1992, 1994, 1996, 1998, 2000, 2002.  University of Texas Health Science Center School of Dentistry, San Antonio, Texas

Member, Texas Multidisciplinary Task Force on Children's Justice 1993 – 1995

Member, Child Fatality Death Review for Bexar County – 1993 through December 2002

Member, Child Fatality Death Review for State of Texas – Original member 1994 and helped write Legislation in 1994 which was adopted by the State Legislature in 1995

Board of Editors, The American Journal of Forensic Medicine and Pathology – 1997 to present

Clinical Assistant Professor of Pathology UTHSC San Antonio, Texas – 1998 to 2005

Member, Board of Directors, Colorado Coroners Association- 2005 to 2010.  President 2009-10

Member, Child Fatality Review Team for the 4th Judicial District, State of Colorado -2006 to 2008

Member, Medical Advisory Board, International Forensic Program, Physicians for Human Rights – 2006 to present

Colorado Bureau of Investigation Cold Case multidisciplinary team -2010 through 2018

Member El Paso County Board of Health-2011 to present

**International Professional Activities**

United Nations International War Crimes Tribunal for the former Yugoslavia, Participated in exhumation of mass graves, September 21 – October 5, 1996 near Tuzla, Bosnia under the direction of Physicians for Human Rights

Guest Lecturer – Forensic Science Conference "Forensics for the 21[st] Century" Sponsored by Procuraduria General de Justicia del Districto Federal, Mexico, DF – August 4-7, 1997

Organization of American States Court of Inter-American Human Rights, San Jose, Costa Rica – Testified for the Inter-American Commission on Human Rights of the Organization of American States in the case of "Panel Blanca", the case of Elizabeth Panniagua, et al, vs. Guatemala

Participant in exhumation of Archbishop Juan Jose Gerardi, appointed Forensic Medical Expert for the Archdiocese of Guatemala in Guatemala City, Guatemala, September 16-18, 1998

Organization of American States Court of Inter-American Human Rights, San Jose Costa Rica – January 20-29, 1999 – Testified as Forensic Expert appointed by the Court of Inter-American Rights in the case of Villagran Morales, et al, vs. Guatemala (11-383)

Exhumation of Julian Cho, Mayan Cultural Leader in Punta Gorda, Belize for Physicians for Human Rights – January 31 – February 2, 1999

Exhumation and identification of 14 guerillas of the Tupac Amaru who were responsible for the takeover of the Japanese embassy in Lima Peru and sequestration of 72 VIP hostages on the 17th of December 1996, and subsequent hostage rescue and embassy liberation by special forces of the Peruvian army of April 22, 1997 , all work occurred in 2001.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica) in the case of Guillermo Velez Mendoza who died in custody of the AFI (Agents of the Federal Investigation) in Mexico City.  Reviewed entire case file participated in the exhumation and gave a legal declaration under oath, all work occurred in 2002.

Consultant for the Special Prosecutor for the prosecution of genocide and war crimes to the International War Crimes Court in Sierra Leone.  Reviewed cases of genocide and provided written reports.  All work occurred in 2004.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica} and Attorney General for the state of Chihuahua in the cases of "las mujeres desconocidas" in Ciudad Juarez and Chihuahua, Chihuahua.  Toured forensic facilities, reviewed case files, examined skeletal remains and offered suggestions for future case work.  All work occurred in January of 2005.

PHR consultant in the case of Brad Will, American photojournalist killed in Oaxaca, Mexico in 2006.  Analyzed all forensic and investigational file at the Procurduria General de la Republica forensic laboratory and coauthored report.   Work completed in 2008.

Consultant for PHR in the review of the Somali Pirates killed in a life boat by US Navy Seals on the USS Bainbridge from foiled attempt to board the Maersk Alabama and the return to safety of the kidnapped Captain of the Maersk Alabama, Richard Phillips.

Consultant for EQUITAS human rights organization in Bogota, Columbia in the deaths of Fair Leonardo Porras Bernal and Elkin Gustavo Verano with travel to Bogota, Columbia in September 2010 with exhumations and performed second autopsies, written reports and courtroom testimony in these cases also known as "casos positivos falsos.

PHR consultant and written report in the death in custody of Sergei Magintsky, Russian Hermitage Fund lawyer incarcerated in a Moscow, Russia.

