1060 Skylight View
Colorado Springs, CO
80906

November 1, 2020

Mr. Frank D. Calvert
CALVERT EAVES CLARKE & STELLY, L.L.P.
Beaumont Tower
2615 Calder Avenue, Suite 1070
Beaumont, Texas
77702

RE: Civil Action No. 1:20-cv-00124; Frances Earline Sims, Individually and as dependent administrator of, and on behalf of the Estate of Steven Mitchell Quall and Steven Mitchell Qualls' heir(s)-at-law v. City of Jasper, et al; In the United States District Court, Eastern District of Texas, Beaumont Division.

Dear Mr. Calvert:

1. As you have requested, I have reviewed the materials regarding Steven Mitchell Qualls. Below you will find my report.

2. I have reviewed the Plaintiff's Original Complaint and Plaintiff's Initial Disclosures; Defendants' Initial Disclosures with documents (1-1497); Defendant's Supplemental Disclosures with documents (2030-2070), Defendants" Second Supplemental Disclosures with documents (2071-2), Defendants' Third Supplemental Disclosures (2073-2259); Chief Hall's Reponses to Plaintiff's Discovery Requests (1533-1997), Toderick Griffin's Responses to Plaintiff's Discovery Requests, Joshua Hadnot's Responses to Plaintiff's Discovery Requests (1498-1531; 2006-2939), Sterling Linebaugh's Responses to Plaintiff's Discovery Requests, and Heather O'Dell's Responses to Plaintiff's Discovery Requests; Defendants, City of Jasper, Toderick Griffin's, Joshua Hadnot's, Sterling Linebaugh's, and Heather O'Dell's' Motions to Dismiss Plaintiff's Original Complaint, and the Order entered on Defendants' Motions to Dismiss Plaintiff's Original Complaint; and the videos.

3. I am a board certified forensic pathologist licensed to practice medicine in the States of Colorado and Texas. I have been licensed to practice in Texas since 1978 and Colorado since 1982. I obtained my B.S. in Zoology in 1971 from the University of Washington, Seattle, Washington. I attended the Universidad Autonoma de Guadalajara, Mexico graduating in 1974 and received an M.D. degree. I then performed an American Medical Association rotating internship at the Moncton Hospital, Moncton New Brunswick, Canada beginning July 1, 1974 and finishing on June 30, 1975. I performed a one year Servicio Social (Social Service) as required for licensure in the Republic of Mexico from August of 1975 to August of 1976 in Guadalajara, Mexico. I then entered active duty in early November 1976 with the United State Army as a Captain in the Medical Corps and

EXHIBIT A

was assigned as a Brigade Surgeon to the 7th Infantry Division and was stationed at Fort Ord, California. In July of 1978 I began a four year residency in Anatomical and Clinical Pathology at Fort Sam Houston, Texas at Brooke Army Medical Center completing my residency at the end of June 1982. I completed a forensic pathology fellowship at the Bexar County Forensic Science Center in San Antonio, Texas, beginning in August of 1984 and finishing in August 1985. I have been board certified in Anatomical and Clinical pathology since June of 1982 and Forensic Pathology since May of 1985. I retired as the El Paso County Coroner in January of 2019 but continue to do consulting. I was appointed Coroner of El Paso County, Colorado in January of 2006 and elected to that position in November of 2006, 2010, and 2014. I was an Associate Coroner Medical Examiner, El Paso County, Colorado from July, 2002 to January of 2006. I was the Deputy Chief Medical Examiner at the Bexar County Forensics Science Center in San Antonio, Texas from June of 1992 through December of 2002. I was a staff Medical Examiner at the Bexar County Forensic Science Center from August of 1984 to June of 1992. I was Chief of the Department of Pathology for the U.S. Army Hospital, Fort Carson, Colorado between March 1984 and September of 1984, and I was the Assistant Chief of the Department of Pathology between July 1982 and March of 1984.

4. I practiced emergency medicine on a part time basis between 1978 and 1991. My military service and awards, medical society and other professional society memberships and appointments, as well as my international professional activities are further outlined in my attached curriculum vitae. My fee schedule and a list of courtroom cases other than when called upon by the State of Colorado where I have either given a deposition or testified at trial is also attached to this letter.

5. Steven Mitchell Qualls was a 28 year old male with the past medical history of cardiomyopathy, methamphetamine addiction as well as other substances, anxiety, bipolar disorder suicidal ideation, suicide attempt in the past, and MRSA left finger neck in the past. He was taking Adderall (amphetamine) for his attention deficit disorder, Seroquel (quetiapine) which is typically used for psychosis, ephedrine a nasal decongestant, and Strattera (atomoxetine) which can be used for attention deficit order as well as depression.

6. On the afternoon of January 28, 2019 Mr. Qualls was transported to the Jasper Memorial Hospital arriving at 4:42 p.m. The EMS record noted that he had a long history or polysubstance abuse and was brought in for agitation. The triage note added that the history is unclear on this patient but someone at his house called their services secondary to patient's agitation. There is a long documented history of this patient's methamphetamine abuse. EMS had a strong suspicion of methamphetamine ingestion because of the smell on the patient. EMS noted that the patient is agitated and tachycardic in the 150's and complaining of chest and abdominal discomfort. His physical examination revealed a pulse of 122, and he was oriented only to self.

7. At 5:10 p.m. a behavioral assessment documented that Mr. Qualls was restless, agitated, anxious, suspicious, paranoid, rambling with inappropriate speech pattern, hyperactive

with tics and tremors, had disorganized thought processes, was delusional, had suicidal ideation, and was currently thinking about suicide.

