UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| FRANCES EARLINE SIMS, individually and as dependent administrator of, and on behalf of, the ESTATE OF STEVEN MITCHELL QUALLS and STEVEN MITCHELL QUALLS' heir(s)-at-law,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF JASPER, TEXAS; TODERICK D. GRIFFIN; STERLING RAMON LINEBAUGH; HEATHER RENE O'DELL, and JOSHUA L. HADNOT,<br><br>    Defendants. | §§§§§§§§§§§§§§§§§ CIV. ACT. NO. 1:20-CV-00124-MJT<br><br>JURY DEMANDED |

## **PLAINTIFF'S MOTION FOR NEW TRIAL**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff files this Motion for New Trial under Federal Rule 59, seeking to set aside and vacate the Jury Verdict (Doc. 234) and the Court's Final Judgment (Doc. 243) rendered March 20, 2023. The Court should grant a new trial because in denying Plaintiff's motion to bifurcate trial between liability and damages (Doc. 183), the Court made an erroneous evidentiary decision that substantially prejudiced Plaintiff and resulted in an unfair trial. The Court should also grant a new trial based on Defendants' improper remarks to the jury, taken in the context of the entire record. Moreover, the jury verdict is against the great weight of the evidence.[1]

---

[1] Although Plaintiffs do not believe this motion is necessary to preserve error for appeal, Plaintiffs also file this motion to ensure that the Court is fully aware of some issues Plaintiffs may assert in an appeal, including but not limited to (1) asking the court of appeals to reconsider its holding that *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), does not apply to failure-to-protect claims, *see Alderson v. Concordia Parish Correctional Facility*, 848 F.3d 415, 420 (5th Cir. 2017), and (2) challenging Fifth Circuit authority assigning the burden to negate qualified immunity to plaintiffs, *see Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

I. **Introduction**

In this case, *Defendants put Plaintiff on trial.* Plaintiff's son, Steven Mitchell Qualls (Mitchell), unfortunately suffered from addiction, which put Plaintiff in the difficult position of having to step away from his life. Every parent—and really any human—can imagine how heartbreaking that would be. But after the officers in this case took Mitchell to jail and decided to let him "sleep it off," they and only they had control over Mitchell's wellbeing. They and only they chose not to call EMS as Mitchell lay writhing in agony. Predictably, Defendants moved the focus of the trial away from their actions (relevant to liability), to focus on Plaintiff's relationship with her son (relevant only to damages). Defendants also shifted the focus of the trial to other prejudicial issues, such as Mitchell's addiction to methamphetamines. Accordingly, the denial of Plaintiff's motion to bifurcate resulted in substantial prejudice to Plaintiff and ultimately an unfair trial. Along these lines, considering the record, the evidence, Defendants' trial tactics and unfair arguments, and the verdict, the jury verdict is inconsistent with substantial justice. For all these reasons, the judgment, moreover, is against the great weight of the evidence.

II. **Standards**

Under Rule 59, the Court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although the rule does not specify what grounds are necessary to support a court's decision to grant a new trial, the Fifth Circuit listed the following examples: "if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). "While the court is to respect the jury's collective wisdom and must not simply substitute its opinion for the jury's, '[i]f the trial judge is

not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial.'" *Id*. (quoting C. Wright, Federal Courts 633 (4th ed. 1983)).

### III. Unbifurcated Trial Substantially Prejudiced Plaintiff and Was Unfair

When Plaintiff filed her motion to bifurcate the trial between liability and damages, she presaged that Defendants sought to "introduce a host of evidence concerning allegations of Steven Mitchell Qualls's prior bad acts and/or encounters with the law, his criminal history, drug evidence, his relationships with Plaintiff and with his son, and other highly prejudicial testimony" that was immaterial and unduly prejudicial to Plaintiff in a liability determination. (Doc. 183 at 4) That is exactly what happened. The jury heard evidence of both liability and damages concomitantly, which now with the further benefit of hindsight, illuminate that the unbifurcated trial substantially prejudiced Plaintiff and created an unfair trial.[2]

Not only did Defendants introduce highly prejudicial and inflammatory evidence that simply was not relevant to the jury's liability determination, but Plaintiff also was compelled to introduce some of that evidence herself to lessen the blow of evidence later introduced by Defendants. That evidence included, among other things, Mitchell's prior criminal history and addiction, poor relationship with his mother and the mother of his child, and neglectful relationship with his child. Plaintiff's only damages expert was also vigorously cross-examined for the better part of a day about issues that were not relevant to liability.