## Publications

1.   DiMaio, V.J.M., Dana, S.E. and Bux, R.C. "Deaths Caused by Restraint Vest", JAMA 255:905, 1986.

2.   Bick, D., Curry, C.J., McGill, J.R., Schordent, D.F., Bux, R.C. and Moore, C., "Male Infant with Ichthyosis, Kallman Syndrome Chondrodysplasia Punctata, and an Xₚ Chromosome Deletion" AM.J.Med.Genet 33(1): 100-7, May 1989.

3.   DiMaio, V.J.M., Dana, S.E., and Bux, R.C., "Sudden Cardiac Death" (Letter), NEJM 322:271. January 1990.

4.   Taylor, R., Bux, R.C., and Kirk, D., Forensic Pathology in Homicide Cases, 40 AM Jur Trials, 501-627, 1990.

5.   Taylor, R., Bux, R.C., and Kirk, D., Self Defense in Homicide Cases, 42 Am Jur Trials, 151-312, 1991.

6.   Bux, R.C., and McDowell, J., "Death Due To Attack From Chow Dog", AM J. of Forensic Med and Path, 13(4): 305-8, December 1992.

7.   Rulon, J., Cho, C.G., Guerra, L., Bux, R.C., and Gulley, M., "Activated Protein C Resistance Is Uncommon in Sudden Death Due to Pulmonary Embolism", Journal of Forensic Sciences 44(6): 1111-1113, November 1999.

8.   Kohlmeir, R., Cho, C.G., Bux, R.C., Guerra, L., Rulon, J., Selby, D.M., and Gulley, M., "Prothrombin Gene Mutation Uncommon in Pulmonary Embolism", Southern Medical Journal 93(11) 1073-7, November 2000.

DEFT_COJ 002826

## COURT APPEARANCES OF
## ROBERT C. BUX, MD

### 2016

1. John Michael Beames vs. Ron Davis, Warden of California State Prison, San Quentin in the United States District Court, Eastern District, Fresno, California. Assistant Federal Public Defender, Sacramento, California.
2. United States vs. Eric Harvey Littlecalf in the United States District Court, Billings, Montana. Assistant Federal Defender David Merchant, Billings Branch, Billings, Montana.
3. Deposition in the case of Sylvia Rodriguez, et al vs. Pioneer Resources Company, et al. in the District Court, 191st, Judicial District Court, Dallas County, Texas. Attorney Michael McGurk of Kittleman Thomas, McAllen, Texas.
4. Deposition in the case of Jason E. Harris, et al vs. Nathan Olsen, MD, in Arapahoe County District Court, Centennial, Colorado. Attorney Brian McConaty of Robinson, Waters & O'Dorsio, PC, Denver, Colorado.
5. Deposition in the case of Debby Davis, et al vs. Bunzl Distribution Southwest, LP, et al, in the 79th District Court, Jim Wells County, Texas. Attorney Richard Underwood of Farris Bobango Branan, PLC, Memphis Tennessee.
6. Deposition in the case of Babette Clingan vs. AP WP Management, L.P., and Winthrop Management, L.P. in the District Court, Bexar County, Texas. Attorney Rick Espey of Espey & Associates, San Antonio, Texas.
7. Deposition in the case of Andre Guardado, et al vs. Edmond Joe Palmore, et al in the United States District Court for the Northern District of Texas, Dallas Division, Dallas, Texas. Mr. John T. Kirtley, III of Ferrer, Poirot, & Wansborough, Dallas, Texas.
8. Sandoval vs. Gurley, et. al. in the 11th Judicial District Court, Division 7, McKinley County, Gallup, New Mexico. Attorney Mark J. Riley of Riley, Shane & Keller, Albuquerque, New Mexico.
9. Deposition in the case of Rachel Chalker, et al vs. VHS San Antonio Partners BHS SA Thousand Oaks, LLC d/b/a Baptist Emergency Hospital Thousand Oaks, Michael E. Lozano, MD, 24 Hour Physicians, INC., Mathew Patlovany, MD, and Leading Edge Emergency Physicians, P.L.L.C. the 285th Judicial District , Bexar County, Texas. Attorney Robert R. Biechlin, Jr., Thornton of, Biechlin, Reynolds & Guerra, LC, San Antonio, Texas.