8. Another nurse documented at 6:30 p.m. that Mr. Qualls was pacing and wandering around the ER and repeatedly on his phone and would not go back to his room. Jasper Police Department returned to the ER at 8:31 p.m. because he would not stay in his room and were informed that "he was talking to his reflection in the ER entrance glass doors and was getting agitated again." Officers arrived and spoke with Qualls who was still highly intoxicated on some drug but went back to his room and he was told to stay there until discharge. The family was contacted to come and pick Mr. Qualls up but apparently refused to pick him up.

9. He was treated with medications and fluids and felt to be stable for discharge by Dr. Rosanova at 9:30 p.m. with a documented pulse of 99, respirations of 18, and pulse oximetry of 100%. At 9:33 p.m. Mr. Qualls was presented his discharge papers but was unable to sign. The reason given by the nurse who signed the discharge papers was "altered mental status". He refused to leave the ER. Jasper Police Department personnel arrived as Mr. Qualls had been discharged but was not wanting to leave the property. Officers walked Qualls to a patrol unit and offered him a ride to anywhere he wanted to go. Qualls accepted that ride but once at the patrol unit would get in. The officers left him standing in the parking lot with his items and drove to the back of the parking lot to sit and observe what he would do. Qualls never left the sidewalk and attempted to reenter the ER by pressing on the key pad multiple times until Jasper Memorial Hospital called dispatch again. Dispatch state that the nurse wanted him off the property so he was arrested for Public Intoxication due to him being a danger to himself if he was allowed to leave.

10. On arrival to the Police Department Mr. Qualls was booked in. He was checked for any weapons or illegal narcotics. He was allowed to keep his clothes on but they were checked. Qualls went into the cell and sat at the door for the rest of the night. He was checked during the night.

11. During the day of the 29th of January Mr. Qualls remained kneeling by the door and at one point appeared to be having a conversation with someone who was not present (hallucinating). At 10:30 a.m. he was still not following commands or instructions and still speaking unintelligibly. At 12:10 p.m. Mr. Qualls was still unable to speak coherently and could not be taken before Judge Jackson for arraignment. Around 6:00 p.m. Sergeant Griffin, after returning to work took the evening meal to Mr. Qualls and observed him to be leaning over and "talking but not in sentences, just a lot of words." At 7:02 p.m. Mr. Qualls vomited and Sergeant Griffin returned to the police department and helped to clean the vomit off of Mr. Qualls as well as in the cell area. Sergeant Griffin Observed Qualls still moving around and talking about the commissary which is served at the county jail. At 10:31 p.m. Sergeant Griffin was notified that Mr. Qualls had vomited again and returns to the police department. The officers again cleaned Mr. Qualls up and also the cell area. Sergeant Qualls observed while mopping a small plastic baggie that was tied up which is normally used to hold illegal narcotics. He further noted

that the bottom of the bag was not there and there was nothing in the top area which was tied in a knot. He then opened the bag and did not see any narcotics or any substance and then discarded the bag in the trash.

12. On January 30th around 5:45 a.m. Mr. Qualls was checked for the last time by Sergeant Griffin who noted that he was still talking and moving at that time. At 7:15 a.m. Mr. Qualls was still speaking incoherently. By 7:38 a.m. he was no longer moving and was silent. Mr. Qualls was found deceased at 8:40 a.m.

13. An autopsy was performed on January 31st by Tommy J. Brown, D.O. in Beaumont, Texas at the Forensic Medical Management Services of Texas. Minimal external injuries were found but included a 1 inch bruise in the distal right upper arm, a 5/8 inch abrasion to the medical left knee, and bilateral 1 ½ inch bruises over both the left and right knees. The internal examination revealed no injuries. The heart weighed 390 gm and was normal by both gross and microscopic description. The right lung weighed 660 grams and the left lung weighed 600 grams and both lungs were congested. Microscopically the lungs had had red blood cells in the septa and in large coalescent alveolar spaces. The left kidney weighed 200 grams and the right kidney weighed 175 grams. Both had capsules that stripped with ease to reveal smooth brown surfaces. On sectioning, the cortices and medullae were well demarcated. The urinary bladder contained 50 milliliters of urine.

14. The toxicology performed was extensive and thorough. Cotinine was detected in heart blood but not quantitated. The ephedrine postmortem heart blood level was determined to be 8.1 ng/mL, the phenylpropanolamine heart blood level 17 ng/mL, the amphetamine heart blood level 1,200 ng/mL (1.2 mg/L) and the heart blood methamphetamine level 13,000 ng/mL (13.0 mg/L). The postmortem vitreous electrolytes revealed a creatinine level of 2.0 mg/dL, a sodium level of 155 mmol/L, a potassium level of 14 mmol/L, a chloride level of 133 mmol/L, glucose not detected, and urea nitrogen (BUN) level of 47 mg/dL.

15. Dr. Brown made the following pathologic diagnoses: 1. Amphetamine and methamphetamine toxicity; 2. Mild pulmonary edema; 3. Mild dehydration (creatinine 2.0 mg/dL, Urea nitrogen of 47 mg/dL; sodium 155 mmol/L); and 4. Decedent known drug abuser. He determined the cause of death to be "Complications of amphetamine and methamphetamine intoxication" and the manner of death "accident".