Plaintiff moved to bifurcate the trial between liability and damages on the grounds that the probative value of much of the evidence relevant to Plaintiff's damages claims was substantially outweighed by the danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R.

---

[2] The motion to bifurcate and Plaintiff's motions in limine, as pretrial motions, preserved error on Plaintiff's objection to the admission of the evidence. *See* Fed. R. Evid. 103(a); *see also Mathis v. Exxon Corp.*, 302 F.3d 448, 459 (5th Cir. 2002) (regarding pretrial challenge to admission of expert testimony, "[t]he pre-trial objection is sufficient to preserve the error for appellate review") (citing Fed. R. Evid. 103(a)).

Evid. 403 (Doc. 183 at 1, 7). Plaintiff also moved for bifurcation on the basis that evidence of Mitchell's prior bad acts was not admissible to prove his character. Fed. R. Evid. 404(b) (Doc. 183 at 2). Plaintiff notified the Court, "Defendants will, if permitted, transform this case from a trial about the reasonableness and impact of County's policies, practices, and/or customs and Individual Defendants' conduct into a trial about Steven Mitchell Qualls's alleged criminal misbehavior and poor choices." (Doc. 183 at 7) Plaintiff's prediction proved true: commingling damages evidence with liability evidence substantially prejudiced Plaintiff and resulted in an unfair trial.

"[P]rejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)."[3] *Mack v. Specialized Loan Servicing, LLC*, No. 420CV00766SDJCAN, 2022 WL 1552142, at *2 (E.D. Tex. Apr. 26, 2022) (Nowak, M.J.) (quoting *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La. 1992)); *see also Wagoneka v. KT&G USA Corp.*, No. 4:18-CV-859-SDJ, 2020 WL 6063096, at *2 (E.D. Tex. Oct. 14, 2020) (Jordan, J.) ("One method available to trial courts to mitigate these prejudice concerns is to bifurcate the liability and damages stages of trial."); *Thomas v. Norit Americas, Inc.*, No. 2:05-CV-71-DF, 2007 WL 9728703, at *2 (E.D. Tex. Oct. 18, 2007) (Folsom, J.) ("Plaintiff has shown that the jury may have difficulty separating evidence relating to the damages issue from evidence relevant to the liability issue. Therefore, bifurcation is necessary to avoid prejudice."). This Court has also recognized that bifurcation is appropriate when necessary "to avoid prejudice."[4] *Matter of Savage Inland Marine, LLC*, No. 1:19-CV-00536, 2020 WL 10355875, at

---

[3] Rule 42(b) governs bifurcation and provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b).

[4] Bifurcating between liability and damages under Federal Rule of Evidence 42 is a "common practice." *Mack*, 2022 WL 1552142, at *2 (citing *Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 424 (5th Cir. 1990) ("[S]eparation of issues of liability from those relating to damages is an obvious use for Rule 42(b)."), *EEOC v. Bass Pro Outdoor World, LLC*, 826 F.3d 791, 800 (5th Cir. 2016) ("Bifurcation of liability and damage is a *common tool* deployed by federal district courts in a wide range of civil cases.") (emphasis added), and *Wagoneka*, 2020 WL

*3 (E.D. Tex. Dec. 16, 2020) (Truncale, J.). Not only was Plaintiff substantially prejudiced, but other negative effects of not bifurcating the trial also occurred here, including jury confusion and focusing the trial on damages, not liability. *See Thomas*, 2007 WL 9728703, at *2 ("[S]eparation of the liability and damages case may prevent jury confusion, focus the case, and shorten trial time."). If the jury had found no liability against Defendants despite bifurcation, it also would have shortened the trial. *Id*. Bifurcation, moreover, would have "facilitate[d] expeditious review by the Fifth Circuit, in the case of appeal." *Id*.