### 2017

1. Deposition in the case of Courtney Cantwell and James Cantwell vs. Seth Brener, MD, in the District Court, Travis County, Texas. Attorney Terri S. Harris of Steed Dunnill Reynolds Murphy Lamberth, LLP, Austin, Texas.
2. Deposition in the case of Kim Hildebrand, et al. vs. Gary W. Wells, DO, in the District Court of Cleveland County, Oklahoma. Attorney Jo Slama of the Jo Slama Legal Group, Oklahoma City, Oklahoma.
3. Deposition in the case of Zarina Richardson, et al vs. Laredo     Medical Center and Fermin Romero Arreola, MD in the 406th District Court, Webb County, Texas. Attorney Michael Wallis of Thorton, Biechlin, Reynolds & Guerra, San Antonio, Texas.

4. Deposition in the case of Kevin Webb, et. al, vs. Brad Livingston, et al. in the United States District Court, Southern District of Texas, Houston Division. Assistant Attorney General Matthew Greer of the State of Texas Attorney General's Office, Austin, Texas.

5. Deposition in the case of Skylor Ashey and Lance Ashley vs. United States of America ex rel. Chickasaw Nation Medical Center in the United States District Court, Eastern District of Oklahoma. Attorney Ms. Jo L. Slama of Slama Legal Group, Oklahoma City, Oklahoma.

6. Deposition in the case of Mariela Pena vs. Jose Manuel Balderas-Ramirez, Intervenor, vs. Solana Ridge Apartments; Solana, LLC, Migneault Properties, LP and Atmos Energy Corporation in the District Court, Dallas County, Texas. Attorney Mark Carrigan of Carrigan, McCloskey & Roberson, Houston, Texas.

7. Deposition in the case of Stephany Borges, et al vs. City of Eureka, et al in the United States District Court, Northern District of California. Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.

8. Stephany Borges, et al vs. City of Eureka, et al. in the United States District Court, Northern District of California. Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.

9. Deposition in the case of Kim Grizzle, et al. vs. John Christian, As Sheriff of Pontotoc County, et al., in The United States District Court for the Eastern District of Oklahoma.

10. Deposition in the case of Holly and David Lynch vs. Muskogee County in The United States District Court for the Eastern District of Oklahoma. Attorney Andy A. Artus of Collins, Zorn, and Wagner, Oklahoma City, Oklahoma.

11. State of South Dakota vs. Michael Swan in the district court in Milltown, South Dakota. Attorney Scott R. Bratland of Bratland Law, Watertown, South Dakota.

12. Darrell Wayne Frederick vs. OCCA Case No. PCD-2015-47 in the District Court of Cleveland County, Oklahoma. Attorney Kristi Christopher of the Capital Post-Conviction Division, Oklahoma Indigent Defense System, Norman, Oklahoma.

13. State of Oklahoma vs. Melissa Clark in the District Court of Cleveland County, Oklahoma. Attorney Keith Nedwick of the Law Offices of Keith Nedwick, Norman, Oklahoma.

14. State of Oklahoma vs. Christopher Whinery in the District Court of Creek County, Oklahoma. Ms. Velia Lopez of the Sapulpa office of the Oklahoma Indigent Defense System, Sapulpa, Oklahoma.

## 2018

1. Deposition in the case of James Neuroth vs. Mendocino County, et al. in the United States District Court, Northern District of California. Attorney Jerome Varanini, Sacramento, California.

2. Deposition in the case of Frenchell Johnson, et al. vs. Mohammed Khan, MD, et al. in the 129th Judicial District Court, Harris County, Texas. Attorney Tim Riley of the Riley Law firm, Houston, Texas.

3. United States vs. FC3 Zaccariah McCulloch, USN General Court-martial, Naval Base Kitsap-Bremerton, Washington. Defense Counsel Jenifer Luce, LCDR, JAGC, USN, Defense Services Office West, United States Naval Base, San Diego, California.

4. Deposition in the case of Lisa Einess vs. Thomas Spera, MD, et al. in the Third Judicial District Court, Dona Ana County, New Mexico. Attorney Larry Hicks of Hicks & Llamas, El Paso, Texas.

5 Deposition in the case of Jane Bailiff Mullen, et al. v. Jason A. Yoho, MD et al. in the District Court, Comal County, Texas. Attorney Richard J. Kasson of Gonzalez, Chiscano, Angulo & Kasson, San Antonio, Texas.