16. Methamphetamine is a potent stimulant with a prolonged half-life. Methamphetamine stimulates the sympathetic nervous system both in the central nervous system and peripherally causing high levels of dopamine and norepinephrine. This results in high blood pressure and increased heart rate (tachycardia). High levels such as in this case can cause euphoria, increased physical activity and wakefulness for long periods of time. Other common observable effects are confusion, agitation, anxiety, hallucinations, aggressive behavior and paranoia. Hyperthermia, secondary rhabdomyolysis, irregular heart rhythms, circulatory collapse, coma, convulsions and death can occur. Deaths have been reported to occur at levels as low as 0.09 mg/L. There is no antidote that can reverse

the effects of intoxication. The National Vital Statistics Reports reported that in 2016 that 6,762 individuals died of methamphetamine overdoses in the United States.
The most common sample to test for almost all drugs in a living person is a peripheral blood specimen. In performing postmortem drug testing the preferred sample for testing if available is peripheral blood and if not available then subclavian or heart blood. Peripheral blood more closely reflects the circulating level of a given drug at the time of death. However, almost all drugs including amphetamine and methamphetamine undergo postmortem redistribution where additional quantities of amphetamine and methamphetamine passively diffuse into the blood from stomach contents, internal organs such as the heart, liver, lungs and kidneys or other tissues. This must be taken into account and the postmortem redistribution studies can be utilized to compare with levels of a given drug level in a living patient.

17. It has been found that the heart/femoral blood methamphetamine concentration ratios average 1.61 (range of +/- .48). In this case of the heart blood methamphetamine level of 13.0 mg/L is in reality a peripheral blood level of 13.0 mg/L/1.13 to 2.1 postmortem redistribution factor which approximately equals a peripheral blood methamphetamine level in a living patient of around 6.19 mg/L to 11.5 mg/L. The metabolic half-life for methamphetamine is 6-15 hour or longer depending on the urine ph. The oral absorption rate is 2.6 to 3.6 hours depending on how the drug is taken i.e. oral, smoking, skin popping to intravenous.

18. The amphetamine heart/femoral blood concentration ratio is approximately 1.5 (range of +/- of 0.049). In this case the heart amphetamine level of 1.2 mg/L/1.46 to 1.56 postmortem redistribution factor which approximately equal a peripheral blood amphetamine level in a living person of around 0.77 mg/L to 0.82 mg/L. The metabolic half-life for amphetamine is 7-34 hours and 4 ½ half-life's are needed to eliminate 90-95% of the drug. The absorption rate for amphetamine is 2 to 3.5 hours in an oral form. Amphetamine is a metabolite of methamphetamine and the amphetamine level usually peaks around 12 hours post ingestion.

19. Since the 1960s vitreous fluid has been withdrawn postmortem from the globe of the eye between the lens and the retina. Vitreous fluid is the only postmortem fluid that can give you information regarding postmortem electrolytes such as sodium, chloride, potassium, as well as glucose, urea nitrogen (VUN), creatinine, alcohols, and a variety of other substances. In this case the sodium level is 155 mmol/L, potassium level is 14 mmol/L, the chloride level is 133 mmol/L, the glucose level is none detected, the creatinine is 2.0 mg/dL and the urea nitrogen (VUN) level is 47 mg/dL. In interpreting these levels one first has to make sure that the potassium level is < 15mmol/L which indicates that there has not been significant decomposition such that the levels of the other substances would be significantly altered. In this case the sodium level is 155 mmol/L which is 1 mmol/L below what is considered to be mild hypernatremic dehydration, and the chloride level is 133 mmol/L which is 3 mmol/L below what one could consider being mild hypernatremic dehydration. The creatinine level of 2.0 mg/dL and the urea nitrogen (VUN) of 47 mg/dL also indicate mild hypernatremic dehydration with any value of creatinine > than 1.3 mg/dL and a urea nitrogen (VUN) value > than 40 mg/dL. The

glucose in the vitreous fluid decreases after death and can certainly be undetected at 24 hours postmortem interval. A vitreous glucose > than 200 mg/dL is consistent with diabetes mellitus.

20. Based on reasonable medical probability I have the following medical opinions.

21. First, I agree with Dr. Tommy Brown that the cause of death was amphetamine and methamphetamine toxicity. The mechanism of death is due to a lethal cardiac arrhythmia. A methamphetamine level in the range of 6.19 to 11.5 mg/L coupled with an amphetamine level in the range of 0.77 mg/dL to 0.82 mg/dL can certainly cause death. Methamphetamine deaths can occur well below 1.0 mg/dL. However, as noted in Principles of Forensic Toxicology, Fourth addition edited by Barry Levine page 369 states that "since the degree of tolerance for any drug is impossible to determine at autopsy, attributing significance to isolated postmortem concentrations or attempting to back-calculate to a dose is unwise."

22. Second, when an individual takes a large amount of methamphetamine such as in this case, the stimulant effects may last from 6 to 24 hours or longer. When Mr. Qualls arrived at the police department he was noted to be intoxicated, and incoherent, with altered mental status similar to other occasions. When he was placed in the detox cell he was noted to have incoherent mumbling and kneeled by the door. On January 29th he stated that he was hearing voices of other people who were with him and having a conversation with them. Later that day it was noted by Sergeant Griffin that Mr. Qualls was "talking but not in sentences, just a lot of words". At this point he has been under observation for 24 plus hours and still appeared to be in a similar level case of intoxication that had been observed before.

23. Third, there are numerous variables including at least one baggie containing an unknown amount of methamphetamine that Mr. Qualls swallowed. There is no way to determine when this baggie was swallowed, when it began to leak methamphetamine, how soon it took for all of the methamphetamine to be dissolved in the stomach contents or absorbed into the blood stream, or if other baggies were still in the gastrointestinal tract and had transited thorough the stomach and were in the small or large bowel. In addition the number of methamphetamine doses and over what time frame also are important variables.