Having observed the entire trial, the Court is in the best position to estimate the prejudicial impact of the evidence admitted at trial, along with the other negative effects of not bifurcating the trial. *See Smith*, 773 F.2d at 612-13 ("Rule 59 . . . confirms the trial court's historic power to grant a new trial *based on its appraisal* of the fairness of the trial and the reliability of the jury's verdict.") (emphasis added). The evidence admitted at trial relating to Plaintiff's damages claims was highly prejudicial, inflammatory, and unnecessary to the jury's liability determination and resulted in an unfair trial.

Defendants focused their case on Plaintiff and Mitchell's strained relationship, which had nothing to do with Defendants' potential liability for withholding medical care from Mitchell. Defendants argued that because Plaintiff did not take Mitchell home from the hospital, officers were forced to take Mitchell to jail because no one else would take him. Regardless of how or why Mitchell arrived at the jail, Defendants were charged with Mitchell's care once he was in custody. But at trial, Defendants relied on highly prejudicial damages evidence and made even more prejudicial and inflammatory arguments that had no bearing on Defendants' constitutional obligations to Mitchell.

---

6063096, at *2 ("To avoid prejudice, courts *will often* bifurcate claims so that the presentation of punitive-damages evidence occurs only after the jury has determined liability.") (emphasis added)).

Defendants told the jury that the following took place:

- Mitchell had nowhere else to go—no one would take him in, so officers had to take him to jail (Jury Tr. Vol. 1 at 207-08; Jury Tr. Vol. 9 at 122, 137 [attached]);

- Three times, Plaintiff refused to pick Mitchell up from the hospital (Jury Tr. Vol. 1 at 207, 212, 229);

- Plaintiff said that "the family is done with him" (*id*. at 212, 229) and "he's not my problem" (Jury Tr. Vol. 9 at 125, 136);

- "[T]hey have no choice. They don't know where else to take Mr. Qualls. They know he has to go somewhere so he goes to the lockup" (Jury Tr. Vol. 1 at 215);

- "Everything you see on there demonstrates an effort to care *when no one else would*" (Jury Tr. Vol. 9 at 138 (emphasis added));

- "The ER says this man is highly intoxicated but needs to go somewhere else to detox. Well, family, not my problem. Nowhere else. So as Sergeant Griffin said, unfortunately we have to arrest him so we'll have a place for him" (*id*. at 139);

- "[J]ail was [Mitchell's] home away from home" (Jury Tr. Vol. 1 at 229), and Mitchell "had spent a significant part of his life in one lockup or another" (*id*. at 231);

- Plaintiff had a trespass warrant against Mitchell, would not let him come onto her property, and had him arrested twelve times (*id*. at 213, 229-30);

- "And yet here she'll be asking for a lot of money" (*id*. at 213);

- "There is nothing in this lawsuit except a request for money. And it's going to be a lot of money. It's going to be so much money that Mr. Malone wouldn't tell you

> right now and he might not even tell you later. Because if he told you how much money Ms. Sims wants, it might make your head spin around" (*id*. at 227);

- Mitchell had no relationship with his son and "never came for birthday parties, not one Christmas, never for Thanksgiving" (*id*. at 229-30), so his son did not have "a real measurable loss of companionship of a man who absented himself from his son's life" (Jury Tr. Vol. 9 at 154-55);

- Plaintiff's damages expert only appeared "for trial for money" and is "a mill for Mr. Malone and others who want to claim mental anguish and post-traumatic stress disorder" (Jury Tr. Vol. 1 at 230; Jury Tr. Vol. 9 at 135-36); and

- "These are just theories that over 13 months these lawyers worked up in order to file a lawsuit, as Mr. Malone said, for six figures, seven figures, or eight figures" (Jury Tr. Vol. 9 at 143).

This list is not comprehensive and is not meant to be. But it highlights the extremely prejudicial nature of the damages evidence and inflammatory arguments that Defendants emphasized in the unbifurcated trial. Plaintiff ordered but does not yet have the entire trial transcript. Plaintiff therefore cites only Defendants' opening statement and closing argument, which alone show the extent to which Defendants highlighted damages evidence that substantially prejudiced Plaintiff and resulted in an unfair trial by moving the jury's focus away from liability. Having observed the entire trial, the Court can assess the prejudicial impact of the damages evidence admitted during the unbifurcated trial even without the benefit of the entire trial transcript. *See Smith*, 773 F.2d at 612-13.