6. Deposition in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Mary Wilson of Cowen Peacock, San Antonio, Texas.
7. Deposition in the case of Amy Manning, as Personal Representative of the Estate of Scotty Caddell et al. vs. Air Methods Corporation d/b/a Native Air et al. in the State of New Mexico, County of Santa Fe, First Judicial District Court. Attorney B. Kent Buckingham of Buckingham & Barrera, Midland, Texas.
8. USA vs. Ricky Allen Fackrell and Erik Rekonen in the United States District Court, Eastern District of Texas, Beaumont Division. Attorney Gerald Bourque, The Woodlands, Texas.
9. Deposition in the case of Joseph Segura, vs. Presbyterian Healthcare Services in the Second Judicial District Court, county of Bernalillo, State of New Mexico. Attorney Charles K. Purcell of Rodey Law Firm, Albuquerque, New Mexico.
10. Ex Parte Andrew Wayne Roark in the Criminal District Court, Number Five, Dallas County, Texas. Attorney Gary A Udashen of Udashen Anton, Dallas, Texas.
11. Deposition in the case of Linda Morgan vs. Basel S. Hassoun, M.D.; Basel S. Hassoun, INC.; Lenny D. Stubbs, M.D.; Oklahoma Cardiovascular Associates, PC; and Mercy Hospital of Oklahoma City, INC., Defendants; Mercy Hospital of Oklahoma City, INC., Third-Party Plaintiff vs. Lenny D. Stubbs, M.D., Third-Party Defendant. Attorney Ann Brooks of Brooks Law Firm Oklahoma City, Oklahoma.
12. Deposition in the case of Loretta Salazar, vs. Nhu Nguyen T. Nguyen, M.D., Hospitalist Group of El Paso, Hector A. Payan, M.D., Ric A. Bradford, D.O., and The Hospitals of Providence Memorial Campus in the 120th Judicial District Court, El Paso County, Texas. Attorney John Grost, of the Law Office of John Grost, El Paso, Texas.
13. Deposition in the case of Joe Martinez, Personal Representative of the Estate of Susie M. Martinez vs. St. Vincent Hospital, d/b/a Christus St. Vincent Regional Medical Center, and Suchita Kumar, M.D. in the 4th Judicial District Court, County of San Miguel, State of New Mexico. Attorney Rick Beitler of the Rodey Law Firm, Albuquerque, New Mexico.
14. Arbitration hearing in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Michael Cowen of Cowen Peacock, San Antonio, Texas.
15. Deposition in the case of Sam Cabrera vs. James Reilly Lee, MD, Comphealth, a foreign corporation, CHG Medical Staffing, INC, David Myugkee Moon, MD, Lifepoint Hospitals, INC., Lifepoint RC, INC., PHC-Las Cruces, INC., a domestic corporation, Memorial Medical Center, and Memorial Medical Cent Auxiliary in the Third Judicial District, County of Dona Ana, State of New Mexico. Attorney William Winter of FELKER, ISH RITCHIE & Greer, Santa Fe, New Mexico.
16. Gregory Lasher, as lineal heir to Liam N. McDougal vs. Reed G. Wipperworth in the United States District Court for the District of Colorado, Denver Colorado. Mr. Chad P. Hemmatt, of ANDERSON HEMMATT, Greenwood Village, Colorado.
17. Deposition in the case of Bryan Montoya, individually and as Personal Representative of the Estate of Sylvia Montoya vs. St. Vincent Hospital d/b/a St. Vincent Regional Medical Center, et al.; First Judicial District Court Case No.; D-101-CV-2016-02126. Ms. Jennifer Hall of Miller Stratvert, Albuquerque, New Mexico.
18. Deposition in the case of Amy Manning, as Personal Representative of the Estate of Dorothy Litchfield, et al. vs. Presbyterian Healthcare Services, Jill A. Solominski, M.D., et al.; First Judicial District Court, Santa Fe County; No. ; D-101-CV-2017-00891. Attorney Richard Barrera of Buckingham & Barrera, Midland, Texas.