24. Fourth, rigor mortis cannot be used to determine the exact time of death. In fact in some individuals will never go into rigor mortis. Rigor mortis can be rarely present at death, be present within minutes or delayed for hours depending on the person or the circumstances of the death scene such as temperature, clothing, sunshine, wind, etc.

25. Fifth, there is no evidence at autopsy that Mr. Qualls had either hyperthermia or rhabdomyolysis. The body was noted to be cold when discovered. The postmortem vitreous analysis indicated borderline to mild hypernatremic dehydration. The bladder was noted to contain 50 cc of urine at autopsy and had the urine been discolored or in some way abnormal this would have been mentioned could have been tested for

myoglobin. Furthermore the kidneys at autopsy appeared normal and the creatinine and urea nitrogen (VUN) were consistent with mild dehydration.

26. Sixth, as to the clinical impression of cardiomyopathy, the heart weighed 390 grams which is near the upper limit of normal. The heart was described grossly as being normal in shape, form, normal valves, normal appearing myocardium and normal coronary arteries. Furthermore a microscopic slide was described as normal and without evidence of interstitial and/or perivascular fibrosis and there was no evidence of myocardial ischemia or necrosis.

27. Seventh, it is quite clear from the medical record that the medical staff in the ER wanted Mr. Qualls away from their facility. At the time of discharge, they noted that he was alert and oriented although a nurse noted that Mr. Qualls could not sign his discharge papers due to "altered mental status". He also was still hallucinating. It has been my anecdotal experience that law enforcement officers when told that an individual has been discharged from the ED they conclude that there is no medical condition that would prevent arrest and incarceration because the doctor and or nurse(s) told them so. Therefore everything should be fine.

28. As more information becomes available I reserve my right to alter my opinions and offer additional opinions.

Should you have any questions, please do not hesitate to contact me.

Sincerely,

*[signature]*

Robert C. Bux, MD

## CURRICULUM VITAE

Robert C. Bux, MD  
El Paso County Coroner's Office  
2741 East Las Vegas Street  
Colorado Springs, Colorado 80906

Born:   May 22, 1948  
Columbus, Kansas

January 9, 2019

### Education

College:
University of Washington, Seattle, WA  
Bachelor of Science in Zoology  
1966 - 1970

Medical School:
Universidad Autonoma de Guadalajara  
Guadalajara, Jalisco, Mexico  
1970 - 1974

Rotating Internship:
The Moncton Hospital, Moncton  
New Brunswick, Canada  
July 1974 - June 1975

Residency in Pathology:  
San Antonio, Texas
Brooke Army Medical Center

Anatomic and Clinical Pathology  
July 1978 – June 1982

Fellowship:
Bexar County Forensic Science Center  
San Antonio, Texas  
Forensic Pathology  
August 1984 – August 1985

### Board Certification

American Board of Pathology        ANATOMICAL PATHOLOGY, 1982

American Board of Pathology        CLINICAL PATHOLOGY, 1982

American Board of Pathology        FORENSIC PATHOLOGY, 1985

### Licensure and Certifications

Licensure
New Mexico - 1976 to 2013  
Texas - 1978 to present  
California – 1980 to 1987  
Colorado - 1982 to present

## Present Position

| | |
|---|---|
| Coroner/Medical Examiner | El Paso County Coroner's Office, Colorado Springs, CO. Appointed Coroner January, 2006. Elected Coroner to 4 year term on November 2, 2006, reelected to second 4 year Term November 6, 20010, and reelected to third term November 4, 2014. Sworn into office on January 9, 2007, January 11, 2011 and January 13, 2015. Retired at end of last Term on January 8, 2019 |

## Past Positions

| | |
|---|---|
| Associate Coroner/Medical Examiner El Paso County, Colorado | El Paso County Coroner's Office, Colorado Springs, Colorado. July 2002-January 2006 |
| Deputy Chief Medical Examiner | Bexar County Forensic Science Center, San Antonio, Texas June 1992 – December 2002 |
| Staff Medical Examiner | Bexar County Forensic Science Center San Antonio, TX August 1984 – May 1992 |
| Chief Dept. of Pathology Fort Carson, CO | U.S. Army Hospital March 1984 – September 1984 |
| Assistant Chief Dept. of Pathology | U.S. Army Hospital Fort Carson, CO July 1982 – March 1984 |
| Part-Time Emergency Room Physician EPA and TEXEM | October 1978-January 1991 |

## Military Service and Awards

Major, Medical Corps, United States Army Reserve, October 1971 – June 2002

Expert Field Medical Badge, 1977

United States Army Commendation Medal, Fort Ord, CA – 1978; Fort Carson, CO – 1984

Meritorious Service Medal, Fort Carson, CO – 1984

## Medical Society Memberships

Bexar County Medical Society, San Antonio, Texas, 1980 – 2002

Texas Medical Association, 1981 – 2002

American Medical Association, 1982 –2010

College of American Pathologists, 1980- 2000 (Fellow – 1983)

National Association of Medical Examiners – 1985 to present

American Academy of Forensic Sciences 1989 – present (Fellow – 1998)

### Other Professional Offices and Appointments

Board of Directors, San Antonio Chapter, National Sudden Infant Death Foundation 1987 – 1997, Advisor – 1997 through 2002

Instructor in Intubation of EMS Paramedics 1988 – 1998

Faculty, Southwest Symposium on Forensic Dentistry, 1986, 1988, 1990, 1992, 1994, 1996, 1998, 2000, 2002. University of Texas Health Science Center School of Dentistry, San Antonio, Texas