As predicted, "Defendants' case [did not] focus on the relevant facts concerning . . . liability but instead . . . create[d] a referendum on [Mitchell's] deservedness to have his rights ignored and

to die in agony in a Texas city jail." (Doc. 183 at 8) Defendants' focus on damages substantially prejudiced Plaintiff and resulted in an unfair trial. Much like in the *Diaz* case cited in Plaintiff's motion to bifurcate, the evidence of Mitchell's addiction, strained relationship with his family, and the way he got to the City jail "has marginal, if any, probative value as to damages, and none as to liability," but Defendants used that evidence to deflect the jury's attention away from their own liability. *See, e.g., Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 603 (9th Cir. 2016).

### IV. Defendants' Remarks, in Light of the Entire Record, Constituted Prejudicial Error that Was Inconsistent with Substantial Justice

Defendants' opening statement and closing argument, when viewed through the lens of the entire trial, including the evidence, the tactics of defense counsel, unfair arguments, and the jury verdict, also show that the verdict is inconsistent with substantial justice. *See Hall v. Freese*, 795 F.2d 956, 962 (5th Cir. 1985). Even when improper argument is not objected to, reversal is required when "substantial injustice has been done." *See id*. at 961. Whether to object often involves weighing the risk that objecting to numerous instances of improper conduct will cause the jury to decide a case based "on bias and passion." *See, e.g., Alexander v. City of Jackson*, MS, No. 3:04-CV-614 HTW-LRA, 2008 WL 907658, at *5 (S.D. Miss. Mar. 31, 2008) (Jones, J.). For example, in the *Alexander* case, in granting a motion for new trial, the court noted that defense counsel was often forced to object to plaintiff's "improper conduct" and the court feared that in the court's having to sustain so many objections, "the jury may have concluded that plaintiffs' counsel were being frustrated in their efforts to represent the plaintiffs and that combined with plaintiff's improper conduct, the jury decided the case on bias and prejudice." *Id*. Plaintiff's counsel took the opposite tack and chose not to object, especially considering the Court's admonition not to frustrate the jury and prolong the trial by objecting too much. Even so, Plaintiff is entitled to a new trial when, as here, the jury verdict is inconsistent with substantial justice. *See Hall*, 795 F.2d at 962.

In the *Hall* case, the Fifth Circuit recognized that an attorney's remarks in opening statements and closing arguments, even when unobjected to, can result in a jury verdict that is inconsistent with substantial justice when considered in light of the record, the evidence, tactics of counsel, unfair arguments of counsel, and the ultimate verdict. *Id*. at 960-62. That case involved six instances of alleged misconduct by defense counsel based on remarks he made during opening statement and closing argument, summarized as follows: (1) a business associate of the plaintiff was a married man seeing the plaintiff "on the side"; (2) the misleading comment that plaintiff had other causes of her problems, including "use of illegal drugs"; (3) the plaintiff's attorney purchased large quantities of prescription drugs for her; (4) the plaintiff flew in for a deposition in a private plane, which was untrue; (5) urging the jury not to return a large verdict because they were not in "New Orleans[,] San Francisco, or Chicago or New York or Miami . . . . This is Oxford, Mississippi, on a March morning, and we didn't leave our brains at home when we left there this morning"; and (6) stressing the amount of prescription drugs the plaintiff took "and the fact that her attorneys paid for them: It's a wonder she's not pickled with the amount of drugs that they gave her." *Id*. at 960.