**2019**

1. United States vs. SPC Daniel Bleyl, USA, General Court-martial, Joint Base Lewis McChord, Tacoma Washington.  Attorney Jocelyn Stewart, Tacoma, Washington
2. Deposition in the case of Monica Broadstreet vs. Jan Michael Nieves Delgado, et in the 327th District Court, El Paso, Texas.  Attorney Robert Edwards of Ray, McChristian, and Jeans, El Paso, Texas.
3. State of Arkansas vs. Zachary Lynn Atwood in the Faulkner County Circuit Court, Division 3, Conway, Arkansas.  Attorney Lynn Plemmons, Managing attorney of the Public Defender's Office for the 20th Judicial District, Conway, Arkansas.
4. Deposition in the case of Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado.  Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.
5. Martinez vs. Backer in the United States District Court, Denver, Colorado.  Attorney Katherine A. Ross, Assistant United States Attorney, U.S. Attorney's Office, Denver, Colorado.
6. Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado.  Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.
7. Deposition in the case of The Estate of Donnie Robertson vs. Corporal C.J. Dietz, et al., In the United States District Court of the Western District of Virginia, Harrisonburg Division.  Attorney Alexander Francuzenko of Cook, Craig & Francuzenko, Fairfax, Virginia.
8. Deposition in the case of Karen Carmichael, et al. vs The Greens of Bedford Apartments, et al. in the District Court in and for Tulsa County, State of Oklahoma.  Attorney Greg. A. Farrar of Farrar & Farrar, Tulsa, Oklahoma.
9. Deposition in the case of Stephanie Robles and David Jackson, et al., vs. SSC San Antonio North Operating Company, LLC, et al., in the 438th Judicial District of the District Court of Bexar County, Texas.  Attorney Bruce Anderson of Brin & Brin, San Antonio, Texas.
10. Sierra Rivera, et al. vs. Andrew Cater, et al. in the United States District Court, Eastern District of California.  Attorney William E. Camy of Porter Scott, Sacramento California.
11. Silvia Rodriguez, et al., vs. Michael Anthony Sanchez, Sierra Lynn Solorsano and Gillette Air Conditioning Company in the district Court, 150th Judicial District, Bexar County, Texas.  Attorney Sandra Laurel of Counsel to Carabin & Shaw, PC, San Antonio, Texas.
12. James Legros, Sr., and Jacqueline Milioto, as next friend to D.M., a Minor as Next of Kin to James Legros, Jr., vs. Board of County Commissioners of Choctaw County, et al., in the United States District Court for the Eastern District of Oklahoma.  Attorney Jessica Dark of Piere Couch Hendrickson Baysinger & Green, LLP, Oklahoma City, Oklahoma.
13. Deposition for an Arbitration Hearing in Dallas, Texas in the case of Estrada vs. Monterrey Mushrooms, Inc., Madisonville, Texas and Rhina Avela.  Attorney John Stevenson of Stevenson & Murray, Houston, Texas.

### 2020

1. Peter Balderas, et al. vs. United Phosphorus, LTD., et al. in the 108th District Court, Potter County Texas.  Attorney Robert L. Edwards of Ray Pena McChristian, El Paso County, TX.
2. Freddie Joey Taylor, Jr., Individually and as Representative Of The Estate Of Jordin Emily Taylor, Deceased, vs. Skyline Party Bus Co., LLC, Burleson SMTX Properties, LLC, Gabriela Wilson, Brandon Burleson, B & B Shuttles, LLC D/B/A B & B Transportation, VCD San Marcos River, LLC, Pi Kappa Alpha Fraternity, Pi Kappa Alpha Zeta Theta Chapter, and

Alpha Tau Omega Fraternity, in the District Court, 22ⁿᵈ District, Hays County, Texas. Attorney Jim Ewbank of Cokinos Young, Austin, Texas.

3. Richard Welch, individually; and as Surviving Spouse of Quata June Welch, Deceased, vs. Oklahoma Heart Hospital, LLC d/b/a Oklahoma Heart Hospital; Oklahoma Physicians, LLC; Oklahoma cardiovascular Associates, PC; John M. Williams MD; Bryan F. Perry, MD/ in the District Court of Oklahoma County, State of Oklahoma.  Attorney Jo Slama of Slama Legal Group, Oklahoma City, Oklahoma.

4. Elizabeth Chrisman et al vs. Board of County Commissioners of Oklahoma County, in its Official Capacity as Governing Body of the County of Oklahoma County, et al.; in the United States District Court for the Western District of Oklahoma.  Case No. CIV-17-1309-D. Attorney Randall J. Wood O Pierce Couch, Oklahoma City, Oklahoma.

5. Jana Reed, Individually and as Representative of the Estate of Christopher Reed and on Behalf of A. R. (A Minor) vs, Maersk Line LTD, USA and Maersk Line, Limited.  In the United States District Court for the Southern District of Texas Galveston Division; C.A. NO. 19-cv-00238 Admiralty.  Attorney John Stevenson of Stevenson & Murray Houston, Texas and Attorney Paxton N. Crew of the Crew Law Firm League City, Texas.

DEFT_COJ 002831