Member, Texas Multidisciplinary Task Force on Children's Justice 1993 – 1995

Member, Child Fatality Death Review for Bexar County – 1993 through December 2002

Member, Child Fatality Death Review for State of Texas – Original member 1994 and helped write Legislation in 1994 which was adopted by the State Legislature in 1995

Board of Editors, The American Journal of Forensic Medicine and Pathology – 1997 to present

Clinical Assistant Professor of Pathology UTHSC San Antonio, Texas – 1998 to 2005

Member, Board of Directors, Colorado Coroners Association- 2005 to 2010. President 2009-10

Member, Child Fatality Review Team for the 4th Judicial District, State of Colorado -2006 to 2008

Member, Medical Advisory Board, International Forensic Program, Physicians for Human Rights – 2006 to present

Colorado Bureau of Investigation Cold Case multidisciplinary team -2010 through 2018

Member El Paso County Board of Health-2011 to present

### International Professional Activities

United Nations International War Crimes Tribunal for the former Yugoslavia, Participated in exhumation of mass graves, September 21 – October 5, 1996 near Tuzla, Bosnia under the direction of Physicians for Human Rights

Guest Lecturer – Forensic Science Conference "Forensics for the 21st Century" Sponsored by Procuraduria General de Justicia del Districto Federal, Mexico, DF – August 4-7, 1997

Organization of American States Court of Inter-American Human Rights, San Jose, Costa Rica – Testified for the Inter-American Commission on Human Rights of the Organization of American States in the case of "Panel Blanca", the case of Elizabeth Panniagua, et al, vs. Guatemala

Participant in exhumation of Archbishop Juan Jose Gerardi, appointed Forensic Medical Expert for the Archdiocese of Guatemala in Guatemala City, Guatemala, September 16-18, 1998

Organization of American States Court of Inter-American Human Rights, San Jose Costa Rica – January 20-29, 1999 – Testified as Forensic Expert appointed by the Court of Inter-American Rights in the case of Villagran Morales, et al, vs. Guatemala (11-383)

Exhumation of Julian Cho, Mayan Cultural Leader in Punta Gorda, Belize for Physicians for Human Rights – January 31 – February 2, 1999

Exhumation and identification of 14 guerillas of the Tupac Amaru who were responsible for the takeover of the Japanese embassy in Lima Peru and sequestration of 72 VIP hostages on the 17th of December 1996, and subsequent hostage rescue and embassy liberation by special forces of the Peruvian army of April 22, 1997, all work occurred in 2001.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica) in the case of Guillermo Velez Mendoza who died in custody of the AFI (Agents of the Federal Investigation) in Mexico City. Reviewed entire case file participated in the exhumation and gave a legal declaration under oath, all work occurred in 2002.

Consultant for the Special Prosecutor for the prosecution of genocide and war crimes to the International War Crimes Court in Sierra Leone. Reviewed cases of genocide and provided written reports. All work occurred in 2004.

Consultant for the Attorney General of the Republic of Mexico (Procurduria General de la Republica} and Attorney General for the state of Chihuahua in the cases of "las mujeres desconocidas" in Ciudad Juarez and Chihuahua, Chihuahua. Toured forensic facilities, reviewed case files, examined skeletal remains and offered suggestions for future case work. All work occurred in January of 2005.

PHR consultant in the case of Brad Will, American photojournalist killed in Oaxaca, Mexico in 2006. Analyzed all forensic and investigational file at the Procurduria General de la Republica forensic laboratory and coauthored report. Work completed in 2008.

Consultant for PHR in the review of the Somali Pirates killed in a life boat by US Navy Seals on the USS Bainbridge from foiled attempt to board the Maersk Alabama and the return to safety of the kidnapped Captain of the Maersk Alabama, Richard Phillips.

Consultant for EQUITAS human rights organization in Bogota, Columbia in the deaths of Fair Leonardo Porras Bernal and Elkin Gustavo Verano with travel to Bogota, Columbia in September 2010 with exhumations and performed second autopsies, written reports and courtroom testimony in these cases also known as "casos positivos falsos.

PHR consultant and written report in the death in custody of Sergei Magintsky, Russian Hermitage Fund lawyer incarcerated in a Moscow, Russia.

Publications

1. DiMaio, V.J.M., Dana, S.E. and Bux, R.C. "Deaths Caused by Restraint Vest", JAMA 255:905, 1986.

2. Bick, D., Curry, C.J., McGill, J.R., Schordent, D.F., Bux, R.C. and Moore, C., "Male Infant with Ichthyosis, Kallman Syndrome Chondrodysplasia Punctata, and an X, Chromosome Deletion" AM.J.Med.Genet 33(1): 100-7, May 1989.

3. DiMaio, V.J.M., Dana, S.E., and Bux, R.C., "Sudden Cardiac Death" (Letter), NEJM 322:271. January 1990.

4. Taylor, R., Bux, R.C., and Kirk, D., Forensic Pathology in Homicide Cases, 40 AM Jur Trials, 501-627, 1990.

5. Taylor, R., Bux, R.C., and Kirk, D., Self Defense in Homicide Cases, 42 Am Jur Trials, 151-312, 1991.

6. Bux, R.C., and McDowell, J., "Death Due To Attack From Chow Dog", AM J. of Forensic Med and Path, 13(4): 305-8, December 1992.

7. Rulon, J., Cho, C.G., Guerra, L., Bux, R.C., and Gulley, M., "Activated Protein C Resistance Is Uncommon in Sudden Death Due to Pulmonary Embolism", Journal of Forensic Sciences 44(6): 1111-1113, November 1999.