In reviewing the entire record, the Fifth Circuit concluded the district court abused its discretion in refusing to grant a new trial: the attorney's comments were intended to prejudice the jury against the plaintiff and her attorneys by characterizing her "as a woman who had flouted respect for marriage vows, who had used illegal drugs, and who was trying to take advantage of the good people of rural northern Mississippi." *Id*. Given (1) that there was no evidence that the plaintiff flew to Oxford on a private jet, of any improper conduct by her attorneys in purchasing "prescription drugs for an incompetent and destitute client," or that the plaintiff's disability was caused by the use of drugs; (2) "the repeated references to drugs, legal and illegal"; and (3) defense

counsel's remarks calculated to prejudice the jurors against the plaintiff as a non-resident of northern Mississippi, defense counsel had engaged in improper tactics that led to a jury verdict that was inconsistent with substantial justice, despite the fact that plaintiff's counsel did not object. *Id*. at 961. Considering the extent of the plaintiff's injuries and the low dollar amount of the jury verdict, "together with the deliberate and unfair tactics of defense counsel," the Fifth Circuit concluded that substantial injustice had been done. *Id*. In so concluding, the court noted, "[T]he sort of strategy employed by defense counsel has no place in the federal district court." *Id*. Even though the court would not have reversed based on the attorney's remarks alone, those remarks, along with the record, the evidence, tactics of counsel, unfair argument, and evaluating the ultimate verdict of the jury convinced the court that "the jury verdict [was] inconsistent with substantial justice" and that "manifest injustice would result by allowing the jury verdict . . . to stand." *Id*. at 962 (citing Fed. R. Civ. P. 61).

In another case, the Fifth Circuit recognized that unobjected to "blatantly prejudicial" comments can necessitate a new trial when the statements, "taken as a whole, prejudice[] the jury's findings" and "when necessary to preserve 'substantial justice.'" *Whitehead v. Food Max of Mississippi*, 163 F.3d 265, 276-78 (5th Cir. 1998). In that case, the plaintiffs' counsel made comments appealing to local bias and criticizing the defendant for failing to produce a corporate witness. *Id*. at 276-77. Defense counsel objected to those statements, and the district court sustained the objections. *Id*. But the plaintiffs' counsel made other unobjected to "highly prejudicial statements" involving the abduction and assault of the plaintiffs that were not supported by evidence and involving the plaintiffs' absence from the courtroom because it was "just too painful for them to listen . . . to the horrors and the events of what happened in the liability testimony." *Id*. at 277-78. The court of appeals also held that the plaintiffs' counsel improperly

invited "the members of the jury to put themselves in the place of the plaintiffs when deciding damages." *Id*. at 278. The court concluded that the jury's large verdict, "when accompanied by counsel's improper arguments, further indicate[d] that the jury was influenced by the prejudicial statements." *Id*. The court considered counsel's comments "taken as a whole" in concluding that the comments "prejudiced the jury's findings" and that "[e]ven though most of the challenged statements were not objected to, substantial injustice would result" without a new trial. *Id*.

This record is replete with examples of Defendants' improper and inflammatory remarks that, when viewed in the context of the entire trial, resulted in a denial of substantial justice. The inappropriate conduct began with the first day of trial and intensified from there.

During opening statements, defense counsel argued that in addition to being "[t]he only people who would care about [Mitchell]," officers were forced "to deal with [Mitchell]." (Jury Tr. Vol. 1 at 208, 219; *see also id.* at 214 ["Qualls was repeatedly offered a ride by Sergeant Griffin anywhere in the county."], 215 ["[T]hey have no choice . . . . They know he has to go somewhere so he goes to the lockup."]) These statements were a clear and calculated attempt to deflect from Defendants' constitutional obligation to provide care addressing Mitchell's serious medical needs. Defense counsel then doubled down, falsely stating that officers had seen Mitchell "throw up on numerous occasions before going through this process." (*Id*. at 210) Moreover, defense counsel pointed to other officers who were "not being sued," including Lieutenant Hadnot, who of course, had been sued. (*Id*. at 208-09) Shifting the focus away from Defendants, counsel blamed Plaintiff for not picking up her son (because "the family is done with him"), which also, along with Mitchell's strained relationship with his mother and her history of having him arrested, had nothing to do with officers' actions after Mitchell was in custody.[5] (*Id*. at 212-13, 229-30)

---

[5] Defendants also offered extensive arrest records and police reports that were admitted and discussed during trial ad nauseum.