8. Kohlmeir, R., Cho, C.G., Bux, R.C., Guerra, L., Rulon, J., Selby, D.M., and Gulley, M., "Prothrombin Gene Mutation Uncommon in Pulmonary Embolism", Southern Medical Journal 93(11) 1073-7, November 2000.

## COURT APPEARANCES OF
## ROBERT C. BUX, MD

### 2016

1. John Michael Beames vs. Ron Davis, Warden of California State Prison, San Quentin in the United States District Court, Eastern District, Fresno, California. Assistant Federal Public Defender, Sacramento, California.
2. United States vs. Eric Harvey Littlecalf in the United States District Court, Billings, Montana. Assistant Federal Defender David Merchant, Billings Branch, Billings, Montana.
3. Deposition in the case of Sylvia Rodriguez, et al vs. Pioneer Resources Company, et al. in the District Court, 191st, Judicial District Court, Dallas County, Texas. Attorney Michael McGurk of Kittleman Thomas, McAllen, Texas.
4. Deposition in the case of Jason E. Harris, et al vs. Nathan Olsen, MD, in Arapahoe County District Court, Centennial, Colorado. Attorney Brian McConaty of Robinson, Waters & O'Dorsio, PC, Denver, Colorado.
5. Deposition in the case of Debby Davis, et al vs. Bunzl Distribution Southwest, LP, et al, in the 79th District Court, Jim Wells County, Texas. Attorney Richard Underwood of Farris Bobango Branan, PLC, Memphis Tennessee.
6. Deposition in the case of Babette Clingan vs. AP WP Management, L.P., and Winthrop Management, L.P. in the District Court, Bexar County, Texas. Attorney Rick Espey of Espey & Associates, San Antonio, Texas.
7. Deposition in the case of Andre Guardado, et al vs. Edmond Joe Palmore, et al in the United States District Court for the Northern District of Texas, Dallas Division, Dallas, Texas. Mr. John T. Kirtley, III of Ferrer, Poirot, & Wansborough, Dallas, Texas.
8. Sandoval vs. Gurley, et. al. in the 11th Judicial District Court, Division 7, McKinley County, Gallup, New Mexico. Attorney Mark J. Riley of Riley, Shane & Keller, Albuquerque, New Mexico.
9. Deposition in the case of Rachel Chalker, et al vs. VHS San Antonio Partners BHS SA Thousand Oaks, LLC d/b/a Baptist Emergency Hospital Thousand Oaks, Michael E. Lozano, MD, 24 Hour Physicians, INC., Mathew Patlovany, MD, and Leading Edge Emergency Physicians, P.L.L.C. the 285th Judicial District, Bexar County, Texas. Attorney Robert R. Biechlin, Jr., Thornton of, Biechlin, Reynolds & Guerra, LC, San Antonio, Texas.

### 2017

1. Deposition in the case of Courtney Cantwell and James Cantwell vs. Seth Brener, MD, in the District Court, Travis County, Texas. Attorney Terri S. Harris of Steed Dunnill Reynolds Murphy Lamberth, LLP, Austin, Texas.
2. Deposition in the case of Kim Hildebrand, et al. vs. Gary W. Wells, DO, in the District Court of Cleveland County, Oklahoma. Attorney Jo Slama of the Jo Slama Legal Group, Oklahoma City, Oklahoma.
3. Deposition in the case of Zarina Richardson, et al vs. Laredo Medical Center and Fermin Romero Arreola, MD in the 406th District Court, Webb County, Texas. Attorney Michael Wallis of Thornton, Biechlin, Reynolds & Guerra, San Antonio, Texas.

4. Deposition in the case of Kevin Webb, et. al, vs. Brad Livingston, et al. in the United States District Court, Southern District of Texas, Houston Division. Assistant Attorney General Matthew Greer of the State of Texas Attorney General's Office, Austin, Texas.
5. Deposition in the case of Skylor Ashey and Lance Ashley vs. United States of America ex rel. Chickasaw Nation Medical Center in the United States District Court, Eastern District of Oklahoma. Attorney Ms. Jo L. Slama of Slama Legal Group, Oklahoma City, Oklahoma.
6. Deposition in the case of Mariela Pena vs. Jose Manuel Balderas-Ramirez, Intervenor, vs. Solana Ridge Apartments; Solana, LLC, Migneault Properties, LP and Atmos Energy Corporation in the District Court, Dallas County, Texas. Attorney Mark Carrigan of Carrigan, McCloskey & Roberson, Houston, Texas.
7. Deposition in the case of Stephany Borges, et al vs. City of Eureka, et al in the United States District Court, Northern District of California. Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.
8. Stephany Borges, et al vs. City of Eureka, et al. in the United States District Court, Northern District of California. Attorney Nancy K. Delaney of Brisso, Delaney & Vrieze, Eureka, California.
9. Deposition in the case of Kim Grizzle, et al. vs. John Christian, As Sheriff of Pontotoc County, et al., in The United States District Court for the Eastern District of Oklahoma.
10. Deposition in the case of Holly and David Lynch vs. Muskogee County in The United States District Court for the Eastern District of Oklahoma. Attorney Andy A. Artus of Collins, Zorn, and Wagner, Oklahoma City, Oklahoma.
11. State of South Dakota vs. Michael Swan in the district court in Milltown, South Dakota. Attorney Scott R. Bratland of Bratland Law, Watertown, South Dakota.
12. Darrell Wayne Frederick vs. OCCA Case No. PCD-2015-47 in the District Court of Cleveland County, Oklahoma. Attorney Kristi Christopher of the Capital Post-Conviction Division, Oklahoma Indigent Defense System, Norman, Oklahoma.
13. State of Oklahoma vs. Melissa Clark in the District Court of Cleveland County, Oklahoma. Attorney Keith Nedwick of the Law Offices of Keith Nedwick, Norman, Oklahoma.
14. State of Oklahoma vs. Christopher Whinery in the District Court of Creek County, Oklahoma. Ms. Velia Lopez of the Sapulpa office of the Oklahoma Indigent Defense System, Sapulpa, Oklahoma.