Right after reiterating that Mitchell and Plaintiff did not have "a great relationship," counsel then informed the jury, "And yet here she'll be asking for a lot of money." (*Id*. at 213; *see also id.* at 227 ["[I]f he told you how much money Ms. Sims wants, it might make your head spin around.]") Counsel falsely asserted, "[N]o one can say that [Plaintiff] has been damaged to some . . . extent by the death of her son for whom she was clearly estranged." (*Id*. at 231) Defendants also improperly shifted the focus to Mitchell's addiction and failures as a father. (*Id*. at 228 ["Steven Qualls had absolutely no relationship with his son . . . at all."], 229 ["[J]ail was Steven's home away from home."], 231 ["The fact is that he was addicted to methamphetamine. He had spent a significant part of his life in one lockup or another."]) Defense counsel cast aspersions on the qualifications of Plaintiff's experts, despite having failed to bring a *Daubert* motion: "He's not an expert in toxicology, and he has no experience with autopsies. But he does spend a lot of time testifying for money." (*Id*. at 222; *see also id*. at 225) With regard to Plaintiff's experts, not only did counsel improperly challenge the experts' qualifications, counsel attempted to prejudice the jury by pointing out that one expert was from California and one lived near Plaintiff's counsel "300 miles from Beaumont." (*Id*. at 222, 230)

In closing argument, defense counsel amplified the improper conduct that occurred throughout the trial. First, Defendants' theme was centered on the false accusation that Plaintiff manufactured a lawsuit and that her claims were not supported by evidence. (Jury Tr. Vol. 9 at 122-24, 127, 131-32, 143, 149, 154). Not only were Plaintiff's claims supported by ample evidence, the Fifth Circuit affirmed the Court's denial of qualified immunity to Defendants Griffin, Linebaugh, and O'Dell. *Sims v. Griffin*, 35 F.4th 945, 948 (5th Cir. 2022). Defendants also centered their liability defense on Plaintiff's actions *before* Mitchell was in custody and the risible notion that officers took Mitchell in out of the goodness of their hearts. (Jury Tr. Vol. 9 at 125 ["[H]e's

not my problem. [It] then fell to the Jasper Police Department to take Mr. Qualls into custody so he would have a place to go."], 137-39 ["[T]hey took him in when no one else would."])

Defendants falsely asserted that Plaintiff did not bring in a "real expert" and repeatedly called Plaintiff's expert testimony "fake" and "junk science" and said he was "making up ideas of what might have happened," even though Defendants never filed a *Daubert* motion challenging any expert testimony. (*Id*. at 132-35) Defendants also castigated Plaintiff for not calling a designated expert, falsely asserted that Plaintiff did not call him "because his testimony would have been harmful to the plaintiff," and criticized that expert for being from Los Angeles. (*Id*. at 137, 151, 158)

Further, defense counsel knowingly misrepresented the law when he stated that jurors could not consider what happened after January 2019. (*Id*. at 144) As Plaintiff informed the Court in her "Trial Brief on Post-Incident Conduct," such conduct is relevant "to show municipal policies, practices, and customs that existed on the date of deprivation of a person's constitutional rights." (Doc. 216 [citing numerous cases]) After several days of consideration, the Court then admitted Plaintiff's proffered evidence of post-incident conduct to show municipal policies, practices, and customs—under the Court's ruling admitting such evidence, the jury was free to consider it.

Moreover, defense counsel misled the jury by stating that Plaintiff's counsel conceded Plaintiff had no evidence of liability or damages because she did not ask for a specific number. (*Id*. at 154 ["So I will accept his passive acknowledgement that there is no evidence of that because if there were he would tell you this is the evidence that shows mental anguish [and] loss of companionship."], 155 [no evidence of son's damages because Plaintiff's counsel "hasn't shown you any evidence and he hasn't told you any numbers" and "he knows any number that he gives

you will not be supported by evidence"]) Counsel also reiterated his improper and knowingly false argument that Plaintiff did not sue any other officers and improper argument that Plaintiff did not call another expert. (*Id*. at 157-58) *E.g., Whitehead*, 163 F.3d at 277 (criticizing plaintiffs' counsel for arguing that the defendant should have called a corporate witness).