## 2018

1. Deposition in the case of James Neuroth vs. Mendocino County, et al. in the United States District Court, Northern District of California. Attorney Jerome Varanini, Sacramento, California.
2. Deposition in the case of Frenchell Johnson, et al. vs. Mohammed Khan, MD, et al. in the 129th Judicial District Court, Harris County, Texas. Attorney Tim Riley of the Riley Law firm, Houston, Texas.
3. United States vs. FC3 Zaccariah McCulloch, USN General Court-martial, Naval Base Kitsap-Bremerton, Washington. Defense Counsel Jenifer Luce, LCDR, JAGC, USN, Defense Services Office West, United States Naval Base, San Diego, California.
4. Deposition in the case of Lisa Einess vs. Thomas Spera, MD, et al. in the Third Judicial District Court, Dona Ana County, New Mexico. Attorney Larry Hicks of Hicks & Llamas, El Paso, Texas.
5 Deposition in the case of Jane Bailiff Mullen, et al. v. Jason A. Yoho, MD et al. in the District Court, Comal County, Texas. Attorney Richard J. Kasson of Gonzalez, Chiscano, Angulo & Kasson, San Antonio, Texas.

6. Deposition in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Mary Wilson of Cowen Peacock, San Antonio, Texas.
7. Deposition in the case of Amy Manning, as Personal Representative of the Estate of Scotty Caddell et al. vs. Air Methods Corporation d/b/a Native Air et al. in the State of New Mexico, County of Santa Fe, First Judicial District Court. Attorney B. Kent Buckingham of Buckingham & Barrera, Midland, Texas.
8. USA vs. Ricky Allen Fackrell and Erik Rekonen in the United States District Court, Eastern District of Texas, Beaumont Division. Attorney Gerald Bourque, The Woodlands, Texas.
9. Deposition in the case of Joseph Segura, vs. Presbyterian Healthcare Services in the Second Judicial District Court, county of Bernalillo, State of New Mexico. Attorney Charles K. Purcell of Rodey Law Firm, Albuquerque, New Mexico.
10. Ex Parte Andrew Wayne Roark in the Criminal District Court, Number Five, Dallas County, Texas. Attorney Gary A Udashen of Udashen Anton, Dallas, Texas.
11. Deposition in the case of Linda Morgan vs. Basel S. Hassoun, M.D.; Basel S. Hassoun, INC.; Lenny D. Stubbs, M.D.; Oklahoma Cardiovascular Associates, PC; and Mercy Hospital of Oklahoma City, INC., Defendants; Mercy Hospital of Oklahoma City, INC., Third-Party Plaintiff vs. Lenny D. Stubbs, M.D., Third-Party Defendant. Attorney Ann Brooks of Brooks Law Firm Oklahoma City, Oklahoma.
12. Deposition in the case of Loretta Salazar, vs. Nhu Nguyen T. Nguyen, M.D., Hospitalist Group of El Paso, Hector A. Payan, M.D., Ric A. Bradford, D.O., and The Hospitals of Providence Memorial Campus in the 120th Judicial District Court, El Paso County, Texas. Attorney John Grost, of the Law Office of John Grost, El Paso, Texas.
13. Deposition in the case of Joe Martinez, Personal Representative of the Estate of Susie M. Martinez vs. St. Vincent Hospital, d/b/a Christus St. Vincent Regional Medical Center, and Suchita Kumar, M.D. in the 4th Judicial District Court, County of San Miguel, State of New Mexico. Attorney Rick Beitler of the Rodey Law Firm, Albuquerque, New Mexico.
14. Arbitration hearing in the America Arbitration Matter Case No. 01-17-0001-052 of FAMSA, INC., Claimant, vs. Jose Moreno, Respondent. Attorney Michael Cowen of Cowen Peacock, San Antonio, Texas.
15. Deposition in the case of Sam Cabrera vs. James Reilly Lee, MD, Comphealth, a foreign corporation, CHG Medical Staffing, INC, David Myugkee Moon, MD, Lifepoint Hospitals, INC., Lifepoint RC, INC., PHC-Las Cruces, INC., a domestic corporation, Memorial Medical Center, and Memorial Medical Cent Auxiliary in the Third Judicial District, County of Dona Ana, State of New Mexico. Attorney William Winter of FELKER, ISH RITCHIE & Greer, Santa Fe, New Mexico.
16. Gregory Lasher, as lineal heir to Liam N. McDougal vs. Reed G. Wipperworth in the United States District Court for the District of Colorado, Denver Colorado. Mr. Chad P. Hemmatt, of ANDERSON HEMMATT, Greenwood Village, Colorado.
17. Deposition in the case of Bryan Montoya, individually and as Personal Representative of the Estate of Sylvia Montoya vs. St. Vincent Hospital d/b/a St. Vincent Regional Medical Center, et al.; First Judicial District Court Case No.; D-101-CV-2016-02126. Ms. Jennifer Hall of Miller Stratvert, Albuquerque, New Mexico.
18. Deposition in the case of Amy Manning, as Personal Representative of the Estate of Dorothy Litchfield, et al. vs. Presbyterian Healthcare Services, Jill A. Solominski, M.D., et al.; First Judicial District Court, Santa Fe County; No. ; D-101-CV-2017-00891. Attorney Richard Barrera of Buckingham & Barrera, Midland, Texas.