In light of the record, the evidence, the tactics of defense counsel, counsel's unfair arguments, and the jury verdict, the verdict is inconsistent with substantial justice, even though Plaintiff's counsel did not object. Indeed, it would have further prejudiced the jury if Plaintiff's counsel jumped up to object *every time* defense counsel used improper tactics to deflect attention away from the liability issues presented in this case. *See, e.g., Alexander*, 2008 WL 907658, at *5. Plaintiff's counsel would have been on his feet during the entire trial. The Court also reminded counsel on numerous occasions that it would not look favorably upon counsel lodging numerous objections, which could be a significant distraction and waste the jury's time.

In short, Defendants' tactics reflect many of the elements present in *Hall*. The strategy of the defense was to characterize Plaintiff as a mother who did not care about her child but was only trying to take advantage of Defendants by hiring out of town attorneys and experts to manufacture a lawsuit for her. This strategy was nothing but a calculated attempt to unfairly prejudice the jury. *See Hall*, 735 F.2d at 960-61. It is undisputed that Mitchell died in the City of Jasper jail after 34 hours of not receiving medical attention, which resulted in his death. The evidence that officers failed to call EMS while Mitchell lay on a cold jail floor, repeatedly vomited, vomited up part of a baggie, and could not get up is uncontradicted. Yet, in trying to convince the jury that it was Plaintiff's fault that Mitchell ended up in jail, defense counsel repeatedly deflected the jury's attention away from Defendants' constitutional obligations to Mitchell *while he was in jail*.

Considering the facts presented here, with the deliberate and unfair tactics of defense counsel, the jury verdict was inconsistent with substantial justice. *See id*. at 961-62.

## V. Jury Verdict Is against Great Weight of Evidence

Alternatively or in addition to the above, considering all the evidence, the jury's verdict is against the great weight of the evidence. "The trial court's power to grant a new trial on the basis of the court's firm belief that the verdict is clearly contrary to the weight of the evidence has . . . 'long been regarded as an integral part of trial by jury.'" *Smith*, 773 F.2d at 613 (quoting C. Wright, Federal Courts 633 (4th ed. 1983)). "In making this determination, the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party." *Id*. As mentioned above, "[i]f the trial judge is not satisfied with the verdict of a jury, he has the right—and indeed the duty—to set the verdict aside and order a new trial." *Id*. Given the evidence of liability that was presented at trial, along with the deliberate and unfair tactics of defense counsel that deflected the jury's attention away from liability to refocus the case only on damages and on evidence that was more prejudicial than probative for all the reasons discussed above in and in Plaintiff's motion to bifurcate (Doc. 183), on balance, the jury's verdict is against the great weight of the evidence.

## VI. Conclusion

For the above reasons, Plaintiff asks the Court to set aside and vacate the Jury Verdict (Doc. 234) and the Court's Final Judgment (Doc. 243) rendered March 20, 2023, and grant a new trial, bifurcated between liability and damages. Plaintiff seeks all other relief, legal and equitable, general and specific, to which she is entitled.

Respectfully submitted,

Law Offices of Dean Malone, P.C.

By: /s/ Jennifer Kingaard
    Jennifer Kingaard

Attorney-in-Charge:

T. Dean Malone
Texas State Bar No. 24003265
dean@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:   (214) 670-9989
Telefax:       (214) 670-9904

Of Counsel:

Kristen Leigh Homyk
Texas State Bar No. 24032433
kristen.homyk@deanmalone.com
Jennifer Kingaard
Texas State Bar No. 24048593
jennifer.kingaard@deanmalone.com
Alexandra W. Payne
Texas State Bar No. 24118939
alexandra.payne@deanmalone.com
Law Offices of Dean Malone, P.C.
900 Jackson Street, Suite 730
Dallas, Texas 75202
Telephone:   (214) 670-9989
Telefax:       (214) 670-9904

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on April 17, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a notice of electronic filing to the following attorneys:

William S. Helfand
Norman Ray Giles
Lewis Brisbois Bisgaard & Smith, LLP
24 Greenway Plaza, Suite 1400
Houston, Texas  77046

Frank D. Calvert
Calvert Eaves Clarke & Stelly, L.L.P.
Beaumont Tower
2615 Calder Ave., Suite 1070
Beaumont, Texas 77702

Attorneys for Defendants

                                                                /s/ Jennifer Kingaard
                                                                 Jennifer Kingaard