<u>2019</u>

1. United States vs. SPC Daniel Bleyl, USA, General Court-martial, Joint Base Lewis McChord, Tacoma Washington. Attorney Jocelyn Stewart, Tacoma, Washington
2. Deposition in the case of Monica Broadstreet vs. Jan Michael Nieves Delgado, et in the 327th District Court, El Paso, Texas. Attorney Robert Edwards of Ray, McChristian, and Jeans, El Paso, Texas.
3. State of Arkansas vs. Zachary Lynn Atwood in the Faulkner County Circuit Court, Division 3, Conway, Arkansas. Attorney Lynn Plemmons, Managing attorney of the Public Defender's Office for the 20th Judicial District, Conway, Arkansas.
4. Deposition in the case of Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado. Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.
5. Martinez vs. Backer in the United States District Court, Denver, Colorado. Attorney Katherine A. Ross, Assistant United States Attorney, U.S. Attorney's Office, Denver, Colorado.
6. Mark Beard as Personal Representative of the Estate of Rachael Beard; and the Estate of Rachel Beard vs. Kaiser Foundation Health Plan of Colorado; Colorado Permanente Medical Group, P.C.; and Brandon Wesley Wright, M.D. in the District Court of Boulder County, Colorado. Attorney Deann S. Zenisek of Conklin Cordone Rutberg, P.C., Denver, Colorado.
7. Deposition in the case of The Estate of Donnie Robertson vs. Corporal C.J. Dietz, et al., In the United States District Court of the Western District of Virginia, Harrisonburg Division. Attorney Alexander Francuzenko of Cook, Craig & Francuzenko, Fairfax, Virginia.
8. Deposition in the case of Karen Carmichael, et al. vs The Greens of Bedford Apartments, et al. in the District Court in and for Tulsa County, State of Oklahoma. Attorney Greg. A. Farrar of Farrar & Farrar, Tulsa, Oklahoma.
9. Deposition in the case of Stephanie Robles and David Jackson, et al., vs. SSC San Antonio North Operating Company, LLC, et al., in the 438th Judicial District of the District Court of Bexar County, Texas. Attorney Bruce Anderson of Brin & Brin, San Antonio, Texas.
10. Sierra Rivera, et al. vs. Andrew Cater, et al. in the United States District Court, Eastern District of California. Attorney William E. Camy of Porter Scott, Sacramento California.
11. Silvia Rodriguez, et al., vs. Michael Anthony Sanchez, Sierra Lynn Solorsano and Gillette Air Conditioning Company in the district Court, 150th Judicial District, Bexar County, Texas. Attorney Sandra Laurel of Counsel to Carabin & Shaw, PC, San Antonio, Texas.
12. James Legros, Sr., and Jacqueline Milioto, as next friend to D.M., a Minor as Next of Kin to James Legros, Jr., vs. Board of County Commissioners of Choctaw County, et al., in the United States District Court for the Eastern District of Oklahoma. Attorney Jessica Dark of Piere Couch Hendrickson Baysinger & Green, LLP, Oklahoma City, Oklahoma.
13. Deposition for an Arbitration Hearing in Dallas, Texas in the case of Estrada vs. Monterrey Mushrooms, Inc., Madisonville, Texas and Rhina Avela. Attorney John Stevenson of Stevenson & Murray, Houston, Texas.

## 2020

1. Peter Balderas, et al. vs. United Phosphorus, LTD., et al. in the 108th District Court, Potter County Texas. Attorney Robert L. Edwards of Ray Pena McChristian, El Paso County, TX.
2. Freddie Joey Taylor, Jr., Individually and as Representative Of The Estate Of Jordin Emily Taylor, Deceased, vs. Skyline Party Bus Co., LLC, Burleson SMTX Properties, LLC, Gabriela Wilson, Brandon Burleson, B & B Shuttles, LLC D/B/A B & B Transportation, VCD San Marcos River, LLC, Pi Kappa Alpha Fraternity, Pi Kappa Alpha Zeta Theta Chapter, and

    Alpha Tau Omega Fraternity, in the District Court, 22nd District, Hays County, Texas. Attorney Jim Ewbank of Cokinos Young, Austin, Texas.

3. Richard Welch, individually; and as Surviving Spouse of Quata June Welch, Deceased, vs. Oklahoma Heart Hospital, LLC d/b/a Oklahoma Heart Hospital; Oklahoma Physicians, LLC; Oklahoma cardiovascular Associates, PC; John M. Williams MD; Bryan F. Perry, MD/ in the District Court of Oklahoma County, State of Oklahoma. Attorney Jo Slama of Slama Legal Group, Oklahoma City, Oklahoma.
4. Elizabeth Chrisman et al vs. Board of County Commissioners of Oklahoma County, in its Official Capacity as Governing Body of the County of Oklahoma County, et al.; in the United States District Court for the Western District of Oklahoma. Case No. CIV-17-1309-D. Attorney Randall J. Wood O Pierce Couch, Oklahoma City, Oklahoma.
5. Jana Reed, Individually and as Representative of the Estate of Christopher Reed and on Behalf of A. R. (A Minor) vs, Maersk Line LTD, USA and Maersk Line, Limited. In the United States District Court for the Southern District of Texas Galveston Division; C.A. NO. 19-cv-00238 Admiralty. Attorney John Stevenson of Stevenson & Murray Houston, Texas and Attorney Paxton N. Crew of the Crew Law Firm League City, Texas.